EMN:CMP/AMC
F.#2011R01474

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

WENDELL WALTERS,
    also known as
    "The Tall Guy" and
    "The Big Man,"
STEVENSON DUNN,
LEE HYMOWITZ,
MICHAEL FREEMAN,
SERGIO BENITEZ,
ROBERT MORALES and
ANGEL VILLALONA,

              Defendants.

I N D I C T M E N T

Cr. No. __11CR683__
(T. 18, U.S.C.,
§§ 666(a)(1)(B),
981(a)(1)(C), 982(a)(1),
982(b), 1343, 1349, 1951(a),
1956(h), 1957(a), 1957(b),
1957(d)(1), 1962(d), 1963,
1963(a), 1963(m), 2 and
3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

- - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

### INTRODUCTION TO ALL COUNTS

    At all times relevant to this Indictment, unless
otherwise indicated:

#### The New York City Department of
#### Housing Preservation and Development

    1.    The New York City Department of Housing
Preservation and Development ("HPD") was a municipal public
agency created under Chapter 42 of the New York City Charter and
regulated under Title 28 of the Rules of the City of New York
(the "NYC Rules") to provide affordable housing to the residents
of New York City.

2. As the largest municipal provider of affordable housing in the country, HPD's purpose was to provide affordable housing in various forms to the residents of New York City. HPD ran a number of programs that were intended to develop affordable housing, including, among others: (1) the Neighborhood Entrepreneurs Program ("NEP"), which was intended to enable neighborhood-based private property managers to manage and own clusters of occupied and vacant New York City-owned buildings as affordable housing; (2) the Neighborhood Redevelopment Program ("NRP"), whereby HPD conveyed clusters of occupied and vacant New York City-owned buildings to designated not-for-profit organizations for rehabilitation and operation as affordable rental housing; and (3) New Construction, which managed various programs that offered vacant and underutilized New York City property holdings for residential and mixed-use development.

3. Pursuant to Title 28 of the NYC Rules, HPD was charged with selecting real estate developers, or "sponsors," to develop NEP and NRP projects. The NYC Rules provided that "HPD may select a Sponsor for a Project by any method which HPD determines will best further the purposes of the Program, including, without limitation, pursuant to a request for qualifications process, pursuant to a request for proposals process, selection from a pre-qualified list or, in the

2

discretion of HPD, by a direct designation of an entity judged by HPD to be suitable for the task."

4.    After HPD selected a developer for a particular project, HPD and the developer selected a general contractor responsible for the construction, rehabilitation and renovation of the properties involved in that project.

5.    HPD engaged in, and its activities affected, interstate and foreign commerce, and as a legal entity, it constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4).  HPD operated throughout New York City, including within the Eastern District of New York.

### The Defendants and Other Individuals

6.    In or about and between April 1998 and October 2011, both dates being approximate and inclusive, the defendant WENDELL WALTERS, also known as "The Tall Guy" and "The Big Man," was employed by HPD as, among other positions, the Director of NEP, the Assistant Commissioner of the Division of Alternative Management Programs, the Assistant Commissioner of the Division of Homeownership and the Assistant Commissioner of the Division of Housing Production.  WALTERS's employment at HPD qualified him as a "public servant" as defined by New York Penal Law Section 10.00(15).

7. At various times, the defendant STEVENSON DUNN was associated with HPD as a real estate developer involved in various HPD projects.

8. At various times, the defendants LEE HYMOWITZ and MICHAEL FREEMAN were business partners with the defendant STEVENSON DUNN in corporate entities, including, among others, SML Development LLC, SML Bed Stuy Development, LLC, and Hancock Street SML LLC (collectively, the "SML Entities"), which were selected as real estate developers for one or more HPD projects. HYMOWITZ and FREEMAN were also partners in a law firm, Hymowitz & Freeman.

9. At various times, the defendant SERGIO BENITEZ was the real estate developer for one or more HPD projects.

10. At various times, the defendants ROBERT MORALES and ANGEL VILLALONA were business partners and the real estate developers for one or more HPD projects.

11. At various times, John Doe #1, an individual whose identity is known to the Grand Jury, was a general contractor and real estate developer who was awarded work on HPD projects.

