# SERCARZ & RIOPELLE, LLP

CARNEGIE HALL TOWER
152 WEST 57TH STREET, 24TH FLOOR
NEW YORK, NEW YORK 10019
(212) 586-4900
FACSIMILE (212) 586-1234
www.sercarzandriopelle.com

ROLAND G. RIOPELLE
MAURICE H. SERCARZ*

———

DIANE FERRONE

*ADMITTED IN NY & NJ

October 24, 2012

*Via Email*

Cristina M. Posa, Esq.
Anthony M. Capozzolo, Esq.
United States Attorney's Office
Eastern District of New York
270 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States v. Walters, et al., 11 CR 683 (NG)*

Dear Ms. Posa and Mr. Capozzolo:

      I am writing to you on behalf of the defendants Lee Hymowitz and Michael Freeman in the aftermath of the October 10, 2012 status conference in order to request certain relief, informally, and to determine whether it will be necessary for us to file formal motions on these issues.

**Proposed Redactions To The Post-Arrest Statement of Stevenson Dunn, Jr.**

      In accordance with *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and its progeny, we would hereby request that all testimony regarding the post-arrest statement of Stevenson Dunn, Jr. be redacted as follows (we are supplying appropriate redactions to the FBI 302 report of the interview with Mr. Dunn dated October 18, 2011. For ease of reference we have also supplied a copy of the 302 with the proposed deletions made to the text):

      With respect to the paragraph beginning at the end of page 1 and continuing to page 2, redact all text beginning with the words "during this time period […]."

      Redact in its entirety the last full paragraph on page 2.

With regard to the paragraph beginning at the bottom of page 2 and continuing to page 3, redact the following text:

> WALTERS told DUNN that contractors (STARZECKI) are supposed to be making pay offs to the developer equal to approximately 3-4% of the total contract amount.[1]

With regard to the first full paragraph on page 3, the first sentence should be amended to read:

> DUNN stated that after LEXINGTON, STARZECKI/MCR was selected as the general contractor for an HPD neighborhood project […]

The second sentence should be amended to read:

> DUNN explained that STARZECKI was selected again as the general contractor because STARZECKI is a good contractor.

With regard to the first full paragraph on page 3, reference to Hymowitz and Freeman in the first and third sentences should be deleted. In each instance, the pronoun following Dunn's name should be changed from "they" to "he."

The following text in that paragraph should be eliminated in its entirety:

> STARZECKI also made kickback payments to HYMOWITZ and FREEMAN by providing them with (2) checks in the amounts of $100,000 and approximately $50,000, both of which checks were likely deposited into HYMOWITZ and FREEMAN'S escrow account. It was DUNN, HYMOWITZ and FREEMAN who had collectively negotiated a $300,000 kickback payment from STARZECKI in connection with this project. STARZECKI has yet to pay the remaining kickback balance of approximately $75,000 to DUNN, HYMOWITZ and FREEMAN.

**Request For A Bill Of Particulars**

The defendants Hymowitz and Freeman request the following particulars with regard to the currently pending Indictment, Cr. 11-683 (S1)(NG):

---

[1] It should be noted that this redaction is proposed, notwithstanding that it does not contain any reference to Hymowitz or Freeman, on the basis that the statement contains multiple levels of hearsay and would result in a denial of the defendants' confrontation rights.

With regard to paragraph 13 of the Indictment under the title "The Criminal Schemes," as to each alleged kickback payment from John Doe #1 and John Doe #2 described in that paragraph, provide the following information:

    a.     The date of the alleged solicitation;
    b.     The name of the individual soliciting the kickback;
    c.     The amount of the requested kickback;
    d.     The manner in which the solicitation was made and the location of the solicitation;
    e.     The date that the kickback was received;
    f.     The name of the individual who received the kickback;
    g.     The amount of the alleged kickback;
    h.     The manner in which the kickback was received and the location of said kickback;
    i.     Identify the requisition for payment submitted to HPD which included the above referenced kickback; and
    j.     Describe the process and approvals necessary for the selection of the building contractors on each of the HPD projects referenced in the Indictment.  State whether this process was followed and whether the requisite approvals were granted.  Specify the procedure utilized in each instance where Starzecki/MCR Restorations or George Armstrong were selected as the contractors.

With regard to Counts 2 and 3-6 of the Indictment alleging wire fraud conspiracy and four substantive counts of wire fraud, provide the following information:

    a.     Describe the false representation or pretense including the date when made, the individual to whom it was made; and the document, if any, in which the representation is contained;
    b.     By whom was the false representation or pretense made? To whom was the false representation or false pretense made? When and where were the false representations made?  Provide each document containing the above described false representation or pretense.
    c.     Provide the identity of the victim; and
    d.     Set forth the manner in which the victim was defrauded.

With regard to Counts 7 and 8 which charge the defendants with money laundering conspiracy and money laundering, provide the following information:

    a.     Describe the deposit, withdrawal or transfer of funds referenced in the relevant Count including the date of the transfer, from whom and to whom the funds were transferred;
    b.     State whether the funds were derived from extortionate activity or wire fraud; and

    c.    Provide a description of the underlying extortionate activity or wire fraud which references the counts of the Indictment in which this unlawful activity is alleged.

