```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNITED STATES OF AMERICA,               :      Indictment No.: 11 CR 683 (NG)

        v.                              :

                                        :

LEE HYMOWITZ,
MICHAEL FREEMAN, et al.,
                                        :

                Defendants.             :
---------------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS LEE HYMOWITZ AND MICHAEL FREEMAN'S OMNIBUS MOTION

SERCARZ & RIOPELLE, LLP
152 West 57th Street, 24th Floor
New York, New York 10019
Telephone: 1-212-586-4900
*Attorneys for Lee Hymowitz*

LAW OFFICES OF GERALD J. DICHIARA
3 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 679-1958
*Attorneys for Michael Freeman*

**STATEMENT OF FACTS**

**The Indictment**

Indictment (S-1) 11 CR 683 (NG) charges that real estate developers received kickbacks from general contractors in exchange for their selection to work on the construction, rehabilitation and renovation of projects created by the New York City Department of Housing Preservation and Development ("HPD"). The defendants Lee Hymowitz and Michael Freeman were partners in the law firm Hymowitz & Freeman and were alleged to be involved with the defendant Stevenson Dunn in development entities including, among others, SML Development LLC, SML Bed Stuy Development LLC and Hancock Street SML LLC, which were selected as real estate developers for HPD projects.

The defendants Hymowitz and Freeman are charged in Count 2 of the Indictment with conspiracy to defraud HPD (wire fraud) in violation of 18 U.S.C. § 1343. The defendants are charged in Counts 3 through 6 with four substantive acts of wire fraud each based upon a transfer of funds either to the Hymowitz & Freeman IOLA account or to an account in the name of the developer, Hancock Street SML. (See 18 U.S.C. §§ 1343, 2 and 3551 et seq.). In Count 7, Hymowitz and Freeman are charged with conspiracy to engage in monetary transactions in criminally derived property with a value of over $10,000 which was derived from specified unlawful activity; to wit, extortion and wire fraud in violation of 18 U.S.C. §§ 1956(h), 1957(b), 1957(d)(1) and 3551 et seq. Finally, the defendants are charged in Count 8 with substantive acts of money laundering in violation of 18 U.S.C. § 1951(a).

The co-defendant Dunn is the sole defendant charged in Count 1 with racketeering conspiracy. Racketeering Acts 1 through 4 charges Dunn with wire fraud based upon the receipt of kickback payments from two builders, John Doe #1 and John Doe #2.

1

Racketeering Act 5 charges money laundering conspiracy and money laundering based upon the same facts that give rise to Counts 7 and 8 of the Indictment. Racketeering Act 6 alleges that Dunn bribed John Doe #3, whom we believe to be Wendell Walters, a high-level officer of HPD. Racketeering Act 7 charges the defendant Dunn with extortion in connection with his receipt of cash payments from the builder John Doe #2.

Dunn is also named, together with Hymowitz and Freeman, in Counts 2 through 6 alleging wire fraud conspiracy, and substantive acts of wire fraud. Finally, Dunn, together with Hymowitz and Freeman, is charged in Counts 7 and 8, which allege money laundering conspiracy and substantive acts of money laundering.

Under the title "The Criminal Schemes," the Indictment provides the only description of the underlying conduct attributed to Hymowitz and Freeman. That paragraph reads, in its entirety, as follows:

> 13. In or about and between January 2005 and October 2011, both dates being approximate and inclusive, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, solicited and received kickback payments from John Doe #1 and John Doe #2 in return for the award of general contracting and real estate development work with the SML Entities on HPD projects. DUNN, HYMOWITZ and FREEMAN included and caused to be included the amount of money they received in the form of kickback payments from John Doe #1 and John Doe #2 in requisitions for payment they submitted to HPD, thereby passing on the costs of their own corrupt activity to HPD. To further conceal the true nature of these kickback payments, DUNN, HYMOWITZ and FREEMAN provided John Doe #1 with a sham retainer agreement for Hymowitz and Freeman's legal services and provided John Doe #1 and John Doe #2 with false and inflated invoices for services and supplies from, among others, 334 Marcus Garvey Boulevard Corporation. In addition, when John Doe #2 failed to pay some of the kickback payments demanded by DUNN, DUNN threatened John Doe #2 and his family with force, violence and fear. Also in or about and between 2007 and 2008, DUNN made a cash bribe payment to John Doe #3.

Indictment at ¶ 13.

