**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 2 - 2013 ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA,

  - against -

                                  **OPINION & ORDER**
                                    **11 CR 683 (NG)**

WENDELL WALTERS, et al.,

                          **Defendants.**
-------------------------------------------------------x

**GERSHON, United States District Judge:**

    Defendants, Lee Hymowitz and Michael Freeman ("Hymowitz" and "Freeman," or, collectively, "Defendants"), are charged by Superseding Indictment (the "Indictment") with conspiracy to commit wire fraud (Count Two), wire fraud (Count Three), conspiracy to commit money laundering (Count Seven), and money laundering (Count Eight). By this motion, Hymowitz and Freeman seek to dismiss the Indictment, or, in the alternative, to compel the government to produce a bill of particulars.[1]

    Defendants also move to sever their trial from that of co-defendant, Stevenson Dunn ("Dunn"), or to redact Dunn's post-arrest statement, in order to preserve their confrontation rights, in accordance with *Bruton v. United States,* 391 U.S. 123 (1968), and its progeny.[2]

---

[1] The other issues initially raised by this motion were resolved, on the record, during the proceedings of January 24, 2013. *See* Trans. of Oral Arg., Jan. 24, 2013 (the "Jan. 24 Tr.").

[2] Dunn has moved to suppress his post-arrest statement in its entirety. An evidentiary hearing was held on May 20, 2013, and Dunn's motion is currently *sub judice.* I nonetheless address this portion of Hymowitz and Freeman's motion here.

For the reasons set forth below, the Defendants' motion is denied in part and granted in part.

## BACKGROUND

According to the Indictment, between 2005 and 2011, the New York City Department of Housing Preservation and Development ("HPD") administered various programs intended to develop affordable housing. (Ind. ¶¶ 2, 13.) In connection with these programs, HPD selected real estate developers, or "sponsors," who would then, with HPD, select general contractors to manage the construction and other work the projects required. (*Id.* ¶ 3.) One such developer selected by HPD was co-defendant Dunn, whose corporate entities included SML Development LLC, SML Bed Stuy Development, LLC, and Hancock Street SML LLC (collectively, the "SML Entities"). (*Id.* ¶ 7.) Hymowitz and Freeman were partners, with Dunn, in the SML Entities, and, separately, in the law firm of Hymowitz & Freeman. (*Id.*)

The Indictment contains allegations that Dunn, Hymowitz and Freeman solicited and received kickback payments from certain general contractors ("John Doe #1" and "John Doe #2") in exchange for awarding them work in connection with various HPD projects. Dunn, Hymowitz and Freeman allegedly included the amounts of the kickback payments in requisitions submitted to HPD, "thereby passing on the costs of their own corrupt activity to HPD." (Ind. ¶ 13.) Hymowitz and Freeman also allegedly provided to John Doe #1 a "sham retainer agreement" for legal services and, to John Doe #1 and John Doe #2, "false and inflated invoices" for certain services and supplies. (*Id.*) It is further alleged that Dunn threatened John Doe #2 and his family with violence when John Doe #2 failed to make some of the kickback payments, and that Dunn made a cash bribe payment to John Doe #3. (*Id.*)

2

While the Indictment contains charges of Racketeering Act violations, money laundering, wire fraud, extortion, bribery and various conspiracies against Dunn, the only charges asserted as to Hymowitz and Freeman are conspiracy to commit wire fraud, wire fraud, money laundering, and conspiracy to commit money laundering. (*See id.* ¶¶ 27-33.)

The government has indicated that it expects to introduce at the trial of Dunn, Hymowitz and Freeman, Dunn's post-arrest statement, in which he implicates himself in the kickback scheme underlying the wire fraud and money laundering charges. Although the government has proposed certain redactions to the statement, Defendants argue that they are insufficient to protect their constitutional rights under *Bruton*, 391 U.S. 123.

