# SERCARZ & RIOPELLE, LLP

810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019
(212) 586-4900
FACSIMILE (212) 586-1234
www.sercarzandriopelle.com

ROLAND G. RIOPELLE
MAURICE H. SERCARZ*

—————

  *ADMITTED IN NY & NJ

February 10, 2014

***VIA ECF & FEDEX***

The Honorable Nina Gershon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> ***Re:***   ***United States v. Dunn, et al., 11 CR 683 (S-2)(NG)***

Your Honor:

**The Motion To Introduce Portions Of Consensual Conversations**
**In Accordance with Fed.R.Evid. Rule 106**

The government recently provided defense counsel with portions of various consensual conversations that it intends to offer into evidence at trial.

We have recently discussed with Assistant U.S. Attorneys Posa and Capozzolo changes to the content of several transcripts.  However, there remain two areas of substantial disagreement:

First, the government intends to offer portions of a consensual conversation between the co-defendant Stevenson Dunn and George Armstrong, who was recording the conversation on behalf of the government.  Because Dunn is alleged to be a co-conspirator of the defendants we submit that additional portions of the conversation may be admissible in accordance with Fed.R.Evid. Rule 806 to attack Dunn's credibility as a declarant under Fed.R.Evid. Rule 801(d)(2)(E).  Moreover, there are statements by Dunn in which he appears to deny having conspired with Hymowitz and Freeman.  We submit that these excerpts may be admissible pursuant to Fed.R.Evid. Rule 804(b)(3).

However, it is premature, at this stage, for the defendants to enumerate those portions of the conversation that may appropriately be admitted.

Second, the defendant Hymowitz contends that additional portions of consensual recordings involving Hymowitz and both Bogdan Starzecki and Special Agent Naushun Richards are admissible under the "rule of completeness."  See Fed.R.Evid. Rule 106

Annexed hereto as **Exhibit A** is a transcript of the government's proposed excerpts of a consensual recording made October 3, 2011 involving the defendant Hymowitz and Bogdan Starzecki.

Annexed hereto as **Exhibit B** is a transcript of the government's proposed excerpts of a consensual conversation involving Hymowitz and Special Agent Naushun Richards, also made on October 3, 2011.

Annexed hereto as **Exhibit C** is the government's original transcript of the entire conversation involving Hymowitz and Starzecki.

Annexed hereto as **Exhibit D** is the government's original transcript of the entire conversation between Hymowitz and Agent Richards.

## The Relevant Conversations

Paragraph 10 of the S-2 Indictment provides, in pertinent part, as follows:

> In or about and between January 2005 and October 2011, both dates being approximate and inclusive, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, solicited and received kickback payments from John Doe #1 in connection with award of general contracting and real estate development work with the SML Entities on HPD projects […] to further conceal the true nature of the kickback payments, DUNN, HYMOWITZ and FREEMAN provided John Doe #1 with a sham retainer agreement for Hymowitz & Freeman's legal services and provided John Doe #1 with false and inflated invoices for services and supplies from, among others, 334 Marcus Garvey Boulevard Corporation.

S-2 Indictment at pp.4-5.

At trial, the government will allege that in early 2007, Bogdan Starzecki (John Doe #1) made two payments to the Hymowitz & Freeman law firm in the form of checks for $34,500 and $100,000.  The government will further allege that in order to conceal these payments Mr. Hymowitz, acting on behalf of the law firm, prepared a retainer agreement in the amount of $100,000 to cover legal services to be performed on behalf of Mr. Starzecki's company, MCR Restoration Corporation.

**The Hymowitz-Starzecki Conversation**

On October 3, 2011, Mr. Starzecki called Mr. Hymowitz at the direction of Special Agent Richards. Starzecki begins the conversation by asking whether Hymowitz recalled the retainer agreement between the law firm and MCR Restoration Corp. Mr. Hymowitz responds that he did not. (Ex. A at p.1). Starzecki then explained that he is being audited by IRS and needs a "itemized bill" for the legal services provided in accordance with the retainer. (Id.). Hymowitz responds that his firm "wouldn't keep anything like that if we had it." (Id.)

