DRAFT TRANSCRIPT. FOR TRIAL PREPARATION ONLY.

UNITED STATES DEPARTMENT OF JUSTICE
BROOKLYN, NEW YORK

DATE OF RECORDING:         October 3, 2011

CASE AGENTS:               SA NAUSHAUN C. RICHARDS

PARTICIPANTS:              NR:  SA NAUSHAUN C. RICHARDS
                           LH:  LEE HYMOWITZ

ABBREVIATIONS:             UI:  UNINTELLIGIBLE
                           PH:  PHONETIC

DRAFT TRANSCRIPT. FOR TRIAL PREPARATION ONLY.

LH: Hello.

NR: Yes, hi, is this Mr. Hymowitz?

LH: Yes.

NR: Hi, Shaun Richards. I am a CPA. I represent Bogdan Starzecki.

LH: Okay. What can I do for you?

NR: He explained to me that he spoke to you earlier in the day regarding legal services that he had with your firm.

LH: Correct.

NR: Basically, and I don't know how much he explained to you the situation he seems to be in.

LH: He did not explain anything to me. I don't know really, I am really somewhat confused as to what he needs.

NR: I can't obviously discuss everything, but he is being audited. He's under audit with the IRS. There's a $134,000 dollars worth of funds that the IRS has zeroed in on. Basically, what my client has expressed to me is that he spent that money with your firm. He's only able to produce a $100,000 dollar retainer agreement, and he shows the $100,000 dollar check and the $34,500 dollar check.

LH: Right. My partner who was dealing with him at the time asked me to check, and we received both of those checks. I mean I said to him I can give him a letter saying we received it. I can get him copies of the check, I can show that it went into our accounts. I can do all of those things for him.

NR: Okay, well, see, the IRS, they understand that the money is in your account. That's not an argument, that's in an agreement. Your copies of the checks and stuff going into your accounts, the IRS understands that. My client understands that. Where he seems to be

2

DRAFT TRANSCRIPT. FOR TRIAL PREPARATION ONLY.

|     |     |
| --- | --- |
|     | at an impasse with the IRS is, he expressed to us that I spent that money on legal services. It's gone. It's not my money anymore. I said to him that's not a problem, produce documentation showing where the money went and it will go away. |
| LH: | It went to us. |
| NR: | Yes, but he's not showing any kind of draw down on the retainer. All that he's able to produce for IRS purposes is that I have a $134,000 retainer agreement with Hymowitz and Freeman... |
| LH: | I checked there was only a $100,000 dollar retainer agreement. I have no clue what the other $34,000 dollars was for. Didn't even know about it until I was asked to go check and see if we got it, so I have no clue what that was for. Back then, I remember being asked to prepare a retainer agreement. I did that, and we have a check for it. What I told Bob is that we don't keep records with regard to billing once things are paid. We send out a bill, and we have a book, you know like a loose leaf. Once it's paid, we just rip it out of the book and dispose of it. I don't have anything, and I said to him, I don't know how to come up with preparing a document that would be able to break anything down. I have no clue. I just don't have any clue how to do that. I certainly want to help him out as much as I possibly can, but I don't want to prepare something that's not accurate to go to the IRS. I don't know how to do that. Well I said to him I just don't how to do that. |
| NR: | Well is it safe to say, that he's telling me what transpired is true? I mean he did spend money with your firm for legal services, correct? |
| LH: | He did. I am sure he did. How much he spent, whether there's any money still due on it or not, I don't have any clue. |
| NR: | Because, unfortunatley, the position that he's in right now, is that he's able to produce moneys totalling $134,500 dollars to your account, the retainer account. From the IRS standpoint, they're not |

3

DRAFT TRANSCRIPT. FOR TRIAL PREPARATION ONLY.

          having a problem with the money going over there. Where they have a problem is, show me how this money was spent, where's the documentation where you actually received what you purport...

LH: I guess what you are telling me is that he owes the IRS a lot of money, and they're [UI]

NR: Basically from their standpoint, here's a $134,500 dollars that you're not showing any record of spending. You show that it went there, and they've traced it there. From their standpoint, they're saying okay, Mr. Starzecki, you have a $134,500 dollars worth of your money hidden in Hymowitz and Freeman's retainer account.

LH: That's, it went into our regular operating account. There's no such thing as a retainer account.

NR: Well from the IRS standpoint, their attitude is you need to produce some kind of records showing that this was actually spent, not just records that it was moved to these attorneys' account. I guess and I can't read minds...

LH: He must be under some sort of criminal investigation or something.

NR: Well, well, he's got tax issues and they're pressing for payment. And their deal is no problem, you say the money went there and you spent it for legal services. That's fine, show me the receipt for services, show me how that was drawn down and that's a non-issue. At the same time, and they don't say this, and you are always playing game of, you know, chess. Okay, we're asking this question and we want to see how you're going to answer it because the next step is, obviously, we feel you're hiding this money from the IRS.

LH: Is this a criminal or civil investigation?