12. At various times, John Doe #2, an individual whose identity is known to the Grand Jury, was a general contractor and real estate developer who was awarded work on HPD projects.

4

## The Criminal Schemes

13.   In or about and between January 2000 and October
2011, both dates being approximate and inclusive, in connection
with his employment at HPD, the defendant WENDELL WALTERS
solicited and received undisclosed and illegal payments, bribes
and kickbacks from individuals and entities, including, among
others, John Doe #1 and John Doe #2, in return for the award of a
series of multi-million dollar contracts with HPD.  WALTERS met
with John Doe #1 at various locations throughout New York City,
including a golf driving range and a parking lot, to receive the
illegal cash payments.  WALTERS also used a variety of means to
conceal the true nature of such payments.

14.   In or about and between January 2005 and October
2011, both dates being approximate and inclusive, the defendants
STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN solicited and
received kickback payments from John Doe #1 and John Doe #2 in
return for the award of general contracting and real estate
development work with the SML Entities on HPD projects.  The
defendant WENDELL WALTERS knowingly furthered this scheme through
his involvement in structuring and administering contracts
between and among HPD, John Doe #2 and the SML Entities.  DUNN,
HYMOWITZ and FREEMAN included and caused to be included the
amount of money they received in the form of kickback payments
from John Doe #1 and John Doe #2 in requisitions for payment they

5

submitted to HPD, thereby passing on the costs of their own corrupt activity to HPD. To further conceal the true nature of these kickback payments, DUNN, HYMOWITZ and FREEMAN provided John Doe #1 with a sham retainer agreement for Hymowitz & Freeman's legal services and provided John Doe #1 and John Doe #2 with false and inflated invoices for services and supplies from, among others, 334 Marcus Garvey Boulevard Corporation. In addition, when John Doe #2 failed to pay some of the kickback payments demanded by DUNN, DUNN threatened John Doe #2 and his family with force, violence and fear.

15. In or about and between January 2006 and October 2011, both dates being approximate and inclusive, the defendant SERGIO BENITEZ solicited and received kickback payments from John Doe #1 in return for the award of general contracting work on HPD projects. BENETIZ included and caused to be included the amount of money he received in the form of kickback payments from John Doe #1 in requisitions for payment he submitted to HPD, thereby passing on the costs of his own corrupt activity to HPD. To further conceal the true nature of these kickback payments, BENITEZ provided John Doe #1 with false and inflated invoices for services and supplies from, among others, All Boro Painting & Repairs Inc.

16. In or about and between January 2006 and October 2011, both dates being approximate and inclusive, the defendants

6

ROBERT MORALES and ANGEL VILLALONA solicited and received
kickback payments from John Doe #1 in return for the award of
general contracting work on HPD projects. MORALES and VILLALONA
included and caused to be included the amount of money they
received in the form of kickback payments from John Doe #1 in
requisitions for payment they submitted to HPD, thereby passing
on the costs of their own corrupt activity to HPD. To further
conceal the true nature of these kickback payments, MORALES and
VILLALONA provided John Doe #1 with false and inflated invoices
for services and supplies from, among others, PRA Building
Materials, Inc.

## COUNT ONE
### (Racketeering Conspiracy)

17. The allegations contained in paragraphs 1 through
16 are realleged and incorporated as if fully set forth in this
paragraph.

18. In or about and between January 2000 and October
2011, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
WENDELL WALTERS, also known as "The Tall Guy" and "The Big Man,"
and STEVENSON DUNN, together with others, being persons employed
by and associated with HPD, an enterprise engaged in, and the
activities of which affected, interstate and foreign commerce,
did knowingly and intentionally conspire to violate Title 18,
United States Code, Section 1962(c), that is, to conduct and

7

participate, directly and indirectly, in the conduct of the affairs of such enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

19.    The pattern of racketeering activity through which the defendants WENDELL WALTERS and STEVENSON DUNN, together with others, agreed to conduct the affairs of the enterprise consisted of Racketeering Acts One through Ten, set forth below.    WALTERS and DUNN agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

RACKETEERING ACT ONE
(Extortion and Bribery - WALTERS's First Demand)