**Brady Request**

In accordance with <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny, the defendants request that the government turn over the following material which is exculpatory to the defense:

Provide all interviews with Wendell Walters, all evidence obtained during the search of Mr. Walters' home and office, all email correspondence in the possession of the government all bank records pertaining to Mr. Walters and HPD, and all recordings which suggest that Mr. Walters did not demand payments from Hymowitz and Freeman; or that he did not receive payments from Hymowitz and Freeman.

Provide all statements, email correspondence, bank records, documents and recordings which suggest that the defendants Hymowitz and Freeman did not demand payments from Armstrong, or that they did not receive payments from George Armstrong.

Provide all interviews, documents, email correspondence, bank records and recordings which suggest that the defendants neither demanded nor received payments from Bogdan Starzecki or MCR Restorations Inc. (a) in connection with Starzecki's selection as the builder for the Lexington Avenue cluster; (b) in connection with work performed on the Lexington Avenue cluster; (c) in connection with Starzecki's selection as the builder for the Bed-Stuy cluster; and (d) in connection with work performed on the Bed-Stuy cluster.

**Conclusion**

If you have any questions regarding any of the above items, please contact me at your earliest convenience so that we may discuss them.

Very truly yours,

*Maurice H. Sercarz*

Maurice H. Sercarz

MHS:vmp
Encl.

cc:    Gerald DiChiara, Esq.

       Anthony Evans, Esq.

4

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription  10/18/2011

On 10/05/2011, STEVENSON DUNN JR. ("DUNN"), date of birth 07/05/1961, ssn 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, 538 Hart Street, Brooklyn, NY, agreed to be interviewed by Special Agents Joseph Della Penna, U.S. Department of Labor, Office of Labor Racketeering and Fraud Investigations ("DOL/OLRFI"), and Naushaun Richards, Federal Bureau of Investigation ("FBI"), at the office of the FBI, 26 Federal Plaza, New York, NY. DUNN was arrested during the evening of 10/05/2011 in the vicinity of Junior's restaurant ("Junior's"), 386 Flatbush Avenue Ext, Brooklyn, NY 11201. After being read his Miranda Rights as stated on Form FD-395, Interrogation; Advice of Rights, DUNN agreed to waive his rights of counsel to be present during this interview. DUNN was arrested on federal RICO, Extortion, Wire Fraud and Money Laundering charges out of the EDNY for the case against him involving corruption surrounding the NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT ("HPD").

From 1983 through 1996, DUNN worked for the NYC BOARD OF EDUCATION ("BOE") as a Budget Analyst. In 1979, he graduated from Brooklyn Tech High School, where he attended with three (3) current HPD employees: (1) WENDELL WALTERS ("WALTERS"), current Assistant Commissioner (class of 1980); (2) ANNE MARIE HENDRICKSON ("HENDRICKSON"); and (3) WAYNE MACKEY ("MACKEY").



DUNN admitted to threatening and using an angry tone while on the telephone with ANTHONY ARMSTRONG, brother of GEORGE ARMSTRONG ("ARMSTRONG"). DUNN also told ANTHONY ARMSTRONG that DUNN has connections with people from the Marcy projects in Brooklyn, NY, as a means of intimidation. DUNN stated that he got "hot" because ARMSTRONG gave DUNN a bounced check in the amount of $50,000. According to DUNN, ANTHONY ARMSTRONG was shook-up by DUNN's telephone conversation. DUNN stated that Citibank provided him with $50,000 when he cashed ARMSTRONG's check even though the check bounced. DUNN began moving monies around between his other business bank accounts in order to cover the $50,000 bounced check from ARMSTRONG.

A few months ago, ARMSTRONG was supposed to give DUNN $47,000 during their meeting at Junior's, however, DUNN was surprised when ARMSTRONG only paid him $7,000 in cash.

DUNN stated that it was his intentions to sell ARMSTRONG after-market goods from Lowe's and Home Depot, such as light fixtures,

---

Investigation on  10/05/2011  at  New York, NY

File #  ~~[redacted]~~                          Date dictated _____

by  SA Joseph Della Penna, USDOL
    SA Nashaun Richards, FBI

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of   STEVENSON DUNN                    , On 10/05/2011 , Page  2

appliances, etc., in connection with the HPD related development project named HANCOCK. DUNN admitted that, at times, he accepted more monies than he was entitled to from ARMSTRONG, and created fake invoices to support these kickback payments on the HANCOCK project. During this time period of the kickback payments, DUNN along with partners LEE HYMOWITZ, Esq. ("HYMOWITZ"), and MICHAEL FREEMAN, Esq. ("FREEMAN") were the HANCOCK developers, and ARMSTRONG was a contractor/developer under his company named METROPOLIS DEVELOPMENT CORPORATION ("MDC"). DUNN, HYMOWITZ, and FREEMAN operated SML DEVELOPMENT ("SML"), which was the entity they used to develop the HANCOCK project.