2

**ARGUMENT**

I. **The Indictment Must Be Dismissed. In the Alternative, The Government Should Be Ordered To Provide A Bill Of Particulars**

    A. The Indictment Fails To Allege The Elements Of A Wire Fraud Conspiracy, Or Substantive Offense

An Indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs a defendant of the charges which he now must defend; and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. See United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (quoting Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887 (1974)).

The essential elements of a wire fraud violation are (1) a scheme to defraud; (2) money or property as the object of the scheme; and (3) use of the wires to further the scheme. See Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004), cert. denied, 544 U.S. 1017, 125 S. Ct. 1968 (2005). Although the Indictment need not allege that the victims of the fraud were in fact injured, it must allege that the defendant contemplated actual harm that would befall victims due to his deception. See United States v. Novack, 443 F.3d 150, 156 (2d Cir.), cert. denied, 549 U.S. 997, 127 S. Ct. 525 (2006).

Where the allegations of fraud rest on a failure to disclose, rather than affirmative misrepresentations, such non-disclosure does not give rise to charges of mail or wire fraud unless there is a fiduciary obligation; and, unless the failure to disclose can or does result in some tangible harm. See United States v. Carpenter, 791 F.2d 1024, 1035 (2d Cir. 1986), aff'd, 484 U.S. 19, 108 S. Ct. 316 (1987). Lack of information that might have an impact on the decision regarding where government money is spent, without more, is not a tangible harm and therefore

3

does not constitute a deprivation of Section 1341 "Property." <u>United States v. Middlestaedt</u>, 31 F.3d 1208, 1217 (2d Cir. 1994).

According to the Indictment, developers solicited and received kickback payments from building contractors in return for the award of general contracting work on HPD projects. Hymowitz and Freeman allegedly "included" the amount of money they received in the form of kickback payments in requisitions for payment they submitted to HPD. The Indictment, however, fails to describe the manner in which the requisitions were inflated to pass the cost of the alleged kickbacks to HPD. The Indictment does not claim that any particular representation in any requisition for payment was false. Nor does the Indictment allege that the failure to acknowledge the alleged kickbacks resulted in an overpayment when compared with the specifications of the contract between the builder and HPD. Finally, the Indictment does not allege that had HPD known of the corrupt arrangement, HPD would not have entered into the relationship with Hymowitz and Freeman.

Misrepresentations amounting to only a deceit are insufficient to obtain a mail or wire fraud prosecution. Such a charge cannot apply to situations where the alleged victim receive exactly what they paid for and where there is no discrepancy between benefits reasonably anticipated and those received. <u>See</u> <u>United States v. Shellef</u>, 507 F.3d 82, 108 (2d Cir. 2007), and cases cited therein.

Accordingly, those counts charging the defendants with a scheme to defraud and with substantive counts of wire fraud must be dismissed.

    B.    The Indictment Fails To Allege A Money Laundering Conspiracy Or Substantive Offense

Count 7 of the Indictment, which alleges a money laundering conspiracy, claims that between January 2005 and October 2011, the defendants Stevenson Dunn, Lee Hymowitz

4

and Michael Freeman, together with others conspired to engage in monetary transactions in criminally derived property of a value greater than $10,000 which was derived from specified unlawful activity, to wit: extortion and wire fraud, all in violation of Title 18 U.S.C. §§ 1956(h), 1957(b), (d)(1), et seq. Count 8 charges the three defendants with a substantive money laundering offense.

The elements of a money laundering offense in violation of 18 U.S.C. § 1957 are as follows: First, that the defendant engaged (or attempted to engage) in a monetary transaction in or affecting interstate commerce. Second, that the monetary transaction involved criminally derived property of value greater than $10,000. Third, that the property was derived from specified unlawful activity. Fourth, that the defendant acted knowingly; that is with knowledge that the transaction involved proceeds of a criminal offense. Fifth, that the transaction took place in the United States. See Sand, et al., 2d Circuit Pattern Jury Instructions, Instruction 50A-26, and cases cited therein.

The term "criminally derived property," is defined in section 1957 as "any property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. §§ 1957(a), (f)(2). This refers to funds obtained from a prior, separate criminal act since money laundering "must be a crime distinct from the crime by which the money is obtained." United States v. $1,399,313.74 in United States Currency, 591 F. Supp. 2d 365, 372 (S.D.N.Y. 2008); see also United States v. McCarthy, 271 F.3d 387, 395 (2d Cir. 2001) ("Our case law consistently distinguishes between the crime that produces proceeds and the subsequent crime of laundering those proceeds ….").