## DISCUSSION

### A. Standard of Review on a Motion to Dismiss

Pursuant to Rule 7 of the Federal Rules of Criminal procedure, the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." On a motion to dismiss, the court must treat the allegations contained in the indictment as true. *See, e.g.*, *United States v. Coffey*, 361 F.Supp.2d 102, 111 (E.D.N.Y. 2005). Moreover, an indictment is read "to include facts which are necessarily implied by the specific allegations made." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). "[A]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *Id.* In fact, "[a]n indictment need do little more than to track the language of the statute

3

charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975). "Generally, the indictment does not have to specify evidence or details of how the offense was committed. Simply put, the validity of an indictment is tested by its allegations, not by whether the Government can prove its case." *Coffey*, 361 F.Supp.2d at 111 (citations omitted).

## B. Sufficiency of the Wire Fraud Charges

Under § 1343 of Title 18, United States Code, it is unlawful to transmit by wire any writing or signal for the purpose of executing a scheme to defraud.[3] It is well-settled that the elements of a violation of this statute are a scheme to defraud, money or property as the object of that fraud, and use of the wires to further the scheme. *See, e.g. United States v. Miller*, 997 F.2d 1010, 1017 (2d Cir. 1993)). The allegations relating to the "scheme to defraud" must also reflect the defendants' contemplation of "actual harm or injury to their victims." *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006).

Defendants argue that the allegations set forth in the Indictment are insufficient to support a charge of wire fraud for two reasons, both relating to the "scheme to defraud."[4] First, Defendants

---

[3] 118 U.S.C. § 1341 criminalizes the use of the mail for the same sinister ends, and the two statutes are often discussed interchangeably. *See, e.g. United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996). Here, however, only § 1343 (wire fraud) is implicated.

[4] Although defendants also make a perfunctory argument as to the absence of a tangible harm resulting from the alleged scheme to defraud, the Indictment clearly alleges that by including the amounts of the kickback payments in the requisitions for payment, the defendants passed on "the costs of their own corrupt activity to HPD." (Ind. ¶ 13.) The resulting increased expenditures by HPD can only be understood as a tangible harm intended, or at least contemplated, by Defendants.

4

argue that, to the extent the allegations relating to the scheme to defraud arise out of a failure to disclose, rather than an affirmative misrepresentation, the Indictment must also contain allegations of a fiduciary relationship or obligation. Second, the Defendants argue that, in order to amount to a scheme to defraud within the meaning of § 1343, the alleged scheme must consist of more than "only a deceit;" the Defendants argue that, if there is no discrepancy between the benefits anticipated and those received by the alleged victim, then there is no scheme to defraud within the statute.

With respect to the first argument, Hymowitz and Freeman assert that the failure to acknowledge receipt of a bribe in a requisition for payment is an omission, not an affirmative misrepresentation and, as such, does not amount to a scheme to defraud in the absence of a fiduciary relationship between the parties. However, the inclusion in a requisition for payment, of the amount of a kickback payment received by Defendants, as a "cost" to be recouped by them, is an affirmative misrepresentation. The requisition would be understood by HPD to set forth the amount of *expenses incurred* by the Defendants in connection with a given HPD project; and a kickback payment received is not an expense incurred. The circumstances giving rise to the charges at issue here do not require allegations relating to fiduciary duty.

In their second argument relating to the scheme to defraud, defendants assert that, if HPD and SML Entities selected a contractor based upon a fixed budget – i.e., if they awarded the project to the lowest bidder – and if SML Entities and the contractor completed the project for the amount of the bid, then, even if there were a misrepresentation contained in the requisition for payment the parties later submitted to HPD, such misrepresentation amounts only to deceit and does not give rise to a scheme to defraud. Defendants further argue that, since the Indictment does not allege that HPD

actually paid more than it would have in the absence of the alleged fraud, the charge of wire fraud must be dismissed.

Defendants cite to *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007), to support this contention. In *Shellef*, the Court of Appeals for the Second Circuit vacated the judgments of conviction of two defendants on charges of, *inter alia*, defrauding the IRS and wire fraud and remanded for a new trial.[5] The scheme alleged in *Shellef* involved the purchase and sale, by the defendants, of a certain chemical, CFC-113, without the payment of appropriate excise taxes. The indictment alleged as follows:

> It was a further part of the scheme and artifice that by promising to export all of the CFC-113 purchased, [Shellef] induced Allied Signal to sell additional amounts of virgin CFC-113 to [Shellef's company,] Poly Systems that it would not have sold had it known that Shellef in fact intended to sell the product domestically.