In the second excerpt from this conversation, Starzecki states that the retainer was for a "real estate deal." He states that there needs to be "some kind of detailed invoice how the fees were disbursed." Hymowitz responds that he has no such record and explains "once we get a check in, we don't keep records of things that are paid." (Id.).

In the final excerpt, Starzecki tells Hymowitz "the only thing which I received from you guys was a retainer agreement." (Ex. A at p.2). Hymowitz responds "I understand you need help. I don't know how I can assist you other than what I suggested that I know we can do." (Id.). However, there is nothing in the portions of the conversation excerpted by the government that explains this reference.

The government seeks to offer this heavily excerpted conversation as an admission. However, there is nothing in these excerpts which casts light on (1) whether Mr. Hymowitz recalls the fact that the money was paid; (2) whether Mr. Hymowitz recalls the nature of the services performed in exchange for the money; or (3) whether his claim that billing records are not maintained refers to this particular retainer or the billing practices of the firm.

**The Hymowitz-Richards Conversation**

Later that same day, Agent Richards followed up by calling Mr. Hymowitz, and pretending to be the accountant representing Starzecki at the fictitious IRS audit.

In the first excerpt, Hymowitz recalled being asked to prepare the retainer agreement. Hymowitz explains to Richards that, as he told Starzecki in the earlier conversation, "we don't keep records with regard to billing once things are paid." (Ex. B at p.1).

In the second excerpt, Hymowitz is inquiring of Agent Richards regarding the nature of the audit of Starzecki. Hymowitz indicates only that the funds went into the regular operating account of the firm. (Ex. B at p.2).

In the final excerpt, Agent Richards suggests that attorneys are required to maintain records for a certain number of  years. Hymowitz indicates that it is his understanding that the requirement does not extend to "billing records." (Id.). Hymowitz indicates that in any event it was not the practice of his firm to do so. When Agent Richards asks whether there are records for the services that Starzecki received, Hymowitz responds "an hourly breakdown, no." (Id.).

3

The conversation between Hymowitz and Agent Richards does nothing to elucidate (1) why the money was paid; or (2) whether services were performed in exchange for the money.  Moreover, in this conversation, Hymowitz clearly states that it was the practice of his firm not to maintain billing records when the invoices were paid – a practice that applied not only to this retainer, but to all of the firm's bills.

This undercuts any argument by the government that the failure of Hymowitz & Freeman to produce billing records is evidence that no services were performed in connection with the particular payments at issue; and, that the retainer was a "sham."

**The Applicable Law**

Fed.R.Evid. Rule 106 reads as follows:
If a part introduces all or part of a writing or recorded statement, an adverse party may require the introduction at that time of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time.

Fed.R.Evid. Rule 106.

The so-called "rule of completeness" is not limited to instances where particular language in a statement proffered by the government is ambiguous.  To the contrary, under the completeness doctrine the omitted portion of a statement must be placed in evidence if necessary "to explain the omitted portion, to place the omitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the omitted portion." United States v. Castro, 813 F.2d 571, 575-76 (2d Cir. 1987).  Other portions of a statement should be admitted whenever they are needed "for a full understanding of the portions introduced by the government." See United States v. Jackson, 658 F.3d 145, 149-150 (2d Cir. 2011).

**The Defense Moves To Admit Additional Portions Of Each Conversation**

We submit that each of these conversations should be admitted, in its entirety.  The full conversations are each less than three minutes long.  Their admission, in full, will not create an undue burden on the jury.  And, the government cannot complain that there is any "unfairness" in playing the entire conversation given that in each instance, the government employed a ruse to get Mr. Hymowitz to address these subjects; and, it was either the informant or the agent who directed the conversation.

In the alternative, the following additional portions of each conversation should be admitted:  During the conversation between Starzecki and Hymowitz, Starzecki describes a payment of $34,000 which is separate from the payment covered by the $100,000 retainer.  Hymowitz responds that he doesn't know anything about either payment:

> BS:     Well, you know what, I really don't know what to do then.  Because that the stickler [UI] they have.  There is also another payment which we got for 34 and change, you know, which I have nothing at all about that.

4

> LH   I don't know anything about them.  If you tell me you paid those to us, I am sure you did.  And I know I can go back into the computer and get when they were paid, and I can probably call the bank and get copies of the check if don't still have them.