NR: It's civil at this point. I mean I don't, you know, where it's going to go. All I know is that my client claims he spent this money for legal services with your firm, and the IRS said no problem, produce us

4

DRAFT TRANSCRIPT. FOR TRIAL PREPARATION ONLY.

|     |     |
| --- | --- |
|     | some documentation stating the fact, show us how the money was disbursed, and it's a non-starter. |
| LH: | Yeah because it went into our regular account, and we pay tax on it. It went into our regular operating account as a retainer would and we reported it, and we pay taxes on it. |
| NR: | So your records, you don't have any kind of documentation? I know from being in this line of work that attorneys are to keep records for a certain number of years after they... |
| LH: | Not billing records. |
| NR: | No. |
| LH: | As far as I know. If we're supposed to, we never did. We're not a big firm. And it's just, as I said, we've got ourselves a loose leaf, and if I send you a bill for $10,000 dollars today and comes November 1st, you paid it, it gets ripped out of the loose leaf and that's the end of it. |
| NR: | Is there some sort of records for the services that he received? |
| LH: | What do you mean? An hourly break down, no. |
| NR: | Well, I mean or even the project. See if he can produce a, you know, generic receipt for working on whatever project he had you working on for X amount of dollars that would probably suffice for their purposes. I mean I don't wish you to create anything that's not representative of what actually happened. |
| LH: | Well that's the problem. Without those billing documents, I don't how to...you've got to understand, and once again it's something that really my partner dealt with mostly, but at the time we were doing a ton of different things with Bob. Possible business ventures, other types of things. There's a million different things going on. And it would just be an absolute joke for me to say, you know, $10,000 worth of time on this, $5,000 on that, $7,000 on this... |

5

DRAFT TRANSCRIPT. FOR TRIAL PREPARATION ONLY.

NR:   Right, I understand that, but if you're saying that that money legitimately moved through your accounts for legal services, then, you know...

LH:   And as far as I know at this point, he might even be due some money back. I don't really know. I just really don't know. It's like five years ago or whatever it was.

NR:   Unfortuantely with this IRS agent, he's zeroed in on this, and he's not letting go. So I mean, Mr. Starzecki is at an impasse.

LH:   I know and as I said to him, Bob is a lovely lovely guy. I would love to help him in any way I can. I just am trying to find a way to help him without preparing a document that is not going to be truthful.

NR:   Yeah, most certainly nobody is asking you to produce anything that's fraudulent.

LH:   That's the problem. That's why I said, you know, when the, in trying to help him out, I don't want to get him into more trouble or get us into trouble. I'd like to help him out.

NR:   Now from the IRS's standpoint, I would imagine, you know, it's pretty cut and dry. If a firm comes forward and says yes, he spent X amount of dollars with us and produces some kind of receipt, I imagine that will suffice. I don't imagine that they get into the details of exact billing. Especially with a firm as small such as as yours, whose to say how you bill clients, it's kind of your business, you know. I have seen that work where they just say this money has been spent this way and a receipt, I've seen that. I don't know how that will turn out in this case. It seems to me, at the very least, you might have to testify and say that this money was, you know, paid to me for legal services.

LH:   I can give you a letter for that. I mean we can probably give you a letter for that.

DRAFT TRANSCRIPT. FOR TRIAL PREPARATION ONLY.

NR: I mean as long, see, I mean this is between you and Bob, you know I don't know what was spent. He just represented to me that this money was spent legitimately with the firm for legal services, $134,500. He showed only one retainer agreement. And the IRS said, okay, we know the money went there.

LH: Yeah, the $34,000 was separate and a part from that, and I have no clue what that was for. I just have no clue at all for that.

NR: Okay. I don't know, if you could, I don't know, produce some kind of generic receipt.

LH: Okay.

NR: You know. I mean, you, basically, you recall services, you might not have the details. You know that the money legitmately went through your firm.

LH: No question. It went in to our operating account. It was reported to the IRS. We paid tax on it.

NR: Okay. See that's his biggest problem is that he can't produce anything right now. And as an accountant, it's very cut and dry for me: you said this was spent for this service, show me an invoice. You give me an invoice, I can present that to the IRS and it's not a problem.

LH: Let me give you my email address. Send me a request. Let me speak to my partner who might have a better handle on it. You know, unfortuantley, I am like the inside guy so...

NR: Okay, it would probably be better if you sent it to Bob, and I'll get stuff from Bob. Because I don't want to get a chain of, you know, events confused. Bob, a very nice gentlemen, like you said, but sometimes it gets lost in translation.

LH: Okay. Very good. Let me speak to my partner later today or tomorrow, and we'll see what we can come up with. Hopefully generic enough that don't cause

7

DRAFT TRANSCRIPT. FOR TRIAL PREPARATION ONLY.

|     |     |
| --- | --- |
|     | troubles for anyone but hopefully it's enough for the IRS. |
| NR: | Okay. I appreciate your time, sir. |
| LH: | Okay. Hopefully I can do something for you. |