20.    The defendant WENDELL WALTERS agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act One:

A.    Federal Extortion under Color of Official Right

21.    In or about and between June 2002 and December 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant WENDELL WALTERS, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and attempt to do so, in that the defendant and others obtained and attempted to obtain property, to wit: cash payments, from John Doe #1, with his consent, which consent was, and was to be, induced under color of

8

official right, to wit: WALTERS's employment with HPD, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B. State Bribery

22. In or about and between June 2002 and December 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant WENDELL WALTERS, together with others, being a public servant, did knowingly and intentionally solicit, accept and agree to accept one or more benefits, to wit: cash payments, from John Doe #1 upon an agreement and understanding that WALTERS's vote, opinion, judgment, action, decision and exercise of discretion as a public servant would thereby be influenced, in violation of New York Penal Law Sections 200.10 and 20.00.

RACKETEERING ACT TWO
(Extortion and Bribery - WALTERS's Second Demand)

23. The defendant WENDELL WALTERS agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Two:

A. Federal Extortion under Color of Official Right

24. In or about and between January 2004 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant WENDELL WALTERS, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles

9

and commodities in commerce, by extortion, and attempt to do so, in that the defendant and others obtained and attempted to obtain property, to wit: cash payments, from John Doe #1, with his consent, which consent was, and was to be, induced under color of official right, to wit: WALTERS's employment with HPD, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B. State Bribery

25. In or about and between January 2004 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant WENDELL WALTERS, together with others, being a public servant, did knowingly and intentionally solicit, accept and agree to accept one or more benefits, to wit: cash payments, from John Doe #1 upon an agreement and understanding that WALTERS's vote, opinion, judgment, action, decision and exercise of discretion as a public servant would thereby be influenced, in violation of New York Penal Law Sections 200.10 and 20.00.

RACKETEERING ACT THREE
(Extortion and Bribery - WALTERS's Third Demand)

26. The defendant WENDELL WALTERS agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Three:

10

A.    Federal Extortion under Color of Official Right

27.   In or about and between May 2004 and December
2005, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant WENDELL
WALTERS, together with others, did knowingly and intentionally
obstruct, delay and affect commerce, and the movement of articles
and commodities in commerce, by extortion, and attempt to do so,
in that the defendant and others obtained and attempted to obtain
property, to wit: cash payments, from John Doe #1, with his
consent, which consent was, and was to be, induced under color of
official right, to wit: WALTERS's employment with HPD, in
violation of Title 18, United States Code, Sections 1951(a)
and 2.

B.    State Bribery

28.   In or about and between May 2004 and December
2005, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant WENDELL
WALTERS, together with others, being a public servant, did
knowingly and intentionally solicit, accept and agree to accept
one or more benefits, to wit: cash payments, from John Doe #1
upon an agreement and understanding that WALTERS's vote, opinion,
judgment, action, decision and exercise of discretion as a public
servant would thereby be influenced, in violation of New York
Penal Law Sections 200.10 and 20.00.

11

## RACKETEERING ACT FOUR
(Extortion and Bribery - WALTERS's Fourth Demand)

29. The defendant WENDELL WALTERS agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Four:

### A. Federal Extortion under Color of Official Right

30. In or about and between January 2007 and December 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant WENDELL WALTERS, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and attempt to do so, in that the defendant and others obtained and attempted to obtain property, to wit: cash payments, from John Doe #1, with his consent, which consent was, and was to be, induced under color of official right, to wit: WALTERS's employment with HPD, in violation of Title 18, United States Code, Sections 1951(a) and 2.

### B. State Bribery

31. In or about and between January 2007 and December 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant WENDELL WALTERS, together with others, being a public servant, did knowingly and intentionally solicit, accept and agree to accept one or more benefits, to wit: cash payments, from John Doe #1

12

upon an agreement and understanding that WALTERS's vote, opinion, judgment, action, decision and exercise of discretion as a public servant would thereby be influenced, in violation of New York Penal Law Sections 200.10 and 20.00.