DUNN stated that he has "no love" for WALTERS. DUNN once paid $10,000 in cash to WALTERS even though WALTERS had requested a $75,000 payoff from DUNN for the HANCOCK project. DUNN explained to WALTERS that he cannot satisfy a $75,000 payoff to WALTERS, because DUNN had to put monies into DUNN's company. DUNN placed the $10,000 in cash inside a wine container and handed it to WALTERS. DUNN cashed a check in order to generate the $10,000 cash payoff to WALTERS. WALTERS instructed DUNN to select ARMSTRONG as the general contractor on the HANCOCK project. DUNN lied to ARMSTRONG when he told him that he videotaped WALTERS receiving the $10,000 cash payoff from DUNN in order to "blow smoke up his ass." DUNN stated that he paid WALTERS $10,000 to avoid WALTERS throwing him off the HANCOCK project, because ARMSTRONG was messing up as its general contractor.

In 1996, DUNN first met HYMOWITZ and FREEMAN through DUNN's Attorney RUTH FURMAN ("FURMAN"), and SCOTT MARANOFF ("MARANOFF"), during which point DUNN had purchased apartments in the Bedford-Stuyvesant section of Brooklyn, NY. Since DUNN needed financing for the purchase of the Bedford-Stuyvesant apartments, FURMAN referred DUNN to HYMOWITZ and FREEMAN, who eventually funded DUNN via a loan for the financing of said apartments. DUNN then went to the HPD when he purchased these apartments. DUNN became good friends with HYMOWITZ, and they began to get involved with NEIGHBORHOOD ENTREPRENEURS PROGRAM ("NEP") projects - DUNN would handle the construction, and HYMOWITZ would handle the real estate issues. It was HYMOWITZ's idea for DUNN and HYMOWITZ to form an LLC and split the ownership. Originally, both DUNN and HYMOWITZ did not want FREEMAN as a partner within the LLC, but FREEMAN knew the relevant politicians in the housing area.

Regarding SML's development project named LEXINGTON AVENUE CLUSTER ("LEXINGTON"), BOGDAN STARZECKI ("STARZECKI") of MCR RESTORATION CORPORATION ("MCR") was selected as SML's general

Continuation of FD-302 of __STEVENSON DUNN__ , On __10/05/2011__ , Page __3__

contractor. DUNN approached STARZECKI and asked him to hire DUNN as his subcontractor on 626 and 628 Myrtle Avenue, both of which buildings were included within LEXINGTON, to which STARZECKI agreed. Next, DUNN hired subcontractors to perform construction for STARZECKI at 626 and 628 Myrtle Avenue, from which DUNN earned approximately $15,000-$20,000 for this endeavor. ~~Shortly thereafter, WALTERS told~~ DUNN that contractors (STARZECKI) are ~~supposed to be~~ making payoffs to the developer ~~equal to~~ approximately 3-4 percent of the total ~~contract amount~~. WALTERS was "pissed" at DUNN because, by this point, DUNN had yet to ask STARZECKI for a kickback.

DUNN stated that after LEXINGTON, ~~SML selected~~ THE STARZECKI/MCR WAS SELECTED as ~~its~~ general contractor for an HPD Neighborhood project (name unknown), at which point DUNN, ~~HYMOWITZ, and FREEMAN all~~ HE knew that ~~they~~ could ask STARZECKI for a kickback on the HPD Neighborhood project. DUNN explained that ~~SML also selected~~ THE STARZECKI again as ~~its~~ WAS SELECTED general contractor because STARZECKI is a good contractor. STARZECKI agreed to make kickback payments to DUNN, ~~HYMOWITZ, and FREEMAN~~ on the HPD Neighborhood project. WALTERS also told DUNN to talk to STARZECKI about kickbacks on this project, and to not mess it up this time. STARZECKI paid DUNN $75,000 in kickback payments, which was disguised by fake invoices issued from DUNN's company 334 MARCUS GARVEY CORP ("334 MGC") to MCR. ~~STARZECKI also made kickback payments to HYMOWITZ~~ and FREEMAN by providing them with two (2) checks in the amounts of $100,000, and approximately $50,000, both of which checks were likely deposited into HYMOWITZ and FREEMAN's Escrow account. It was DUNN, HYMOWITZ, and FREEMAN who ~~had~~ collectively negotiated a $300,000 kickback payment ~~from~~ STARZECKI in connection with this project. ~~STARZECKI~~ has yet to pay the remaining kickback balance of ~~approximately $75,000 to DUNN, HYMOWITZ, and FREEMAN~~. DUNN said that he had to put approximately $20,000 of the $75,000 kickback payment from STARZECKI into the actual security budget of the HPD Neighborhood project.

DUNN believes that the ENTERPRISE FOUNDATION has a bunch of "crooks" working for them because they never gave DUNN relocation checks. The ENTERPRISE FOUNDATION was a marketing partner on one of DUNN's projects. ROLANA WATSON is an employee of ENTERPRISE FOUNDATION.