The specified unlawful activity delineated in the Indictment is limited to mail fraud and extortion. As explained above, the Indictment fails to set forth either a substantive mail fraud or a conspiracy to commit mail fraud by Hymowitz and Freeman.

With regard to the allegations of extortion, ¶ 13 of the Indictment specifically alleges that it was Dunn, acting alone, who threatened John Doe #2 and his family in order to obtain a payment. The Indictment consistently attributes the extortionate behavior only to Dunn. Of the three defendants, only Dunn is charged in the racketeering conspiracy count which includes as Racketeering Act 7 the receipt of the extortionate payment from John Doe #2.

Moreover, there is nothing in the Indictment to suggest that Hymowitz and Freeman engaged, or intended to engage, in a monetary transaction with the fruits of Mr. Dunn's allegedly extortionate behavior. See United States v. Piervinanzi, 23 F.3d 670, 677 (2d Cir. 1994) ("proceeds of a crime [must] be in defendant's possession before he can attempt to transfer those proceeds in violation of § 1957")

In the absence of any allegation that the laundered funds were the fruits of an illegal predicate act, and were known by the defendants to be criminally derived property, the Indictment cannot stand. See United States v. Pierce, 224 F.3d 158, 165 (2d Cir. 2000) (convictions reversed in case charging conspiracy to engage in money laundering in furtherance, and using the profits, of an illegal wire fraud scheme, where government failed to establish a fact necessary to prove wire fraud); cf. United States v. Hassan, 578 F.3d 108, 127 (2d Cir. 2008) (money laundering conviction reversed where there was no evidence "to show that the underlying transactions actually involved the proceeds of" trafficking); $1,399,313.74 in United States Currency, 591 F. Supp. 2d at 372 (dismissing money laundering count from civil

6

forfeiture complaint where there were no allegations supporting a reasonable belief that funds involved were criminally derived property or that claimants were aware of such illegal origin).

Under these circumstances, the money laundering counts must be dismissed as to the defendants Hymowitz and Freeman.

C. In The Alternative, The Court Should Require The Government To Produce A Bill Of Particulars In Accordance With Fed.R.Crim.P. Rule 7(f)

A bill of particulars is intended to allow a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and interpose a plea of double jeopardy should he be prosecuted for a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).

The government has refused to supply any particulars beyond agreeing to direct defense counsel to those requisitions for payment which allegedly contained fraudulent statements or omissions.

We submit that a mere examination of requisitions for payment will not enable the defendant to prepare for trial; nor will it eliminate the double jeopardy concerns which are at the root of this application. The government must identify those representations which are allegedly false; and those omissions which render the document materially and substantially misleading.

With regard to the money laundering counts, the government must specify those financial transactions which are the subject of both the conspiracy and substantive money laundering counts.

Accordingly, we would request an order requiring the government to provide those particulars requested. (See Ex. B).

7

**II.     The Defendants Hymowitz and Freeman Move For A Severance Of
         Their Trial From The Trial Of Stevenson Dunn Or, In The Alternative For
         Redactions From Dunn's Post-Arrest Statement Sufficient To Preserve The
         <u>Confrontation Rights Of His Co-Defendants</u>**

    In <u>Bruton v. United States</u>, 391 U.S. 123 (1968), the Supreme Court held that, at a joint trial, a defendant's confrontation rights were violated by the admission of a co-defendant's confession that implicated the defendant. The Court concluded that, in this circumstance, it could not be presumed that the jury would follow the trial courts limiting instruction to consider the confession against the defendant. <u>See</u> <u>id</u>. 391 U.S. at 135-36.

    In <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987), the Supreme Court held that there was no violation of the defendant's confrontation rights if the co-defendant's confession was redacted to omit all reference to the defendant's existence. In <u>Gray v. Maryland</u>, 523 U.S. 185 (1998), the Court held that redactions that "simply replace a name with an obvious blank space or a word such as "deleted" or a symbol or other similarly obvious indication of alteration was unacceptable. <u>Id</u>. at 191-93. The Second Circuit has upheld the use of a redacted statement in which the names of co-defendants are replaced by neutral pronouns with no indication to the jury that the original statement contained actual names, only where the statements do not otherwise connect co-defendants to the crimes. <u>See</u> <u>United States v. Tutino</u>, 883 F.2d 1125, 1135 (2d Cir. 1989); <u>United States v. Kyles</u>, 40 F.3d 519, 526 (2d Cir. 1994); <u>United States v. Benitez</u>, 920 F.2d 1080, 1087 (2d Cir. 1990).