*Id.* at 109. In discussing the sufficiency of this allegation relating to wire fraud, the Second Circuit wrote:

> [o]ur cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes.

507 F.3d at 108. As examples of the former, the *Shellef* Court discusses *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970), where the defendants' sales personnel misrepresented their identities in order to get access to prospective customers, and *United States v. Starr*, 816 F.2d 94 (2d Cir. 1987), where the defendants represented that their customers' shipments

---
5

Although not relevant to the discussion here, the subsequent history of this case, including disposition of the appeal following remand, is set forth in *United States v. Shellef*, No. 11-cr-876, – F.3d – (2d Cir., May 23, 2013).

were sent via high-rate mail (and charged them the high-rate prices), but actually sent them via low-rate mail. In contrast, and as an example of the latter, the *Shellef* Court discusses *United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991), where a purchaser of night vision goggles misrepresented its intent to ensure that the goods would not be used to violate applicable export laws, and instead arranged to have them smuggled into several nations, in direct contravention of such laws.

In *Regent Office*, the Court concluded that there was no fraud under the mail/wire fraud statutes, because the misrepresentation was "not directed to the quality, adequacy or price of goods to be sold, or otherwise to the nature of the bargain." *Regent Office Supply Co.,* 421 F.2d at 1179. Similarly, the *Starr* Court found that "the misappropriation of funds" was not relevant to "the object of the contract," which was the appropriate and timely delivery of the shipments. *Starr*, 816 F.2d at 100. In *Schwartz*, however, the Court concluded that, although the seller received payment for the goggles, the defendants' "misrepresentations went to an essential element of the bargain," and that the defendants had "deprived [the seller] of the right to define the terms for the sale of its property." *Schwartz*, 924 F.2d at 421.

As set forth above, the *Shellef* indictment alleged only that the misrepresentation induced Allied Signal to sell *more* of the CFC-13 than it otherwise would have done, and not that the misrepresentation went to an essential element of the bargain. In the absence of such an allegation, the *Shellef* Court concluded that the wire fraud charge was insufficient. *Shellef*, 507 F.3d at 109.

Here, in contrast, the Indictment contains allegations that the Defendants "included and caused to be included the amount of money they received in the form of kickback payments from John Doe #1 and John Doe #2 in requisitions for payment they submitted to HPD, thereby passing

7

on the costs of their own corrupt activity to HPD." (Ind. ¶ 13.) It is further alleged that the "false requisitions would and did cause HPD to make payments to Dunn and others . . . and that such payments from HPD would be and were used, in part, to fund kickback payments." (*Id.* ¶ 20.) There can be no doubt that the object of the contract between HPD and the developers was to obtain certain services at a competitively selected price. By padding their requisition forms so that HPD would have to absorb the costs of the kickbacks, Defendants inflated the true cost of the services provided, which amounts to a misrepresentation that goes to the very nature of the bargain.

The Indictment thus contains adequate allegations concerning the existence of a scheme to defraud (the solicitation of kickback payments and the inclusion of such payments in the requisitions submitted to HPD), money as the object of the scheme (payments from the contractors and HPD), and the use of the wires to further the scheme (the wire transfers set forth in ¶ 31 of the Indictment). The motion to dismiss this count and the related conspiracy count, is therefore denied.

## C. Sufficiency of the Money Laundering Charge

Under § 1957 of Title 18, United States Code, it is unlawful for any person to engage (or attempt to engage) in a monetary transaction involving criminally derived property of value greater than $10,000. 18 U.S.C. § 1957. Section 1956(h) provides that any person who conspires to commit an offense under either § 1956 or § 1957 "shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

Charges relating to money laundering need not be pled with "great particularity," but they must contain "all essential elements of the offenses." *Bernstein v. Misk*, 948 F.Supp. 228, 236, n.

2 (E.D.N.Y. 1997). Thus, the allegations necessary to support a charge of violation of § 1957 are that a defendant knowingly engaged (or attempted to engage) in a monetary transaction involving criminally derived property, the value of which is greater than $10,000, and which has actually been derived from specified unlawful activity. *Bernstein*, 948 F.Supp. at 236, n. 2.