(Ex. C. at p. 5).

When Starzecki indicates that the checks were paid (and the retainer prepared) 4½ years earlier, Hymowitz indicates that he does not recall the time frame for either the retainer or the payments:

> BS   You know we are talking about like 4 ½ years ago or so. I think it was […]

> LH   How many years ago?

And Hymowitz clearly states that while he is willing to reproduce the check, he is not prepared to create a post hoc invoice that may be incorrect:

> LH   You can tell them that […] I understand that, but I wouldn't even know how to create something.  And if it's going to the government, I certainly wouldn't want to make a mistake in creating something that's incorrect.

(Id.).

Hymowitz concludes by telling Starzecki to have his accountant call Mr. Hymowitz directly.  (Ex. C at p.6).

These excerpts are necessary to demonstrate that Hymowitz's apparent unwillingness to provide a detailed justification of the services covered by the retainer is, in reality, a product of (1) the practice of his firm not to maintain billing records; (2) his inability to recall 4 ½ years later the services covered by the retainer; and (3) his refusal to create a document that is not based on contemporaneous records; or may otherwise be incorrect.

In the conversation between Special Agent Richards and Mr. Hymowitz, SA Richards suggests that a "generic receipt" describing the project would probably suffice for purposes of the audit.  The excerpt is as follows:

> NR   Is there some sort of record for the services he received?

> LH   What do you mean? An hourly breakdown, no.

> NR   Well, I mean or even the project.  See if you can produce a, you know, a generic receipt for working on whatever project he had you working on for "x" amount of dollars that would probably suffice for their purposes.  I

mean, I don't wish you to create anything that's not representative of what actually happened.

LH      Well, that's the problem.  Without those billing documents, I don't know how to […] you've got to understand, and once again it's something that really my partner dealt with mostly, but at the time we were doing a ton of different things with Bob.  Possible business ventures, other types of things.  There's a million different things going. And it would just be an absolute joke for me to say, you know, $10,000 worth of time on this, $5,000 on that, $7,000 on this […]

(Ex. D at p. 5).

At the end of the discussion, Agent Richards states that, at the very least, "you might have to testify and say that this money was, you know, paid to me for legal services." (Ex. D at p.6).

Hymowitz responds:

I can give you a letter for that. I mean, we can probably give you a letter for that.

(Id.).

These excerpts help to explain why it is that Hymowitz is unable to recall, after the passage of 4 ½ years, the services performed in exchange for the retainer.

And, we submit that it is Mr. Hymowitz's proposal for a letter indicating that the money was expended for "legal services" which provides the context for a subsequent conversation in which Starzecki calls Freeman to thank him for the letter.

In a prior, in limine motion, the government made clear its intention to have the jury infer from the defendant's inability to produce either an hourly breakdown of the work performed, or the existence of billing records, the fact that the 2007 retainer agreement was a "sham" intended to disguise bribe payments.  The government has carefully trimmed the portion of these conversations that it intends to introduce in order to draw its chosen inferences. However, the government ignores the fact that other portions of the conversation suggest (1) that Hymowitz did perform a variety of services for Starzecki; (2) that the inability of the Hymowitz & Freeman firm to provide billing records was the result of a practice in all cases to destroy these records once the bills were paid; and (3) that Mr. Hymowitz was unable, after 4 ½ years, to link the amount of the retainer to particular services performed on behalf of Mr. Starzecki.

While the government has not chosen to draw this inference, it should not prevent the jury from considering this alternative by engaging in a ruse to extract admissions from Mr. Hymowitz and then selecting bits and pieces of the conversations to support its pre-existing view of the evidence.

6

**Conclusion**

    For the reasons set forth herein, we respectfully submit, in the event the government introduces the excerpts contained in Exhibits A and B, they should also be required either to introduce the conversations in their entirety; or, at the very least, to offer those excerpts contained herein.

    We would also reserve the right to supplement our arguments and to make additional applications, after reviewing the 3500 material relating to Starzecki, Armstrong, and Dunn.

           Most respectfully yours,

             /S/

           Maurice H. Sercarz

             /S/

           Gerald J. DiChiara

MHS:vmp
Encls.

cc:  All Parties (via ECF)