RACKETEERING ACTS FIVE THROUGH EIGHT
(Wire Fraud - John Doe #1 and John Doe #2 Kickback Payments)

32.   In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants WENDELL WALTERS and STEVENSON DUNN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HPD, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

33.   It was part of the scheme and artifice that the defendants WENDELL WALTERS and STEVENSON DUNN, together with others, would and did solicit bribe and kickback payments from John Doe #1 and John Doe #2 in return for the award of general contracting and real estate development work with, among others, the SML Entities on HPD projects. It was further part of the scheme and artifice that WALTERS and DUNN, together with others, structured and administered contracts between and among HPD, John Doe #2 and the SML Entities in such a way as to further the kickback payments from John Doe #2. It was further part of the scheme and artifice that DUNN, together with others, would and

13

did submit and cause to be submitted false requisitions for payments to HPD that included the amount of such kickback payments from John Doe #1 and John Doe #2. It was further part of the scheme and artifice that such false requisitions would and did cause HPD to make payments to DUNN and others based upon such requisitions and that such payments from HPD would be and were used, in part, to fund bribe and kickback payments.

34. For the purpose of executing such scheme and artifice, the defendants WENDELL WALTERS and STEVENSON DUNN, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: wire transfers through New Jersey, in violation of Title 18, United States Code, Sections 1343 and 2, as set forth below:

| R.A. | APPROX. DATE | ORIGINATOR | RECIPIENT | APPROX. AMOUNT OF WIRE TRANSFER |
|------|--------------|------------|-----------|---------------------------------|
| FIVE | Nov. 14, 2007 | Enterprise Community Loan Fund, Columbia, Maryland | Hymowitz & Freeman IOLA Account, New York, New York | $30,976.73 |
| SIX | Feb. 5, 2008 | Enterprise Community Loan Fund, Columbia, Maryland | Hymowitz & Freeman IOLA Account, New York, New York | $37,990.90 |
| SEVEN | April 4, 2008 | The Community Preservation Corp., New York, New York | Hancock Street SML, LLC, New York, New York | $210,116.83 |
| EIGHT | Oct. 15, 2008 | The Community Preservation Corp., New York, New York | Hancock Street SML, LLC, New York, New York | $283,409.96 |

RACKETEERING ACT NINE
(Extortion - John Doe #2)

35.    In or about and between January 2007 and October
2011, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant
STEVENSON DUNN, together with others, did knowingly and
intentionally obstruct, delay and affect commerce, and the
movement of articles and commodities in commerce, by extortion,
and attempt to do so, in that the defendant and others obtained
and attempted to obtain property, to wit: cash payments, from
John Doe #2, with his consent, which consent was, and was to be,
induced by wrongful use of actual and threatened force, violence
and fear, in violation of Title 18, United States Code, Sections
1951(a) and 2.

RACKETEERING ACT TEN
(Money Laundering Conspiracy and Money Laundering)

36.    The defendant STEVENSON DUNN agreed to the
commission of the following acts, either one of which alone
constitutes Racketeering Act Ten:

A.    Money Laundering Conspiracy

37.    In or about and between January 2005 and October
2011, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant
STEVENSON DUNN, together with others, did knowingly and
intentionally conspire to engage in monetary transactions, to

15

wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: extortion, in violation of Title 18, United States Code, Section 1951(a), and wire fraud, in violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Code, Sections 1956(h) and 1957(a).

B.    Money Laundering

38.    In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant STEVENSON DUNN, together with others, did knowingly and intentionally engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: extortion, in violation of Title 18, United States Code, Section 1951(a), and wire fraud, in violation of Title 18, United States Code, Section

16

1343, all in violation of Title 18, United States Code, Sections
1957(a) and 2.

(Title 18, United States Code, Sections 1962(d), 1963
and 3551 et seq.)

## COUNT TWO
### (Bribery)

39. The allegations contained in paragraphs 1 through
16 are realleged and incorporated as if fully set forth in this
paragraph.