    In the present case, the defense proposed redactions which were adequate to protect the defendants' confrontation rights. The government refused to agree to these redactions insisting that, in several instances, references in the FBI 302 to Hymowitz and Freeman be replaced by the words "and others."

8

The government's watered down redactions would result in a document which, standing alone, would clearly implicate the co-defendants Hymowitz and Freeman. The Indictment charges that the bribery, extortion and fraud schemes occurred in the context of bidding and construction of HPD projects. Dunn's admissions implicating himself in (1) the bribery of Wendell Walters; (2) extortionate activity toward a builder, George Armstrong; and (3) the creation of fake invoices, state that he engaged in this conduct while acting as a partner in SML Development on two HPD projects, the Hancock Project and the Lexington Avenue cluster. (See FBI 302 passim). As a result, the use of the term "and others" in describing Dunn's unlawful activity will immediately create the inference that he was acting with the knowledge and consent of the other participants in the development corporations.

Thus, the government's proposal would result in a document which, even if it were the first item introduced into evidence at trial, would incriminate Hymowitz and Freeman. See Gray v. Maryland, 523 U.S. at 196. For this reason, the only suitable remedies are severance, or in the alternative, the more complete redactions proposed by defense counsel.

### III.    The Defendants Move That The Government Be Required To Produce Brady Material

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused […] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Material that is "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of the government's witnesses. United States v. Bagley, 473 U.S. 667, 676-77 (1985); Giglio v. United States, 405 U.S. 150, 154-55 (1972). For these purposes a "witness" includes a hearsay declarant whose out of court statement the government seeks to introduce and

9

who is subject to impeachment pursuant to Fed.R.Evid. Rule 806. See United States v. Jackson, 345 F.3d 59, 70-71 (2d Cir. 2003). The fact that evidence may have incriminatory as well as exculpatory aspects does not preclude its treatment as Brady material. See United States v. Rivas, 377 F.3d 195, 199-200 (2d Cir. 2004); see also DiSimone v. Phillips, 461 F.3d 181, 195 (2d Cir. 2006). Nor is the exculpatory value of information negated by the fact that the government has other evidence that contradicts the exculpatory information. See United States v. Rittweger, 524 F.3d 171, 181 (2d Cir. 2008).

The defendants' October 24, 2012 letter included a particularized Brady request. (See Ex. B). To date, the government has not responded to the letter by acknowledging that the items requested, if they exist, fall within the ambit of Brady; by indicating whether or not it has such material; or by agreeing to provide it.

Under these circumstances, we request an order requiring the government to provide, six weeks prior to trial, any material within its possession which falls into the categories described in our Brady letter and, all other Brady material.

**IV.   The Defendants' Request That Six Weeks Prior To Trial The Government Provide Defense Counsel With Expert Witness Notice; and (2) The Listing Of Any 404(b) Material That It Intends To Introduce Against Either Of The Defendants At Trial**

Fed.R.Crim.P. Rule 16(g) provides that at the defendant's request, the government must provide to the defendant a written summary of any testimony that it intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence. We request that this material be disclosed sufficiently in advance of trial to permit any necessary motion practice or hearings that may ensue.

The same should apply to any material the government intends to introduce against either defendant pursuant to Fed.R.Evid. Rule 404(b).

10

**V.     The Defendants Request Early Disclosure Of Jencks Material**

While we are aware of the literal language of 18 U.S.C. § 3500, it is the policy of the United States Attorney's Office in this district to provide disclosure of 3500 material in advance of trial. Because this is a complex case involving a broad spectrum of alleged criminal activity directed against a government agency, we would request that the Court direct the government to disclose such material at least one month prior to trial.

**CONCLUSION**

For all of the foregoing reasons, defendants' omnibus motion should, in all respects, be granted.

Dated:  New York, New York
        December 7, 2012

                                        Respectfully submitted,

                                        SERCARZ AND RIOPELLE, LLP


                                        By: s/ Maurice H. Sercarz
                                            152 West 57th Street, 24th Fl.
                                            New York, New York 10019
                                            Telephone: (212) 586-4900
                                            Email: msercarz@sercarzandriopelle.com
                                            *Attorneys for Lee Hymowitz*



                                        LAW OFFICES OF GERALD J. DICHIARA

                                        By: s/ Gerald J. DiChiara
                                            3 Park Avenue, 15th Floor
                                            New York, NY 10016
                                            Telephone: (212) 679-1958
                                            Email: jdichiarag@aol.com
                                            *Attorneys for Michael Freeman*