Conspiracy to launder money "requires that two or more people agree to violate [§ 1957], and that the defendant knowingly engaged in the conspiracy with the specific intent to commit the offenses that are the objects of the conspiracy." *United States v. Garcia*, 587 F.3d 509 (2d Cir. 2009) (internal quotation marks omitted). Conspiracy to commit money laundering in violation of § 1956(h) does not require proof of an overt act in furtherance of the conspiracy. *Whitfield v. United States*, 543 U.S. 209, 219 (2005); *United States v. Evergreen International*, 206 Fed.Appx. 71, 77 (2d Cir. 2006).

Counts Seven and Eight of the Indictment set forth the allegations of money laundering conspiracy and money laundering, respectively, against Dunn, Hymowitz and Freeman. Specifically, it is alleged that Dunn, Hymowitz and Freeman, knowingly and intentionally conspired to, and did, make deposits, withdrawals and transfers of funds, which were of a value greater than $10,000, and which were derived from the specified unlawful activities of extortion and wire fraud, in violation of 18 U.S.C. §§ 1956(h) and 1957(a). (Ind. ¶¶ 32-35.) These allegations thus contain all elements of the offenses, and they are sufficient to withstand Defendants' motion. *See Bernstein*, 948 F.Supp. at 236, n. 2.

The first basis for Defendants' assertion that the money laundering charges must be dismissed is that the allegedly criminally derived proceeds are the funds derived from the alleged

9

wire fraud. Since, as I have already concluded, the wire fraud charges are sufficient, this argument is meritless.

Next, Defendants argue that the only extortionate behavior alleged in the Indictment is attributed to Dunn and that there are no allegations which suggest that "Hymowitz and Freeman engaged, or intended to engage, in a monetary transaction with the fruits of Dunn's allegedly extortionate behavior." (Mem. in Supp., at 6.) However, as set forth above, the Indictment adequately alleges that Hymowitz and Freeman engaged in transactions with funds derived from the specified unlawful activity of wire fraud.[6]

**D. The Bill of Particulars**

As an alternative to dismissal, Defendants seek a bill of particulars. They argue that the only specific information provided by the government is a list of requisitions, which allegedly contain fraudulent statements or omissions. Defendants contend that they are thus required, "to guess which of the many cost items allegedly resulted in overpayment" by HPD and that such guesswork entitles them to a bill of particulars. (Reply Mem., at 4.) They also argue that they are entitled to information regarding the specific financial transactions that are the subject of the money laundering charges.

---

[6]

The government does not appear to be asserting that Hymowitz and Freeman also laundered the proceeds of Dunn's alleged extortionate activity; its only response to this portion of the Defendants' motion is the argument that "the wire fraud counts are properly alleged and as a result, the money laundering counts must also stand." (Mem. in Opp., at 16, n. 3.) If this understanding is incorrect, the government should so specify.

10

The government asserts that a bill of particulars is not required, here, since the Indictment, along with the discovery already produced, which includes "copies of the sham retainer agreement, the checks received from John Doe #1 and extensive evidence of payments made to 334 Marcus Garvey Boulevard Corporation, as well as bank records showing various banking transactions that constitute money laundering," is sufficient to make Hymowitz and Freeman "acutely aware of the approximate time frame and circumstances behind the alleged wire fraud conspiracy and money laundering conspiracy and the government's basic theory" of the case. (Mem. in Opp., at 17-18.)

Under Rule 7(f) of the Federal Rules of Criminal Procedure, a defendant may seek a bill of particulars in order to identify the nature of the charges against him, better prepare for trial, prevent surprise, and to interpose a plea of double jeopardy in the event of a second prosecution for the same offense. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars is appropriate, however, only "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). Moreover, a bill of particulars is not to be used "as a discovery device to seek and compel disclosure of the Government's evidence prior to trial." *United States v. Larracuente*, 740 F.Supp. 160, 163 (E.D.N.Y. 1990). The applicable standard for whether a bill of particulars should be granted is "not whether the information sought would be helpful to the defense, but whether it is necessary." *United States v. Batista*, 2009 WL 910357, at *9 (E.D.N.Y. March 31, 2009). Whether or not to grant a bill of particulars is within the discretion of the district court. *Bortnovsky,* 820 F.2d at 574.