40. In or about and between January 2000 and December
2010, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant WENDELL
WALTERS, also known as "The Tall Guy" and "The Big Man," together
with others, being an agent of a local government agency, to wit:
HPD, which agency received in excess of $10,000 under one or more
Federal programs involving grants, contracts, subsidies, loans,
guarantees, insurance and other forms of Federal assistance in
one or more one-year periods, did knowingly, intentionally and
corruptly solicit and demand for the benefit of WALTERS, and
accept and agree to accept, one or more things of value, to wit:
cash payments, from another person, to wit: John Doe #1,
intending to be influenced and rewarded in connection with

17

business and one or more transactions and series of transactions of HPD involving things of value of $5,000 or more.

(Title 18, United States Code, Sections 666(a)(1)(B), 2 and 3551 et seq.)

## COUNT THREE
(Extortion - WALTERS's First Demand)

41. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

42. In or about and between June 2002 and December 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant WENDELL WALTERS, also known as "The Tall Guy" and "The Big Man," together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and attempt to do so, in that the defendant and others obtained and attempted to obtain property, to wit: cash payments, from John Doe #1, with his consent, which consent was, and was to be, induced under color of official right, to wit: WALTERS's employment with HPD.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

18

COUNT FOUR
(Extortion - WALTERS's Second Demand)

43. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

44. In or about and between January 2004 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant WENDELL WALTERS, also known as "The Tall Guy" and "The Big Man," together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and attempt to do so, in that the defendant and others obtained and attempted to obtain property, to wit: cash payments, from John Doe #1, with his consent, which consent was, and was to be, induced under color of official right, to wit: WALTERS's employment with HPD.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

COUNT FIVE
(Extortion - WALTERS's Third Demand)

45. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

46. In or about and between May 2004 and December 2005, both dates being approximate and inclusive, within the

19

Eastern District of New York and elsewhere, the defendant WENDELL WALTERS, also known as "The Tall Guy" and "The Big Man," together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and attempt to do so, in that the defendant and others obtained and attempted to obtain property, to wit: cash payments, from John Doe #1, with his consent, which consent was, and was to be, induced under color of official right, to wit: WALTERS's employment with HPD.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT SIX
(Extortion - WALTERS's Fourth Demand)

47. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

48. In or about and between January 2007 and December 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant WENDELL WALTERS, also known as "The Tall Guy" and "The Big Man," together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and attempt to do so, in that the defendant and others obtained and attempted to obtain property, to wit: cash payments, from John Doe #1, with his consent, which

20

consent was, and was to be, induced under color of official
right, to wit: WALTERS's employment with HPD.

(Title 18, United States Code, Sections 1951(a), 2 and
3551 et seq.)

## COUNT SEVEN
(Wire Fraud Conspiracy - John Doe #1 and John Doe #2 Payments)

49.     The allegations contained in paragraphs 1 through
16 and 33 are realleged and incorporated as if fully set forth in
this paragraph.

50.     In or about and between January 2005 and October
2011, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
WENDELL WALTERS, also known as "The Tall Guy" and "The Big Man,"
STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with
others, did knowingly and intentionally conspire to devise a
scheme and artifice to defraud HPD, and to obtain money and
property by means of materially false and fraudulent pretenses,
representations and promises, and for the purpose of executing
such scheme and artifice, to transmit and cause to be transmitted
by means of wire communication in interstate and foreign
commerce, writings, signs, signals, pictures and sounds, to wit:
interstate wire transfers, contrary to Title 18, United States
Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551
et seq.)

COUNTS EIGHT THROUGH ELEVEN
(Wire Fraud - John Doe #1 and John Doe #2 Payments)

51. The allegations contained in paragraphs 1 through 16 and 33 are realleged and incorporated as if fully set forth in this paragraph.