As stated above, the allegations set forth in the Indictment are sufficient to withstand the motion to dismiss; they are also sufficient to advise the Defendants of the nature of the charges against them and the specific acts of which they are accused. The Indictment provides information as to the nature of the allegedly fraudulent scheme, its timing and its participants (*see* Ind. ¶¶ 13, 30, 33, 35), and the specific wire transfers giving rise to the wire fraud charges (*id.* ¶ 31). Moreover, at oral argument on this motion, the government indicated that the evidence it plans to proffer at trial will not consist of specific line items from requisitions, but rather, of testimony generally describing the alleged criminal scheme. (*See* Jan. 24 Tr., at 24-26.) The allegations contained in the Indictment, as well as the information already provided to Defendants in the course of discovery are therefore sufficient to enable Defendants to prepare for trial and prevent surprise, and this part of Defendants' motion is denied. *See United States v. Barret*, 824 F.Supp.2d 419 (E.D.N.Y. 2011).

### E. The Defendants' *Bruton* Motion

The government and Defendants have each submitted proposed redactions to Dunn's post-arrest statement, assuming it is not suppressed, in order to ensure that it does not violate the protections established by *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny.[7]

In *Bruton*, the Supreme Court held that the introduction, at a joint trial, of "powerfully incriminating extrajudicial statements of a codefendant, who stands accused side by side with the defendant," violates the Confrontation Clause. 391 U.S. at 135-36. Because of the great risk that a jury would not, or could not, follow an instruction only to consider such statements as against the

---

[7] Defendants seek severance in the event that their redactions are not accepted.

declarant, *Bruton* held that a limiting instruction to the jury would be insufficient to protect the defendant's constitutional right of cross-examination. *Id.* at 137.

Subsequently, in *Richardson v. Marsh*, 481 U.S. 200 (1987), the Court held that "the admission of a nontestifying codefendant's confession with a proper limiting instruction" does not violate the Confrontation Clause, as long as "the confession is redacted to eliminate not only the defendant's name, but [also] any reference to his or her existence." 481 U.S. at 211. The *Richardson* Court did not express an opinion on the admissibility of a confession in which the defendant's name has been replaced by a symbol or neutral pronoun. *See id.* at n.5. In *United States v. Gray*, 523 U.S. 185 (1998), however, the Supreme Court concluded that replacement of the defendant's name with the word "deleted," was insufficient to satisfy *Bruton*, because such "obvious indications of alteration . . . leave statements that, considered as a class, so closely resemble *Bruton's* unredacted statements that, in our view, the law must require the same result." 523 U.S. at 192. The *Gray* Court distinguished *Richardson* by noting that "the blank space in an obviously redacted confession also points directly to the defendant," whereas the redaction in *Richardson* did not. *Id.* at 194.

In the Second Circuit, replacement of a defendant's name by neutral pronouns may be sufficient to satisfy *Bruton*, provided that there is "no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise

13

connect co-defendants to the crimes." *United States v. Tutino*, 883 F.2d 1125, 1135 (2d. Cir. 1989).[8]

In *United States v. Jass*, 569 F.3d 47 (2d Cir. 2009), the Court offered this additional guidance:

> The critical inquiry is always whether introduction of a confession at a joint trial presents an overwhelming probability that the jury will not be able to follow an instruction limiting consideration of the confession to the declarant defendant. . . . Where redaction is employed to avoid *Bruton* concerns, however, *we urge district courts, wherever possible, to eliminate completely from a confession any mention of a non-declarant defendant's existence* . . . Neutral pronoun substitution should be employed *only* when complete redaction would distort the confession, for example, by excluding substantially exculpatory information, or changing the tenor of the utterance as a whole.

*Jass*, 569 F.3d at 56, n.5 (emphasis added) (internal quotation marks and citations omitted).