52. In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants WENDELL WALTERS, also known as "The Tall Guy" and "The Big Man," STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HPD, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

53. For the purpose of executing such scheme and artifice, the defendants WENDELL WALTERS, STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: wire transfers through New Jersey, as set forth below:

| COUNT | APPROX. DATE | ORIGINATOR | RECIPIENT | APPROX. AMOUNT OF WIRE TRANSFER |
|-------|--------------|------------|-----------|----------------------------------|
| EIGHT | Nov. 14, 2007 | Enterprise Community Loan Fund, Columbia, Maryland | Hymowitz & Freeman IOLA Account, New York, New York | $30,976.73 |

22

| NINE | Feb. 5, 2008 | Enterprise Community Loan Fund, Columbia, Maryland | Hymowitz & Freeman IOLA Account, New York, New York | $37,990.90 |
| TEN | April 4, 2008 | The Community Preservation Corp., New York, New York | Hancock Street SML, LLC, New York, New York | $210,116.83 |
| ELEVEN | Oct. 15, 2008 | The Community Preservation Corp., New York, New York | Hancock Street SML, LLC, New York, New York | $283,409.96 |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT TWELVE
(Extortion - John Doe #2)

54. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

55. In or about and between January 2007 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant STEVENSON DUNN, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and attempt to do so, in that the defendant and others obtained and attempted to obtain property, to wit: cash payments, from John Doe #2, with his consent, which consent was, and was to be,

23

induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT THIRTEEN
(Money Laundering Conspiracy)

56. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

57. In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, did knowingly and intentionally conspire to engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: extortion, in violation of Title 18, United States Code, Section 1951(a), and wire fraud, in violation of

24

Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h), 1957(b), 1957(d)(1) and 3551 et seq.)

## COUNT FOURTEEN
(Money Laundering)

58. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

59. In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, did knowingly and intentionally engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: extortion, in violation of Title 18, United States Code, Section 1951(a), and wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.)

25

## COUNT FIFTEEN
(Wire Fraud Conspiracy - John Doe #1 Payments)

60. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

61. In or about and between January 2006 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SERGIO BENITEZ, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud HPD, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: interstate wire transfers, contrary to Title 18, United States Code, Section 1343.

62. It was part of the scheme and artifice that the defendant SERGIO BENITEZ, together with others, would and did solicit kickback payments from John Doe #1 in return for the award of general contracting and real estate development work with BENITEZ on HPD projects. It was further part of the scheme and artifice that BENITEZ, together with others, would and did submit and cause to be submitted false requisitions for payments to HPD that included the amount of such kickback payments from

26

John Doe #1. It was further part of the scheme and artifice that such false requisitions would and did cause HPD to make payments to BENITEZ and others based upon such requisitions and that such payments from HPD would be and were used, in part, to fund such kickback payments.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNTS SIXTEEN THROUGH EIGHTEEN
(Wire Fraud - John Doe #1 Payments)

63. The allegations contained in paragraphs 1 through 16 and 62 are realleged and incorporated as if fully set forth in this paragraph.

64. In or about and between January 2006 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SERGIO BENITEZ, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HPD, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

65. For the purpose of executing such scheme and artifice, the defendant SERGIO BENITEZ, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: wire transfers through New Jersey, as set forth below:

27

| COUNT | APPROX. DATE | ORIGINATOR | RECIPIENT | APPROX. AMOUNT OF WIRE TRANSFER |
|-------|--------------|------------|-----------|--------------------------------|
| SIXTEEN | Aug. 23, 2007 | Enterprise Housing Financial Services, Columbia, Maryland | Cooper & Decatur St. Inc., Staten Island, New York | $414,682.18 |
| SEVENTEEN | June 6, 2008 | Enterprise Housing Financial Services, Columbia, Maryland | Cooper & Decatur St. Inc., Staten Island, New York | $457,969.86 |
| EIGHTEEN | Aug. 11, 2008 | Enterprise Housing Financial Services, Columbia, Maryland | Cooper & Decatur St. Inc., Staten Island, New York | $484,236.07 |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT NINETEEN
(Money Laundering Conspiracy)

66. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

67. In or about and between January 2006 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SERGIO BENITEZ, together with others, did knowingly and intentionally conspire to engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from

28

specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h), 1957(b), 1957(d)(1) and 3551 et seq.)

## COUNT TWENTY
### (Money Laundering)

68. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

69. In or about and between January 2006 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SERGIO BENITEZ, together with others, did knowingly and intentionally engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.)

29

COUNT TWENTY-ONE

(Wire Fraud Conspiracy – John Doe #1 Payments)

70.     The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

71.     In or about and between January 2006 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROBERT MORALES and ANGEL VILLALONA, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud HPD, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: interstate wire transfers, contrary to Title 18, United States Code, Section 1343.