Since the preferred method of redaction in this Circuit is thus to eliminate reference to the very existence of a non-declarant defendant, I must first consider whether neutral pronoun substitution, as requested by the government, is appropriate in this case. *See, e.g., United States v. Kahale*, 789 F.Supp.2d 359, 389 (E.D.N.Y. 2009), *aff'd sub nom United States v. Graham*, 477 Fed.Appx. 818 (2d Cir. 2012). If so, then I must address, first, whether the redacted statement would "indicate to a jury that the original statement contained actual names, and second, whether the redacted confession, even if the very first item introduced at trial, would immediately inculpate" the Defendants in the crimes charged. *Jass*, 569 F.3d at 61 (internal quotation marks and citation omitted).

---

[8]

Although *Gray* was decided after *Tutino*, the Second Circuit has conclusively stated that *Gray* "did not overrule prior decisions or alter doctrines employed by this Circuit." *United States v. Sanin*, 252 F.3d 79, 84 (2d Cir. 2001); *see also United States v. Jass*, 569 F.3d 47, 59 (2d Cir. 2009) ("we reject any suggestion that *Gray* generally overruled this court's *Tutino* line of precedents.").

14

The government proposes to substitute all references to Hymowitz and Freeman with the word "others."[9] The government contends that this replacement, rather than the complete omission sought by Defendants, is necessary because the charges against Dunn include conspiracy – and without reference to the existence of other co-conspirators, the jury would be misled into thinking that Dunn committed the crimes alone. (*See* Mem. in Opp., at 21.) As the defendants note, however, this element of the conspiracy may be shown by Dunn's agreement with those from whom he solicited bribes.

Defendants argue that the inclusion of the word "others" in the post-arrest statement clearly implicates them in the crimes, since portions of the statement demonstrate that it was the developers who sought bribes in connection with the HPD projects and the Indictment describes Hymowitz and Freeman as Dunn's partners in the SML Entities and on the development projects. I agree. A jury could easily infer, without the benefit of any other evidence, that the "others" referred to in the statement are Hymowitz and Freeman, and the use of a neutral pronoun is therefore improper. *See Richardson*, 481 U.S. at 211; *see also Jass*, 569 F.3d at 56, n.5. Moreover, it is clear that the omission of all references to the existence of Hymowitz and Freeman would not "distort the statement" by excluding necessary information, nor would it "chang[e] the tenor of the utterance as a whole." *Id.* Therefore, given the preference in this Circuit to "eliminate completely from a confession any mention of a non-declarant defendant's existence," I reject the government's proposal to replace Defendants' names with the word, "others." *Id.*

---
9

There is no dispute that the complete redaction of a paragraph describing Dunn's relationship with Hymowitz and Freeman is appropriate.

15

A closer question, however, is whether, as Defendants urge, all references to the SML Entities must also be redacted. (The government's proposal leaves these references intact.) Defendants assert that such references should be redacted since Hymowitz and Freeman are identified within the statement and in the Indictment as Dunn's partners in the SML Entities, and therefore any reference to the wrongdoing of the SML Entities would necessarily implicate them.

In *United States v. Lung Fong Chen*, the Second Circuit concluded that statements contained in a non-testifying co-defendant's statement to an FBI agent which implicated his co-defendants *only with the assistance of other testimony* did not fall within the *Bruton* rule. *Lung Fong Chen*, 393 F.3d 139, 148 (2d Cir. 2004), *cert. denied sub nom. Tu v. United States*, 546 U.S. 870 (2005), and *cert. denied sub nom. Lung Fong Chen v. United States*, 546 U.S. 870 (2005). The statement at issue in *Lung Fong Chen,* made by defendant Tu, referred to the apparent recognition of wrongdoing by a bank's Board of Directors. Chen and Liu, who were Tu's co-defendants and members of the Board, argued that Tu's statements violated *Bruton* and *Gray*, but the Second Circuit held that, since "substantial evidence was necessary to link defendants Chen and Liu with Tu's statements regarding the Board," there was no *Bruton* violation. *Id.* at 149-50.