72.     It was part of the scheme and artifice that the defendants ROBERT MORALES and ANGEL VILLALONA, together with others, would and did solicit kickback payments from John Doe #1 in return for the award of general contracting and real estate development work with MORALES and VILLALONA on HPD projects.    It was further part of the scheme and artifice that MORALES and VILLALONA, together with others, would and did submit and cause

30

to be submitted false requisitions for payments to HPD that included the amount of such kickback payments from John Doe #1. It was further part of the scheme and artifice that such false requisitions would and did cause HPD to make payments to MORALES, VILLALONA and others based upon such requisitions and that such payments from HPD would be and were used, in part, to fund such kickback payments.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWENTY-TWO THROUGH TWENTY-FOUR
(Wire Fraud - John Doe #1 Payments)

73. The allegations contained in paragraphs 1 through 16 and 72 are realleged and incorporated as if fully set forth in this paragraph.

74. In or about and between January 2006 and October 2011, within the Eastern District of New York and elsewhere, the defendants ROBERT MORALES and ANGEL VILLALONA, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HPD, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

75. For the purpose of executing such scheme and artifice, the defendants ROBERT MORALES and ANGEL VILLALONA, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce,

31

writings, signs, signals, pictures and sounds, to wit: wire

transfers through New Jersey, as set forth below:

| COUNT | APPROX. DATE | ORIGINATOR | RECIPIENT | APPROX. AMOUNT OF WIRE TRANSFER |
|---|---|---|---|---|
| TWENTY-TWO | April 2, 2007 | Enterprise Housing Financial Services, Columbia, Maryland | Alexander Cluster, Inc., Bronx, New York | $473,113.20 |
| TWENTY-THREE | May 4, 2007 | Enterprise Housing Financial Services, Columbia, Maryland | Alexander Cluster, Inc., Bronx, New York | $630,357.00 |
| TWENTY-FOUR | July 16, 2007 | Enterprise Housing Financial Services, Columbia, Maryland | Alexander Cluster, Inc., Bronx, New York | $667,560.00 |

(Title 18, United States Code, Sections 1343, 2 and

3551 et seq.)

### COUNT TWENTY-FIVE
### (Money Laundering Conspiracy)

76. The allegations contained in paragraphs 1 through

16 are realleged and incorporated as if fully set forth in this

paragraph.

77. In or about and between January 2006 and October

2011, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants ROBERT

MORALES and ANGEL VILLALONA, together with others, did knowingly

and intentionally conspire to engage in monetary transactions, to

wit: deposits, withdrawals and transfers of funds and monetary

instruments, in and affecting interstate and foreign commerce,

by, through and to financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h), 1957(b), 1957(d)(1) and 3551 et seq.)

## COUNT TWENTY-SIX
(Money Laundering)

78. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

79. In or about and between January 2006 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROBERT MORALES and ANGEL VILLALONA, together with others, did knowingly and intentionally engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to

33

wit: wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.)

### FORFEITURE ALLEGATION AS TO COUNT ONE

80. The United States hereby gives notice to the defendants charged in Count One that, upon conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963, which requires any person convicted of such offense to forfeit:

(a) any interest such defendants have acquired and maintained an interest in, in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

(b) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over any enterprise which such defendants have established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

(c) any property constituting or derived from any proceeds such defendants obtained, directly and indirectly, from the racketeering activity or unlawful debt collection, in

34

violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

81. The interests and properties of such defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Sections 1963(a)(1) and (a)(3), include, but are not limited to, the following:

### Money Judgment

(a) a sum of money equal to at least $22 million in United States currency, for which such defendants are jointly and severally liable; and

### Specific Property

(b) real property and premises known as 268 West 139th Street, designated on the New York City, Borough of Manhattan, Tax Map as Block: 02024, Lot: 0062, title to which is held in the name of Wendell Walters (the "West 139th Street property").