The question here is thus whether substantial evidence would be required to link Hymowitz and Freeman with Dunn's statements pertaining to the wrongdoing of the SML Entities, or "whether the redacted confession, even if the very first item introduced at trial, would immediately inculpate" the Defendants in the crimes charged. *See Jass*, 569 F.3d at 61. Once all references to Hymowitz and Freeman are omitted from the statement, the answer is clearly the former. Therefore, as set forth in more detail below, references to the SML Entities will not be redacted.

16

I turn, next, to Defendants' proposed omission of a sentence concerning a statement made by Walters to Dunn, about the payments that contractors were supposed to make to developers, even though it does not refer to Hymowitz and Freeman or to the SML Entities. Defendants assert that the basis for this redaction is that the sentence contains hearsay and would result in a denial of their confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2004). In light of the significant redactions accepted with respect to the rest of Dunn's post-arrest statement, however, there is little danger of a jury not following an appropriate limiting instruction, and this sentence need not be redacted. *See Richardson*, 481 U.S. at 211; *cf. Lung Fong Chen*, 393 F.3d at 150 (where the statements of the non-testifying defendant Tu would inculpate co-defendants Chen and Liu "only in the context of the substantial evidence used to link them to Tu's statements[, t]he same attenuation of Tu's statements from Chen and Liu's guilt that prevents *Bruton* error also serves to prevent *Crawford* error."

Accordingly, the redactions proposed by Defendants, as provided in the attachment to the letter from counsel to Defendants, dated October 24, 2012,[10] are accepted, subject to certain revisions, as set forth below.

Page 1 of the statement: no redactions, as per Defendants' proposal.

Page 2:

(a) The sentence beginning, "During this time," is redacted to read, "During this time period

_____

[10] A copy of this letter, with the proposed redacted statement attached, is annexed to Defendants' Memorandum of Law in Support of their Motion.

of the kickback payments, Dunn was one of the HANCOCK developers, and [] was a contractor/developer under his company named [].''[11]

(b) The following sentence, beginning, "DUNN, HYMOWITZ, and FREEMAN," is redacted to read, "DUNN operated SML DEVELOPMENT ("SML"), which was the entity used to develop the HANCOCK project."

(c) Redact, in its entirety, the second full paragraph (beginning, "In 1996 . . ."), as proposed.

Page 3:

(a) No redaction to the paragraph, beginning at the bottom of page 2, and ending with the words, "for a kickback." (i.e., the proposed redactions are rejected.)

(b) The first sentence of the second paragraph is redacted to read as follows: "DUNN stated that after LEXINGTON, SML selected STARZECKI/MCR as its general contractor for an HPD Neighborhood project (name unknown), at which point DUNN knew that he could ask STARZECKI for a kickback on the HPD Neighborhood project."

(c) The proposed redactions to the second sentence of the second paragraph are rejected.

(d) The third sentence is redacted to read, "STARZECKI agreed to make kickback payments to DUNN on the HPD Neighborhood project."

(e) Omit the sixth sentence (beginning with "STARZECKI also made," through "Escrow account."

(f) From the next sentence (beginning, "It was DUNN"), redact the names HYMOWITZ and FREEMAN, and the word, "collectively."

(g) From the next sentence (beginning, "STARZECKI has yet"), redact the names HYMOWITZ and FREEMAN.

---

[11]

The proper names that appear in the statement refer to one of the John Doe cooperating witnesses and his company. No party has asked for their redaction from the statement, but they need not be reprinted in the context of this Opinion.

**CONCLUSION**

For the reasons set forth in this Opinion, the Defendants' omnibus motion is DENIED in part and GRANTED in part. The motion is DENIED with respect to that portion seeking to dismiss the Indictment as against Hymowitz and Freeman, and it is also DENIED insofar as it seeks a bill of particulars. The motion to sever the trial of Hymowitz and Freeman from that of Dunn is also DENIED.

However, that portion of the motion which seeks significant redactions to Dunn's post-arrest statement, if it is not suppressed, is GRANTED, to the extent set forth above. The government shall ensure that a copy of the statement, redacted in accordance with this Order, is available at trial.

SO ORDERED.

s/Nina Gershon

NINA GERSHON
United States District Judge

Dated: July ___, 2013