82. If any of the above-described forfeitable property, as a result of any act or omission of the defendants WENDELL WALTERS and STEVENSON DUNN:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

35

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation, including, but not limited to, the following assets:

(1) the West 139th Street Property;

(2) real property and premises known as 142-144 Decatur Street, Brooklyn, New York, designated on the New York City, Borough of Kings, Tax Map as Block: 01679, Lot: 0001, title to which is held in the name of 334 Marcus Garvey Boulevard Corporation, with Stevenson Dunn as Chairman and Chief Executive Officer (the "Decatur Street property"); and

(3) real property and premises known as 18 Jesse's Way, Tisbury, Massachusetts, designated on the Middlesex County, Massachusetts Tax Map 18 as Parcel A 5.1, title to which

is held in the name of Stevenson Dunn and Rodney Rasheed (the "Tisbury property").

(Title 18, United States Code Sections 1963(a) and 1963(m))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS TWO THROUGH TWELVE, FIFTEEN THROUGH EIGHTEEN AND TWENTY-ONE THROUGH TWENTY-FOUR

83. The United States hereby gives notice to the defendants that, upon conviction of any of the offenses charged in Counts Two through Twelve, Fifteen through Eighteen and Twenty-One through Twenty-Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of any such offenses, or conspiracy to commit such offenses, to forfeit any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of such offenses, including, but not limited to, the following:

### Money Judgment

(a) a sum of money in United States currency, in an amount to be determined at trial, for which such defendants are jointly and severally liable; and

37

## Specific Property

(b)  the West 139th Street property.

84.  If any of the above-described forfeitable

property, as a result of any act or omission of such defendants:

(a) cannot be located upon the exercise of due

diligence;

(b) has been transferred or sold to, or deposited

with, a third party;

(c) has been placed beyond the jurisdiction of the

court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c), to seek forfeiture of any

other property of such defendants up to the value of the

forfeitable property described in this forfeiture allegation,

including, but not limited to, the following assets:

(1)   the West 139th Street property;

(2)   the Decatur Street property;

(3)   the Tisbury property;

(4)   real property and premises known as 21

Eagle Nest Road, Colts Neck Township, New Jersey, designated on

38

the Colts Neck Township, County of Monmouth, Tax Map as Block: 5, Lot: 1.04, title to which is held in the name of SLB Eagle Nest Road Family Limited Partnership, with Sergio Benitez as a partner (the "Colts Neck property"); and

(5)    real property and premises known as 571 Hunt Lane, Manhasset, New York, designated on the County of Nassau Tax Map as Section 3, Block: 118, Lot: 17, title to which is held in the name of Michael Freeman and Barbara Freeman (the "Manhasset property").

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS THIRTEEN, FOURTEEN, NINETEEN, TWENTY, TWENTY-FIVE AND TWENTY-SIX

85.    The United States hereby gives notice to the defendants charged in Counts Thirteen, Fourteen, Nineteen, Twenty, Twenty-Five and Twenty-Six that, upon conviction of any of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of any such offenses, or conspiracy to commit such offenses, to forfeit any and all property, real or personal, involved in such offenses, or any property traceable to such offenses.

86.    If any of the above-described forfeitable property, as a result of any act or omission of such defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation, including, but not limited to, the following:

(1) the Decatur Street property;

(2) the Tisbury property;

(3)   the Colts Neck property; and

(4)   the Manhasset property.

(Title 18, United States Code, Sections 982(a)(1) and

982(b); Title 21, United States Code, Section 853(p))

A TRUE BILL

FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

41

No.

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

WENDELL WALTERS, also known as "The Tall Guy" and "The Big Man,"
STEVENSON DUNN, LEE HYMOWITZ, MICHAEL FREEMAN,
SERGIO BENITEZ, ROBERT MORALES and ANGEL VILLALONA,
Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 666(a)(1)(B), 981(a)(1)(C), 982(a)(1), 982(b), 1343, 1349, 1951(a),
1956(h), 1957(a), 1957(b), 1957(d)(1), 1962(d), 1963, 1963(a), 1963(m), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c)))

*A true bill.*

_____
Foreman

*Filed in open court this* _____ _____ *day,*

*of* _____ _____ *A.D. 20* _____

_____
Clerk

*Bail, $* _____

*Cristina Posa, Assistant U.S. Attorney (718-254-6668)*