JDG:CMP/AC
F. #2011R01474

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                     11 CR 683 (S-2) (NG)

STEVENSON DUNN,
LEE HYMOWITZ and
MICHAEL FREEMAN,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


## THE GOVERNMENT'S REQUESTS TO CHARGE


                             LORETTA E. LYNCH
                             UNITED STATES ATTORNEY
                             Eastern District of New York
                             271 Cadman Plaza East
                             Brooklyn, New York 11201


Cristina M. Posa
Anthony M. Capozzolo
Assistant U.S. Attorneys (Of Counsel)

**PRELIMINARY STATEMENT**

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the government respectfully asks the Court to include the following instructions in its charge to the jury.  In addition, the government requests leave to offer additional instructions as they become necessary during the course of the trial. The government also requests that the Court permit that the written jury instructions and the evidence admitted at trial be provided to the jury during their deliberations.

## REQUEST NO. 1
## GENERAL REQUESTS

The government requests that the Court charge the jury in its usual manner on the

following subjects:

(a)     Function of the Court;

(b)     Jury Communications with Lawyers and the Court;

(c)     Equality of the Prosecution and the Defense Before the Court;

(d)     Presumption of Innocence;

(e)     Burden of Proof and Reasonable Doubt;

(f)     Circumstantial Evidence and Direct Evidence;

(g)     Function of Indictment and What Is Not Evidence;

(h)     Inferences Drawn from the Evidence;

(i)     Objections;

(j)     Jury's Right to See Exhibits and Have Testimony Read During Deliberations;

(k)     Duty to Deliberate;

(l)     Testimony of Law Enforcement Witnesses;

(m)     Dates and Amounts Approximate;

(n)     Testimony of the Defendant (if applicable);

(o)     Defendant's Right Not to Testify (if applicable); and

(p)     No Consideration of Punishment.

**REQUEST NO. 2**
**INDICTMENT**

The defendant is formally charged in a Superseding Indictment, which I will simply call the Indictment.  As I instructed you at the outset of this case, an indictment is a charge or accusation.  The Indictment in this case contains eleven separate counts, upon each of which you will be called to render a separate verdict.

The Indictment charges that the defendants Stevenson Dunn, Lee Hymowitz and Michael Freeman committed the following crimes:

a.  Count One charges the defendant Dunn with racketeering conspiracy involving eight predicate racketeering acts.

b.  Counts Two through Five charge the defendants Dunn, Hymowitz and Freeman with mail and wire fraud conspiracy, mail fraud and wire fraud regarding kickbacks received from John Doe #1, who is Bogdan Starzecki.

c.  Counts Six and Seven charge the defendant Dunn with wire fraud regarding kickbacks received from John Doe #2, who is George Armstrong.

d.  Counts Eight and Nine charge the defendants Dunn, Hymowitz and Freeman with money laundering conspiracy and money laundering.

e.  Count Ten charges the defendant Dunn with the bribery of John Doe #3, who is Wendell Walters.

f.  Count Eleven charges the defendant Dunn with extortion.

4

## REQUEST NO. 3
## KNOWINGLY, WILLFULLY AND INTENTIONALLY

The offenses charged in the Indictment require that the government prove that the defendants acted "knowingly" with respect to certain elements of the offenses.  This means that the government must prove beyond a reasonable doubt that the defendants were conscious and aware of the nature of their actions and of the surrounding facts and circumstances, as specified in the elements of the offenses charged.

In deciding whether a defendant acted "knowingly," you may consider evidence about what that defendant said, what that defendant did and failed to do, how that defendant acted, and all the other facts and circumstances shown by the evidence that may prove what was in a defendant's mind at that time.

I will also use the word "willfully" when I instruct you on certain specific charges in the Indictment.  This means the government must prove beyond a reasonable doubt that the defendants knew their conduct was unlawful and intended to do something that the law forbids. That is, to find that a defendant acted "willfully," you must find that the evidence proved beyond a reasonable doubt that the defendant acted with a purpose to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant had any evil motive or bad purpose other than the purpose to disobey or disregard the law.  "Willfully" does not require proof that a defendant knew of the existence and meaning of the statute making his conduct criminal.

5

Certain charges in the Indictment also require that the government prove that the defendant acted "intentionally."  This means that the government must prove beyond a reasonable doubt that either: (1) it was the defendant's conscious desire or purpose to act in a certain way or to cause a certain result; or (2) the defendant knew that he was acting in that way or would be practically certain to cause that result.[1]

---

[1]  Sand, Modern Federal Jury Instructions, Instr. 3A-1 and 3A-3.

6

**REQUEST NO. 4**
**AIDING AND ABETTING**[2]

Counts Three, Four, Five, Six, Seven, Nine, Ten and Eleven in the Indictment allege that one or more of the defendants aided and abetted violations of Federal law.  Section 2 of Title 18 of the United States Code provides: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for you to find the defendant guilty.  This is because, under the law, a person who aids or abets another to commit an offense is just as guilty of that offense as if he personally committed the acts.

Therefore, you may find a defendant guilty of an offense, if you find beyond a reasonable doubt that the government has proven: (1) that another person actually committed the offense with which the defendant is charged; and (2) that the defendant aided or abetted that person in the commission of the offense.

First, you must find that another person has committed the crime charged. Obviously, no one can be convicted of aiding or abetting the criminal acts of another person if no criminal acts were committed by the other person in the first place.  But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of the crime.

---

[2] Adapted from the charges in United States v. Carneglia, 08 CR 76 (JBW) (E.D.N.Y.) and United States v. Anastasio, et al., 06 CR 815 (BMC) (E.D.N.Y.).

<u>Second</u>, the defendant's mere participation in conduct which is otherwise lawful does not itself make him an aider and abettor unless it is shown that the defendant knew the unlawful objective of that conduct.  Mere acquiescence by a defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting.  An aider and abettor must have an interest in the criminal venture and must, by his actions, seek to make the criminal venture succeed.

**REQUEST NO. 5**
**ATTEMPT**[3]

Several charges in the Indictment allege both an attempt and a completed offense. Therefore, you need not find that these crimes were successful in order to find them proven. The following predicate racketeering acts and counts are charged as both an attempt and a completed offense:

    a.  Racketeering Act Six and Count Nine, which charge money laundering.

    b.  Racketeering Act Eight and Count Eleven, which charge extortion.

In order to find a defendant guilty of attempting to commit a crime, you must find beyond a reasonable doubt:

<u>First</u>, that the defendant intended to commit the charged crime, and

<u>Second</u>, that the defendant willfully took some action that was a substantial step in an effort to bring about or accomplish that crime.

Mere intention to commit a specific crime is not an attempt. In determining whether a defendant's actions amounted to a substantial step toward the commission of the charged crime, it is necessary to distinguish between mere preparation and the actual performance of a criminal act. Mere preparation, which may consist of planning the offense, or of devising, obtaining or arranging a means for its commission, is not itself an attempt, although some preparations may amount to an attempt. The acts of a person who intends to commit a crime will constitute an attempt if those acts themselves clearly indicate an intent to willfully commit the crime, and the

---

[3] Adapted from the charges in <u>United States v. Curanovic</u>, 08 CR 240 (BMC).

acts are a substantial step in a course of conduct planned to result in the commission of the crime.

Thus, you may find those defendants charged with attempt guilty of the crimes charged if you find, beyond a reasonable doubt, that the defendants intended to commit the crime and took a substantial step in order to bring about or accomplish that crime—even if the attempt did not succeed.

**REQUEST NO. 6**
**CONSPIRACY**[4]

A number of the counts in the Indictment charge the defendants with participating in a "conspiracy."  A conspiracy is a kind of criminal partnership – an agreement of two or more persons to join together to accomplish some unlawful purpose.  The essence of the crime of conspiracy is an agreement or understanding to violate other laws.  A conspiracy is punishable as a crime even if it fails to achieve its purpose.

Before you may convict the defendant of a conspiracy, the following two essential elements must be established beyond a reasonable doubt:

First, that the conspiracy existed; and

Second, that the defendant knowingly and intentionally became a member of that conspiracy.

Let us examine each of these elements in greater detail.

First Element: Existence of a Conspiracy

First, the government must prove that a conspiracy existed.  What is a conspiracy?  A conspiracy is an agreement between two or more persons to accomplish some unlawful purpose. The essence of a conspiracy is the unlawful agreement to violate the law.  A conspiracy is sometimes referred to as a partnership in criminal purposes in which each member of the conspiracy becomes the agent of every other member.

---

[4] Adapted from the charges in United States v. Basciano, et al., EDNY, 03 CR 929 (NGG).

11

To establish a conspiracy, the government is not required to prove that the coconspirators sat around a table and entered into a solemn contract, orally or in writing, stating that they have formed a conspiracy to violate the law, setting forth details of the plans, the means by which the unlawful project is to be carried out or the part to be played by each conspirator.  It would be extraordinary if there were such a formal document or specific oral agreement.  Common sense would suggest that when persons in fact undertake to enter into a conspiracy, much is left to an unexpressed understanding.  A conspiracy, by its very nature, is almost invariably secret in its origin and execution.  Therefore, it is sufficient for the government to show that the conspirators somehow came to a mutual understanding to accomplish the unlawful act charged in the count you are considering, by means of a joint plan or common scheme.  Moreover, since a conspiracy is, by its very nature, characterized by secrecy, you may infer the existence of a conspiracy from the circumstances of the case and the conduct of the parties involved.

It is not necessary for the government to prove that the ultimate objectives of the conspiracy were successfully accomplished.  It is enough if the government has proved that two or more persons – in any way, expressly or impliedly – came to a common understanding to violate the law.  If, upon considering all the evidence, direct and circumstantial, you are satisfied beyond a reasonable doubt that the minds of at least two of the alleged conspirators met in an understanding way and that they agreed to work together to accomplish the object of the conspiracy charged in the indictment, then the first element – the existence of the conspiracy – has been established.

12

Second Element: Knowing Membership in the Conspiracy

The second element the government must prove beyond a reasonable doubt is that the defendant knowingly and willfully became a member of the charged conspiracy. An individual may become a member of the conspiracy without full knowledge of all the details of the conspiracy.

Before you may find that the defendant was a member of a conspiracy, the evidence must first show beyond a reasonable doubt that the conspiracy was knowingly formed, and that the defendant knowingly participated in the unlawful plan, with knowledge of its unlawful purpose and with the intent to advance or further some objective or purpose of the conspiracy.

Intent is a subjective element, and may be determined by considering all of the facts and circumstances leading up to, surrounding and following the events in question. Thus, you may know a person's intent by his acts and words, and you may examine any factors that you consider to be relevant, such as motive, location or timing. In determining whether a defendant became a member of the conspiracy, you must determine not only whether the defendant intended that criminal acts be performed, but whether he joined the conspiracy with knowledge of the unlawful purposes. You must ask yourselves whether the defendant joined the conspiracy with awareness of at least some of the basic aims, activities, actors or goals of the conspiracy. A defendant need not be aware of all of the illegal purposes of the conspiracy or the full extent of its activities or the identities of all other members in order to be considered a member of that conspiracy.

13

It is also not required that a person be a member of a conspiracy from its very inception. He may join it at any point during its progress and be held responsible for all that has gone on before he joined and all that may be done thereafter, so long as he remained a member of the conspiracy.

## REQUEST NO. 7
## CONSPIRACY AND SUBSTANTIVE COUNTS[5]

As I have said, a number of counts of the Indictment charge the defendant with participating in a "conspiracy."  The crime of conspiracy – or agreement – to violate a federal law, as charged in the Indictment, is an independent offense. It is separate and distinct from the actual violation of any specific federal law, such as the crime of wire fraud charged in Counts Four and Five, which the law refers to as a "substantive crime."  Congress deemed it appropriate to make conspiracy a separate crime even if the conspiracy did not succeed.  This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct and increases the likelihood of success of a particular venture.

You may find a defendant guilty of the crime of conspiracy – in other words, *agreeing* with one or more persons to commit the crime of wire fraud, for example – even if you find the defendant not guilty of the substantive crime that was the object of the conspiracy.  So you may find one or more of the defendants guilty of the conspiracy to commit the crime of mail and wire

---

[5] Sand, et al., <u>Modern Federal Jury Instructions</u>, Instr. 19-2; <u>United States v. Labat</u>, 905 F.2d 18, 21 (2d Cir. 1990) ("Since the essence of conspiracy is the agreement and not the commission of the substantive offense that is its objective, the offense of conspiracy may be established even if the collaborators do not reach their goal").

14

fraud charged in Count Two, even if you find that the defendants did not commit the substantive

crime of wire fraud.  Since the essence of conspiracy is the agreement and not the commission of

the substantive offense that is the objective, the offense of conspiracy may be established even if

the collaborators do not reach their goal.

**REQUEST NO. 8**
**RACKETEERING CONSPIRACY[6]**
**(COUNT ONE)**

Count One of the Indictment charges the defendant Stevenson Dunn with racketeering conspiracy, in violation of Section 1962 of Title 18 of the United States Code.

Specifically, Count One charges the defendant Stevenson Dunn with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, also known as "RICO." This means that Dunn has been charged with conspiracy to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity, in violation of the statute which reads as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through pattern of racketeering activity or collection of unlawful debt.

In short, RICO prohibits any person associated with an enterprise from conducting the affairs of that enterprise through a pattern of racketeering activity.[7]

The elements of a racketeering conspiracy may be inferred from the various kinds of evidence before you. For example, if the evidence establishes that the defendant and at least one other conspirator committed several racketeering acts in furtherance of the charged enterprise's affairs, you may infer the existence of the requisite agreement to commit a racketeering offense.

---

[6] Adapted from jury charge in United States v. Curanovic and United States v. Gioeli, 08 CR 240 (BMC) (E.D.N.Y.), and United States v. Dimora, 10 CR 387 (N.D. Ohio).

16

You must determine whether, based on the entirety of the evidence, the government has proven that a defendant entered into the required conspiratorial agreement.

***Elements of Racketeering***

First Element: Enterprise

The first element of the underlying substantive offense of racketeering is that an enterprise existed that engaged in or affected interstate or foreign commerce. As used in these instructions, the term "enterprise" includes any legal entity. In this case, the Indictment charges that the New York City Department of Housing Preservation and Development ("HPD") is the enterprise. An "enterprise" may encompass governmental units, and the RICO statute applies to activities that corrupt public or governmental entities, such as HPD.[8]

Although the government is not required to prove each and every allegation about the enterprise or the manner in which the enterprise operated as described in the Indictment, the government has charged that the enterprise in this case is as follows:

The New York City Department of
Housing Preservation and Development

1. The New York City Department of Housing Preservation and Development ("HPD") was a municipal public agency created under Chapter 42 of the New York City Charter and regulated under Title 28 of the Rules of the City of New York (the "NYC Rules") to provide affordable housing to the residents of New York City.

---

[7] National Organization for Women v. Scheidler, 510 U.S. 249, 252 (1994).
[8] United States v. Angelilli, 660 F.2d 23, 31-33 (2d Cir. 1981) and United States v. Cianci, 378 F.3d 71, 83 (1st Cir. 2004).

2.  As the largest municipal provider of affordable housing in the country, HPD's purpose was to provide affordable housing in various forms to the residents of New York City.  HPD ran a number of programs that were intended to develop affordable housing, including, among others: (1) the Neighborhood Entrepreneurs Program ("NEP"), which was intended to enable neighborhood based private property managers to manage and own clusters of occupied and vacant New York City-owned buildings as affordable housing; (2) the Neighborhood Redevelopment Program ("NRP"), whereby HPD conveyed clusters of occupied and vacant New York City-owned buildings to designated not-for-profit organizations for rehabilitation and operation as affordable rental housing; and (3) the Neighborhood Homes Program and the HomeWorks Program, which were intended to rehabilitate residential buildings for eventual sale to eligible purchasers. Pursuant to Title 28 of the NYC Rules, HPD was charged with selecting real estate developers, or "sponsors," to develop NEP and NRP projects.  The NYC Rules provided that "HPD may select a Sponsor for a Project by any method which HPD determines will best further the purposes of the Program, including, without limitation, pursuant to a request for qualifications process, pursuant to a request for proposals process, selection from a pre-qualified list or, in the discretion of HPD, by a direct designation of an entity judged by HPD to be suitable for the task."

3.  After HPD selected a developer for a particular project, HPD and the developer selected a general contractor responsible for the construction, rehabilitation and renovation of the properties involved in that project.

4.  HPD engaged in, and its activities affected, interstate and foreign commerce, and as a legal entity, it constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4).  HPD operated throughout New York City, including within the Eastern District of New York.

<u>The Defendants and Other Individuals</u>

5.  At various times, the defendant STEVENSON DUNN was associated with HPD as a real estate developer involved in various HPD projects.

18

6.  At various times, the defendants LEE HYMOWITZ and MICHAEL FREEMAN were business partners with the defendant STEVENSON DUNN in corporate entities, including, among others, SML Development LLC, Lexington Avenue LP, SML Bed Stuy Development, LLC, and Hancock Street SML LLC (collectively, the "SML Entities"), which were selected as real estate developers for one or more HPD projects.  HYMOWITZ and FREEMAN were also partners in a law firm, Hymowitz & Freeman.

7.  At various times, Bogdan Starzecki [identified as "John Doe #1" in the Indictment], was a general contractor and real estate developer who was awarded work on HPD projects.

8.  At various times, George Armstrong [identified as "John Doe #2" in the Indictment] was a general contractor and real estate developer who was awarded work on HPD projects.

9.  At various times, Wendell Walters [identified as "John Doe #3" in the Indictment] was employed by HPD in various executive positions.  Walters's employment at HPD qualified him as a "public servant" as defined by New York Penal Law Section 10.00(15).

<u>The Criminal Schemes</u>

10.  In or about and between January 2005 and October 2011, both dates being approximate and inclusive, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, solicited and received kickback payments from Starzecki in connection with the award of general contracting and real estate development work with the SML Entities on HPD projects.  DUNN, HYMOWITZ and FREEMAN included and caused to be included the amount of money they received in the form of kickback payments from Bogdan Starzecki in requisitions for payment they submitted to HPD and to other parties participating in HPD projects, such as the United States Department of Housing and Urban Development ("HUD") and various private lenders (together, "HPD and its partners"), thereby passing on the costs of their own corrupt activity to HPD and its partners.  To further conceal the true nature of these kickback payments, DUNN, HYMOWITZ and FREEMAN provided

19

Bogdan Starzecki with a sham retainer agreement for Hymowitz & Freeman's legal services and provided Bogdan Starzecki with false and inflated invoices for services and supplies from, among others, 334 Marcus Garvey Boulevard Corporation.

11. Similarly, in or about and between January 2005 and October 2011, both dates being approximate and inclusive, the defendant STEVENSON DUNN together with others, solicited and received kickback payments from George Armstrong in connection with the award of general contracting and real estate development work with the SML Entities on HPD projects. DUNN included and caused to be included the amount of money he received in the form of kickback payments from George Armstrong in requisitions for payment that he, together with others, submitted to HPD and its partners. To further conceal the true nature of these kickback payments, DUNN provided George Armstrong with inflated invoices for services and supplies from, among others, 334 Marcus Garvey Boulevard Corporation. In addition, when George Armstrong failed to pay some of the kickback payments demanded by DUNN, DUNN threatened George Armstrong and his family with force, violence and fear. Moreover, in or about and between 2007 and 2008, DUNN made a cash bribe payment to Wendell Walters.

## Second Element: Interstate Commerce

The second element of the crime of racketeering is that the conduct of the enterprise affected interstate commerce. The government is not required to prove that the enterprise was actually engaged in or its activities actually affected interstate or foreign commerce. Rather, the government must prove beyond a reasonable doubt that the defendants intended to participate in an enterprise that engaged in or the activities of which affected interstate or foreign commerce.

Interstate commerce means trading or conducting business or travel between one state and another state, and foreign commerce means such trade, business or travel between the United

States and another country. Interstate and foreign commerce may include the movement of money, goods, services or persons from one state to another state or the District of Columbia or between the United States and another country. This may include, among other matters, the purchase or sale of goods or supplies from outside the United States or the state in which the enterprise is located, the use of interstate or international mail or wire facilities, or the causing of any of those things. The effect on interstate or foreign commerce need not be substantial or significant. A minimal effect on interstate or foreign commerce is sufficient.

An enterprise is generally "engaged in commerce" when it is directly engaged in the production, distribution or acquisition of goods or services in interstate commerce. On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the crimes charged in the Indictment. The effect need not be direct. Any effect, even if it is postponed, indirect or slight, is sufficient to satisfy the interstate commerce element. It does not matter whether the effect is harmful or beneficial to interstate commerce. Moreover, it is not necessary to find that a defendant knew that the enterprise would affect interstate or foreign commerce; that the defendant intended to affect interstate or foreign commerce; that the defendant engaged in, or his activities affected, interstate or foreign commerce. The government need only prove that the activities of the enterprise considered in their entirety had some minimal effect on interstate or foreign commerce, or that the enterprise was "engaged in" interstate or foreign commerce.

I instruct you that it makes no difference whether the type of interstate commerce affected is legal or illegal.

21

Third Element: Association with or Employment by the Enterprise

The term "employed by or associated with the enterprise" means that the person must be connected to the enterprise in some meaningful way, and the person must know of the existence of the enterprise and of the general nature of its activities.

A defendant need not have been employed by or associated with the enterprise for the entire period of its existence, but a defendant must, beyond a reasonable doubt, have been associated with or conspired to have been associated with the enterprise at the time of the Racketeering Acts for which he is charged. That is, the government must prove that the defendant was connected to the enterprise in some meaningful way and that he knew of the existence of the enterprise and of the general nature of its activities.

"Associated with" should be given its plain meaning. A defendant's association with the enterprise must be "knowing." An act is done knowingly if it is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. It is not required that a defendant have a formal position in the enterprise, or participated in all the activities of the enterprise, or had full knowledge of all the activities of the enterprise, or knew about the participation of all the other members of the enterprise. It is sufficient that the government prove beyond a reasonable doubt that at some time during the existence of the enterprise as alleged in the Indictment, the defendant was associated with or conspired to be associated with the enterprise, that he knew of the general nature of the enterprise and that the enterprise extended beyond his own role in the enterprise.

Fourth Element: Conducting or Participating in the Conduct of the Affairs of the Enterprise

22

To conspire to conduct or participate in the affairs of the enterprise means a defendant intentionally conspired to perform acts, functions or duties that are helpful in, or necessary to, the operation of the enterprise. The government is not required to prove that a defendant was a member of the upper management of the enterprise. A defendant need not have exercised significant control over or within the enterprise, nor must he have had a formal position in the enterprise, or primary responsibility for the enterprise's affairs. Rather, an enterprise is "operated" not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management or carry out upper management's orders. The government is not required to prove that the defendant shared in the profits of the enterprise.

Fifth Element: Engaging in a Pattern of Racketeering Activity

The fifth element the government must prove beyond a reasonable doubt is that the defendant knowingly conspired to participate in the affairs of the enterprise through a pattern of racketeering, which must include the following:

First, that at least two acts of racketeering were committed within ten years of each other.

Second, that the racketeering acts were connected to the affairs and operations of the criminal enterprise, and had the same or similar purposes, results, participants, victim or methods of commission, or were otherwise interrelated by distinguishing characteristics and are not isolated events. The racketeering acts need not be directly interrelated with each other.  This can be satisfied by proof that the racketeering acts were related to the activities of the enterprise.

Third, that the racketeering acts themselves constituted a threat of continued activity. This threat of continued activity may be established when the evidence shows that the

23

racketeering acts were a regular way of conducting a defendant's ongoing legitimate business or enterprise or were part of a long-term association that existed for criminal purposes.

In determining whether the government has proved a threat of continued racketeering activity, you are not limited to consideration of the racketeering acts alone; you may consider the totality of the circumstances surrounding the commission of the racketeering acts to determine whether those acts posed a threat of continuing criminal activity.

The government is not required to prove that a defendant personally committed two Racketeering Acts, or that he agreed to personally commit two Racketeering Acts. Rather, the government must prove that a defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the racketeering conspiracy (which could be a defendant himself, or a co-conspirator) would commit at least two Racketeering Acts in the conduct of the affairs of the enterprise.

The Indictment need not specify the Racketeering Acts that a defendant agreed would be committed by some member of the conspiracy in the conduct of the affairs of the enterprise. Where it is alleged, as in Count One of this Indictment, that it was agreed that certain acts would be committed, you are not limited to considering only the specific Racketeering Acts alleged in Count One of this Indictment. Rather, you may also consider evidence presented of other Racketeering Acts committed or agreed to be committed by a co-conspirator in furtherance of the enterprise's affairs to determine whether a defendant agreed that at least one member of the conspiracy would commit two or more Racketeering Acts.

24

You must not find a defendant guilty on Count One unless you all agree that he ultimately agreed with another co-conspirator that at least two particular Racketeering Acts would be committed. That is, for example, you cannot find a defendant guilty if some of you think that the defendant agreed that only Racketeering Acts One and Two would be committed and the rest of you think that defendant only agreed to the commission of Racketeering Acts Three and Four. You must be unanimous as to which Racketeering Acts a defendant conspired to commit or agree to be committed.

### Elements of Racketeering Conspiracy

Now that I have explained the underlying charge of racketeering, I will instruct you on the law as it pertains to Count One of the Indictment, namely racketeering conspiracy. Count One of the Indictment reads:

In order to convict the defendant Stevenson Dunn of the RICO conspiracy offense charged in Count One, you must first find that the government proved all four of the following elements beyond a reasonable doubt:

First, that the enterprise alleged in the Indictment – here, HPD – was established;

Second, that the enterprise was engaged in, or its activities affect, interstate or foreign commerce;

Third, that a defendant was employed by, or associated with, the enterprise; and

Fourth, that the defendant you are considering knowingly and willfully became a member of the conspiracy – that is to say that he knowingly and willfully conspired with at least one other

person to participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

The meanings of the terms "enterprise," "engaged in or affecting interstate or foreign commerce," "pattern of racketeering activity" and "employed by or associated with the enterprise" are as I instructed you a moment ago, in my explanation of the substantive crime of racketeering.

While the government is not required to prove that a defendant personally committed two racketeering acts, or that he agreed to personally commit two racketeering acts, the government must prove nonetheless beyond a reasonable doubt that a defendant agreed with at least one other co-conspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise. These two acts need not be agreed to at the same time; they may be agreed to throughout the course of the conspiracy. Remember the government need not prove that any racketeering acts were actually committed.

As I have previously instructed you, you may not find the defendant Dunn guilty on Count One unless you all agree that he ultimately agreed that, in total, the members of the conspiracy would commit at least two racketeering acts.

The following racketeering acts are identified in the Indictment:

> Racketeering Act One, charging mail fraud with regard to kickback payments received from Bogdan Starzecki;
>
> Racketeering Acts Two and Three, charging wire fraud with regard to kickback payments received from Bogdan Starzecki;

26

Racketeering Acts Four and Five, charging wire fraud with regard to kickback payments received from George Armstrong;

Racketeering Act Six, charging money laundering conspiracy and money laundering;

Racketeering Act Seven, charging bribery in violation of New York Penal Law Sections 200.00 and 20.00; and

Racketeering Act Eight, charging extortion.

I will now instruct you on the elements of these offenses, many of which are also charged as separate substantive counts against the defendants Dunn, Lee Hymowitz and/or Michael Freeman.

**REQUEST NO. 9**
**MAIL AND WIRE FRAUD CONSPIRACY, MAIL FRAUD AND WIRE FRAUD[9]**
**(RACKETEERING ACT ONE; COUNTS TWO THROUGH SEVEN)**

Racketeering Act One charges Dunn with mail fraud in violation of Section 1341 of the United States Code and Racketeering Acts Two through Five charge Dunn with wire fraud in violation of Section 1343 of Title 18 of the United States Code.  In addition, Count Two charges the defendants Dunn, Hymowitz and Freeman with conspiracy to commit mail fraud and wire fraud, in violation of Section 1349 of Title 18 of the United States Code.  Count Three charges the defendants Dunn, Hymowitz and Freeman with mail fraud, in violation of Section 1341 of Title 18 of the United States Code.  Counts Four and Five charge the defendants Dunn, Hymowitz and Freeman with wire fraud, and Counts Six and Seven charge the defendant Dunn with wire fraud, all in violation of Section 1343 of the United States Code.

Specifically, Racketeering Act One charges the Defendant Dunn with mail fraud, in that:

> In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant STEVENSON DUNN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HPD and its partners, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

> It was part of the scheme and artifice that the defendant STEVENSON DUNN, together with others, would and did solicit bribe and kickback payments from Bogdan Starzecki in connection with the award of general contracting and real estate development work with, among others, the SML Entities on HPD projects.  It was

---

[9] Sand, Modern Federal Jury Instructions, 19-2, 19-3S, 44-3; O'Malley, supra, Section 47:07; see also Skilling v. United States, 130 S.Ct. 2896 (2010); United States v. Ganim, 510 F.3d 134 (2d Cir. 2007); United States v. Seminario, 680 F.Supp. 523 (S.D.N.Y. 2010).

further part of the scheme and artifice that DUNN, together with others, would and did submit and cause to be submitted false requisitions for payments to HPD and its partners that included the amount of such kickback payments from Bogdan Starzecki.  It was further part of the scheme and artifice that such false requisitions would and did cause HPD and its partners to make payments to DUNN and others based upon such requisitions and that such payments from HPD and its partners would be and were used, in part, to fund bribe and kickback payments.

On or about April 17, 2007, for the purpose of executing such scheme and artifice, the defendant STEVENSON DUNN, together with others, did place and cause to be placed in a post office and authorized depository for mail matter, one or more matters and things to be sent and delivered by the United States Postal Service, to wit: a payment voucher and related documents mailed from the address "Michael Freeman, 404 Park Avenue South, New York, New York 10016" to HUD at 100 Penn Square East, Philadelphia, Pennsylvania 19107, in violation of Title 18, United States Code, Sections 1341 and 2.

Racketeering Acts Two and Three charge the defendant Dunn with wire fraud related to kickback

payments from Bogdan Starzecki, in that:

In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant STEVENSON DUNN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HPD and its partners, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

It was part of the scheme and artifice that the defendant STEVENSON DUNN, together with others, would and did solicit bribe and kickback payments from Bogdan Starzecki in connection with the award of general contracting and real estate development work with, among others, the SML Entities on HPD projects.  It was further part of the scheme and artifice that DUNN, together with others, would and did submit and cause to be submitted false requisitions for payments to HPD and its partners that included the

29

amount of such kickback payments from Bogdan Starzecki.  It was further part of the scheme and artifice that such false requisitions would and did cause HPD and its partners to make payments to DUNN and others based upon such requisitions and that such payments from HPD and its partners would be and were used, in part, to fund bribe and kickback payments.

For the purpose of executing such scheme and artifice, the defendant STEVENSON DUNN, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: wire transfers through New Jersey, in violation of Title 18, United States Code, Sections 1343 and 2, as set forth below:

| R.A. | APPROX. DATE | ORIGINATOR | RECIPIENT | APPROX. AMOUNT OF WIRE TRANSFER |
|------|--------------|------------|-----------|----------------------------------|
| TWO | Nov. 14, 2007 | Enterprise Community Loan Fund, Columbia, Maryland | Hymowitz & Freeman IOLA Account, New York, New York | $30,976.73 |
| THREE | Feb. 5, 2008 | Enterprise Community Loan Fund, Columbia, Maryland | Hymowitz & Freeman IOLA Account, New York, New York | $37,990.90 |

Racketeering Acts Four and Five charge the defendant Dunn with wire fraud related to kickback

payments from George Armstrong, in that:

In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant STEVENSON DUNN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HPD and its partners, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

It was part of the scheme and artifice that the defendant STEVENSON DUNN, together with others, would and did solicit bribe and kickback payments from George Armstrong in connection

with the award of general contracting and real estate development work with, among others, the SML Entities on HPD projects.  It was further part of the scheme and artifice that DUNN, together with others, would and did submit and cause to be submitted false requisitions for payments to HPD and its partners that included the amount of such kickback payments from George Armstrong.  It was further part of the scheme and artifice that such false requisitions would and did cause HPD and its partners to make payments to DUNN and others based upon such requisitions and that such payments from HPD would be and were used, in part, to fund bribe and kickback payments.

For the purpose of executing such scheme and artifice, the defendant STEVENSON DUNN, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: wire transfers through New Jersey, in violation of Title 18, United States Code, Sections 1343 and 2, as set forth below:

| R.A. | APPROX. DATE | ORIGINATOR | RECIPIENT | APPROX. AMOUNT OF WIRE TRANSFER |
|------|--------------|------------|-----------|--------------------------------|
| FOUR | April 4, 2008 | The Community Preservation Corp., New York, New York | Hancock Street SML, LLC, New York, New York | $210,116.83 |
| FIVE | Oct. 15, 2008 | The Community Preservation Corp., New York, New York | Hancock Street SML, LLC, New York, New York | $283,409.96 |

Count Two charges all three defendants with conspiracy to commit mail and wire fraud, in that:

In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud HPD and its partners, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such

31

scheme and artifice, (a) to place and cause to be placed in a post office and authorized depository for mail matter, one or more matters and things to be sent and delivered by the United States Postal Service, contrary to Title 18, United States Code, Section 1341; and (b) to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: interstate wire transfers, contrary to Title 18, United States Code, Section 1343.

Count Three charges all three defendants with mail fraud related to kickback payments from

Bogdan Starzecki, in that:

In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant STEVENSON DUNN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HPD and its partners, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

On or about April 17, 2007, for the purpose of executing such scheme and artifice, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, did place and cause to be placed in a post office and authorized depository for mail matter, one or more matters and things to be sent and delivered by the United States Postal Service, to wit: a payment voucher and related documents mailed from the address "Michael Freeman, 404 Park Avenue South, New York, New York 10016" to HUD at 100 Penn Square East, Philadelphia, Pennsylvania 19107.

Counts Four and Five charge all three defendants with wire fraud related to kickback payments

from Bogdan Starzecki, in that:

In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HPD and its partners, and to obtain money and property by means of

32

materially false and fraudulent pretenses, representations and promises.

For the purpose of executing such scheme and artifice, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: wire transfers through New Jersey, as set forth below:

| COUNT | APPROX. DATE | ORIGINATOR | RECIPIENT | APPROX. AMOUNT OF WIRE TRANSFER |
|-------|--------------|------------|-----------|--------------------------------|
| FOUR | Nov. 14, 2007 | Enterprise Community Loan Fund, Columbia, Maryland | Hymowitz & Freeman IOLA Account, New York, New York | $30,976.73 |
| FIVE | Feb. 5, 2008 | Enterprise Community Loan Fund, Columbia, Maryland | Hymowitz & Freeman IOLA Account, New York, New York | $37,990.90 |

Counts Six and Seven charge the defendant Dunn with wire fraud related to kickback payments

from George Armstrong, in that:

In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant STEVENSON DUNN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud HPD and its partners, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

For the purpose of executing such scheme and artifice, the defendant STEVENSON DUNN, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: wire transfers through New Jersey, as set forth below:

33

| COUNT | APPROX. DATE | ORIGINATOR | RECIPIENT | APPROX. AMOUNT OF WIRE TRANSFER |
|-------|--------------|------------|-----------|----------------------------------|
| SIX | April 4, 2008 | The Community Preservation Corp., New York, New York | Hancock Street SML, LLC, New York, New York | $210,116.83 |
| SEVEN | Oct. 15, 2008 | The Community Preservation Corp., New York, New York | Hancock Street SML, LLC, New York, New York | $283,409.96 |

For mail fraud, Section 1341 of Title 18 of the United States Code provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter any matter or thing whatever to be sent or delivered by the Postal Service. . . or knowingly causes to be delivered by mail. . . according to the direction thereon . . . any such matter or thing, shall be [guilty of a crime].

For wire fraud, Section 1343 of Title 18 of the United States Code provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be [guilty of a crime].

In order to meet its burden of proof with respect to the charge in Count Two that the defendants conspired to commit mail and wire fraud, the government must prove beyond a reasonable doubt each of the following elements:

First, the existence of the charged conspiracy during the applicable time period; and

34

Second, that the defendant participated in the conspiracy knowingly and intentionally.

The government must prove that the conspiracy to commit mail and wire fraud existed. I will now explain for you the elements of mail and wire fraud. You will apply these elements when considering not only the conspiracy to commit mail and wire fraud in Count Two, but also the substantive mail and wire fraud charges in Counts Three through Seven.

First, the government must prove that the defendants knowingly devised or participated in a scheme to defraud and obtain money or property by materially false or fraudulent pretenses, representations or promises, as alleged in the Indictment. Count Two of the Indictment charges that the objective of the scheme or artifice was to defraud and obtain money or property from HPD and its partners, who are described in the Indictment as the U.S. Department of Housing and Urban Development, also known as "HUD," and private lenders.

Second, the government must prove that the defendants knowingly and willfully participated in the scheme or artifice to defraud, and with specific intent to defraud.

Third, with respect to mail fraud, the government must prove that in execution or in furtherance of the scheme, the defendants used or caused the use of the mails or a private or commercial interstate carrier. With respect to wire fraud, the government must prove that in execution or in furtherance of the scheme, the defendants used or caused another to use wire, radio or television communications in interstate or foreign commerce in furtherance of the scheme.

I have already charged you on the law regarding knowing, willful and intentional conduct. I will now provide you with some additional instructions regarding the elements of mail and wire fraud.

First Element: Scheme or Artifice to Defraud

As I instructed you earlier, a "scheme or artifice" means a plan for the accomplishment of an objective.  In each of the racketeering acts and the counts of the Indictment I have detailed for you, the Indictment charges that the objective of the scheme or artifice was to obtain money and property from HPD and its partners.

"Fraud" is a general term. It includes all the possible means by which a person seeks to gain some unfair advantage over another person by false representations, false suggestion, false pretenses or concealment of the truth. The unfair advantage sought can involve money, property, or any other thing of value.

Thus, a "scheme to defraud" is any plan, device, or course of action to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises. It is a plan to deprive another of money or property by trick, deceit, deception, swindle, or overreaching.

A statement, representation, claim, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.

A representation or statement is fraudulent if it was made falsely and with intent to deceive. Deceitful statements of half-truths or the concealment of material facts may also constitute false or fraudulent statements under the statute.  The deception need not be premised upon spoken or written words alone. The arrangement of the words or the circumstances in which they are used may convey the false and deceptive appearance. If there is deception, the manner in which it is accomplished is immaterial.

36

The false or fraudulent representation or concealment must relate to a material fact or matter. A material fact is one that would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision. That means that, if you find a particular statement or representation false, you must determine whether that statement or representation was one that a reasonable person might have considered important in making his or her decision. The same principle applies to fraudulent half-truths or omissions of material facts.

The alleged scheme must also have contemplated depriving another of money or property. However, it is not necessary for the government to establish that any particular person or persons actually realized any gain from the scheme or that any particular person or persons actually suffered damages as a consequence of the fraudulent scheme.

A scheme to defraud need not be shown by direct evidence, but may be established by all the circumstances and facts in the case.

If you find that there was a fraudulent statement, representation or claim as to a material fact, it does not matter whether the victim was gullible or sophisticated, because the mail fraud statute protects the gullible and unsophisticated as well as experienced victims.  Moreover, it does not matter whether the victim could have avoided a loss through greater diligence.  Negligence by a victim is not a defense to a violation of the mail fraud statute.

It is not necessary that the government prove each and every pretense, misrepresentation or promise alleged in the Indictment.  It is sufficient if the government proves beyond a reasonable doubt that at least one pretense, misrepresentation or promise about a material fact was made in

furtherance of a scheme to defraud.  However, you may not find a defendant guilty unless you all agree that at least one particular pretense, misrepresentation or promise about a material fact was made or caused to be made by the defendant.  That is, you cannot find the defendant guilty if some of you think that the defendant made only misrepresentation "A" and the rest of you think that the defendant made only misrepresentation "B".  There must be at least one specific pretense, misrepresentation or promise about a material fact that all of you believe the defendant made in order to convict the defendant.

<u>Second Element: Knowing and Wilful Participation</u>

The second element that the government must prove beyond a reasonable doubt is that the defendant participated in the scheme to defraud knowingly, willfully and with the specific intent to defraud.

I have already instructed you as the meaning of "knowingly" and "willfully." I refer you to those instructions as they apply here also. I will remind you, however, that the question of whether a person acted knowingly, willfully and with intent to defraud is a question of fact for you to determine, like any other fact question. This question involves one's state of mind. As I have said before, direct proof of knowledge and fraudulent intent is not necessary. The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his or her words, his or her conduct, his or her acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them. Circumstantial evidence, if believed, is of no less value

38

than direct evidence. In either case, the essential elements of the crime must be established beyond a reasonable doubt.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of the defendant is a complete defense to a charge of wire fraud. The defendant, however, has no burden to establish a defense of good faith. The burden is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt. Under the wire fraud statute, even false representations or statements, or omissions of material facts, do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith. An honest belief in the truth of the representations made by or on behalf of the defendant is a good defense, however inaccurate the statements may turn out to be.

The government can also meet its burden of showing that the defendant had knowledge of the falsity of the statements if it establishes beyond a reasonable doubt that he acted with deliberate disregard of whether the statements were true or false, or with a conspicuous purpose to avoid learning the truth. If the government establishes that the defendant acted with deliberate disregard for the truth, the knowledge requirement would be satisfied unless the defendant actually believed the statements to be true. This guilty knowledge, however, cannot be established by demonstrating that the defendant was merely negligent or foolish.

There is another consideration to bear in mind in deciding whether or not the defendant acted in good faith. You are instructed that if the defendant participated in the scheme to defraud, then a belief by the defendant, if such belief existed, that ultimately everything would work out so

39

that no one would lose any money does not require you to find that the defendant acted in good faith. If the defendant participated in the scheme for the purpose of causing some financial or property loss to another, then no amount of honest belief on the part of the defendant that the scheme would, for example, ultimately make a profit, will excuse fraudulent actions or false representations caused by him.

As a practical matter, then, in order to sustain any of the charges of wire fraud or mail fraud in the Indictment, the government must establish beyond a reasonable doubt that a defendant knew that his conduct as a participant in the scheme was calculated to deceive and, nonetheless, he associated himself with the alleged fraudulent scheme for the purpose of causing some financial loss to another or to deprive another of their interest in property.

To conclude on this element, if you find that the defendant was not a knowing participant in the scheme or that he lacked the specific intent to defraud, you must find him not guilty. On the other hand, if you find that the government has established beyond a reasonable doubt not only the first element, namely the existence of the scheme to defraud, but also this second element, that the defendant was a knowing participant and acted with specific intent to defraud, you must then proceed to consider the third element of wire fraud.

Third Element: Use of the Mail and Wires

    A.    Use of the Mail

To prove mail fraud the government must establish that the defendant used or caused the use of the mails or a private or commercial interstate carrier for the purpose of executing the scheme or artifice.  The mailing need not itself contain a fraudulent representation or purpose or request for

40

money. It must, however, further or assist in the carrying out of the scheme to defraud.  Moreover, the use of the mails need not be an essential element of the scheme. Rather, it is sufficient if the mailing was incident to an essential part of the scheme or a step in the plot.  It is not necessary for the defendant to be directly or personally involved in the mailing, as long as the mailing was reasonably foreseeable in the execution of the alleged scheme to defraud.

Evidence that the defendant agreed to cause a mailing by others is sufficient.  This does not mean that the defendant must specifically have authorized others to do the mailing. When one does an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use of such a mailing can reasonably be foreseen, even though not actually intended, then one causes the use of the mails.

There is no requirement that the government prove the use of the mails by direct evidence, such as by having a witness testify that he or she specifically remembers sending a particular document through the mail or by producing the envelope in which a document was sent.  You may infer that a particular document was sent through the mail based on circumstantial evidence, such as the customary practices of a business concerning the transmittal of documents.  Please bear in mind that to convict the defendant of the conspiracy charged in Count Two, you must find beyond a reasonable doubt that there was an agreement to commit mail fraud.  It is the conspiracy government must prove in that particular count, not the successful completion of the conspiracy's objectives.

B.      <u>Use of the Wires</u>

41

To prove wire fraud, the government must establish beyond a reasonable doubt is the use of an interstate or international wire communication in furtherance of the scheme to defraud. The wire communication must pass between two or more states, or it must pass between the United States and a foreign country. A wire communication includes a wire transfer of funds between banks in different states and facsimiles between two different states.

The use of the wires need not itself be a fraudulent representation. It must, however, further or assist in the carrying out of the scheme to defraud. It is not necessary for the defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.

In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others. This does not mean that the defendant must specifically have authorized others to make or cause the transfer of funds or other wire communication, such as a facsimile or email. When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used.  Remember that with regard to the conspiracy charged in Count Two, you must find beyond a reasonable doubt that there was an agreement to commit wire fraud.  It is the conspiracy the government must prove in that count, not the successful completion of the conspiracy's objectives.

43

**REQUEST NO. 10**
**MONEY LAUNDERING CONSPIRACY AND MONEY LAUNDERING[10]**
**(RACKETEERING ACT SIX AND COUNTS EIGHT AND NINE)**

Racketeering Act Six charges the defendant Dunn with conspiracy to commit money laundering and money laundering, in violation of Sections 1956 and 1957 of Title 18 of the United States Code. Count Eight of the Indictment charges the defendants Dunn, Hymowitz and Freeman with conspiracy to commit money laundering, in violation of Section 1956 of Title 18 of the United States Code.  Count Nine charges the defendants Dunn, Hymowitz and Freeman with substantive money laundering, in violation of Section 1957 of Title 18 of the United States Code.

With respect to Racketeering Act Six, the Indicment alleges as follows:

      A.      <u>Money Laundering Conspiracy</u>

      In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant STEVENSON DUNN, together with others, did knowingly and intentionally conspire to engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Code, Sections 1956(h) and 1957(a).

      B.      <u>Money Laundering</u>

      In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New

---

[10] Adapted from Sand, et al., Modern Federal Jury Instructions, Instructions 50A-25 through 50A-30; <u>United States v. Apazidis</u>, 10 CR 707 (NG).

York and elsewhere, the defendant STEVENSON DUNN, together with others, did knowingly and intentionally engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, and attempt to do so, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Code, Sections 1957(a) and 2.

Count Eight charges all three defendants with conspiracy to commit money laundering, in

that:

In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, did knowingly and intentionally conspire to engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a).

Count Nine charges all three defendants with money laundering, in that:

In or about and between January 2005 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEVENSON DUNN, LEE HYMOWITZ and MICHAEL FREEMAN, together with others, did knowingly and intentionally engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343.

45

Racketeering Act 6(A) charges the defendant Dunn with conspiracy to commit money laundering. I have previously instructed you on the federal law of conspiracy in regards to Counts One and Two.  When considering Racketeering Act 6(A), apply those instructions.

I will now instruct you on the elements of the substantive crime of money laundering. Section 1957 of Title 18 of the United States Code makes it a federal crime for anyone in the United States to "knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 . . . derived from specified unlawful activity."  In order to prove that a defendant committed the crime of money laundering, as charged in in Racketeering Act 6(B) and Counts Eight and Nine, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant engaged or attempted to engage in a monetary transaction in or affecting interstate commerce;

Second, that the transaction involved criminally derived property that is, property derived from specified unlawful activity with a value greater than $10,000;

Third, that the defendant knew that the transaction involved criminally derived property; and

Fourth, that the transaction took place in the United States.

46

First Element:  A Monetary Transaction in or Affecting Interstate Commerce

The first element that the government must prove beyond a reasonable doubt is that the defendant engaged in a monetary transaction in or affecting interstate commerce. The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange of funds or monetary instrument (such as travelers' checks, checks of an individual or entity, bank checks, or money orders) by, through, or to a financial institution. A financial institution includes banks and credit unions.  You must also find that the transaction affected interstate commerce in some way, however minimal. This effect on interstate commerce can be established in several ways. First, any monetary transaction with a financial institution insured by the FDIC affects interstate commerce, so if you find that JP Morgan Chase, Banco Popular, Citibank and Atlantic Bank (also known as New York Community Bank and New York Commercial Bank)  were insured by the FDIC, that is enough to establish that the transaction affected interstate commerce. Second, if you find that the source of the funds used in the transactions affected interstate commerce, that is sufficient as well. Third, if you find that a transaction itself involved an interstate transfer of funds, that would also be sufficient.[11]

---

[11] See United States v. Leslie, 103 F.3d 1093, 1101 (2d Cir, 1997); United States v. Benjamin, 252 F.3d 1, 10 (1st Cir. 2001); United States v. Ford, 184 F.3d 566, 583-84 (6th Cir. 1999) (stating that Section 1956 and Section 1957 contain interstate commerce elements, which can be satisfied by use of a bank whose activities affect interstate commerce); United States v. Wadena, 152 F.3d 831, 853 (8th Cir. 1998); United States v. Trammell, 133 F.3d 1343, 1353 (10th Cir.1998).

Second Element:  Criminally Derived Property Having a Value in Excess of $10,000

The second element that the government must prove beyond a reasonable doubt is that the monetary transaction involved criminally derived property having a value in excess of $10,000.  The term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense.  In this case, I instruct you that the criminal offense is wire fraud.

The government is not required to prove that all of the property involved in the transaction was criminally derived property.  However, the government must prove that more than $10,000 of the property involved was criminally derived property.  The term proceeds means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

Third Element:  Defendant's Knowledge Regarding the Proceeds

The third element that the government must prove beyond a reasonable doubt is that the defendant knew that the proceeds were from criminal activity.  I instruct you that in a prosecution for an offense under this section, the government is not required to prove that the defendant knew the particular offense from which the criminally derived property was derived. However, the government must prove beyond a reasonable doubt that the defendant knew that the transaction involved criminally derived property, which, I remind you, means any property constituting, or derived from, proceeds obtained from a criminal offense.

Fourth Element:  The Transaction Took Place in the United States

48

The fourth element that the government must prove beyond a reasonable doubt is that the transaction took place in the United States.

# REQUEST NO. 11
# FEDERAL PROGRAMS BRIBERY[12]
# (COUNT TEN)

Count Ten of the Indictment charges the defendant Dunn with federal programs bribery

and attempted bribery, in violation of Section 666(a)(2) of Title 18 of the United States Code.

Specifically, Count Ten charges that:

> In or about and between January 2007 and December 2008, both
> dates being approximate and inclusive, within the Eastern District
> of New York and elsewhere, the defendant STEVENSON DUNN,
> together with others, did knowingly, intentionally and corruptly
> give, offer and agree to give one or more things of value, to wit:
> cash payments, to John Doe #3, an agent of a local government
> agency, to wit: HPD, which agency received in excess of $10,000
> under one or more Federal programs involving grants, contracts,
> subsidies, loans, guarantees, insurance and other forms of Federal
> assistance in one or more one-year periods, with intent to influence
> and reward John Doe #3 in connection with business and one or
> more transactions and series of transactions of HPD involving
> things of value of $5,000 or more.

Section 666(a)(2) prohibits making corrupt payments to agents of organizations where

there is federal funding involved.  The statute states, in pertinent part:

> (a) Whoever corruptly gives, offers, or agrees to give anything of
>      value to any person, with intent to influence or reward an agent
>      of an organization or of a State, local or Indian tribal
>      government, or any agency thereof, in connection with any

---

[12] Sand, Modern Federal Jury Instructions, Instr. 27A-9, 27A-10, 27A-11, 27A-12, 27A-13 and 27A-14; see also United States v. Sabri, 541 U.S. 600 (2004); United States v. Biaggi, 909 F.2d 662, 684 (2d Cir. 1990) (public official acts corruptly by making introductions and aiding in securing favorable action from other officials in return for payment); see also United States v. Madrzyk, 970 F.Supp. 642 (N.D. Illinois 1997) (as an Alderman and Chairman of a City Council committee, defendant was an agent of the City, as well as the City Council).

business, transaction, or series of transactions of such
organization, government, or agency involving anything of
value of $5,000 or more [commits an offense against the
United States].

(b) The circumstance referred to in subsection (a) of this section is
that the organization, government, or agency receives, in any
one year period, benefits in excess of $10,000 under a Federal
program involving a grant, contract, subsidy, loan, guarantee,
insurance, or other form of Federal assistance.

To sustain the charges of federal programs bribery in Count Ten the Indictment, the

government must prove five elements beyond a reasonable doubt:

First, that at the time alleged in Count Ten, Wendell Walters, who is identified as "John

Doe #3" in the Indictment, was an agent of a local government agency, specifically, HPD;

Second, that HPD, in any one year period during the time alleged in Count Ten, received

benefits of more than $10,000 from the United States government, including any Federal

program involving a grant, contract, subsidy, loan, guarantee, insurance or other assistance;

Third, that the defendant gave, offered or agreed to give something of value to Walters,

or attempted to do so;

Fourth, that the defendant acted corruptly with the intent to influence or reward Walters

in connection with business or one or more transactions with HPD; and

Fifth, that the value of the business, transaction or series of transactions to which the

payment related had a value of at least $5,000.

I will now explain each of these elements in greater detail.

51

First Element: Walters Was an Agent of an Organization Receiving Federal Funds

  The first element the government must prove beyond a reasonable doubt is that at the time alleged in the Indictment, Wendell Walters was an agent of HPD and that HPD was a local government agency.  The Indictment alleges that during the period charged in Count Ten of the Indictment, Walters was an employee of HPD, and that HPD was a municipal public agency created under the New York City Charter and regulated under the Rules of the City of New York.

  Section 666 defines an "agent" as "means a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative."

Second Element: Organization Received $10,000 in Federal Funds

  The second element that the government must prove beyond a reasonable doubt is that, in a one-year period, HPD received federal benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or some other form of federal assistance.

  The one-year period must begin no more than 12 months before the defendant began committing the offense and must end no more than 12 months after they stopped committing the offense.  The one-year period may include time both before and after the commission of the offense.

The government does not have to prove that the defendant or Walters had the authority to administer the federal benefits received by HPD.

Third Element: "Thing of Value" Defined

The third element the government must prove beyond a reasonable doubt is that the defendant Dunn gave, offered or agreed to give something of value to Walters.

The thing of value may be money, tangible property, intangible property, or services, of any dollar value, so long as it has value, including payments to third persons made on the defendant's behalf.

The government is not required to prove that the particular thing of value that the defendant gave, offered or agreed to give was "federal benefits," or that the illegal acts directly affected the federal benefits that the entity received.[13]   Rather, the government is required to prove only that the defendant illegally gave, offered or agreed to give a particular thing of value, while Walters was an agent of a local government agency that received in excess of $10,000 in federal benefits.

Fourth Element: Defendant Acted Corruptly With Influence or Reward

The fourth element the government must prove beyond a reasonable doubt is that the defendant Dunn gave, offered or agreed to give something of value from others knowingly,

---

[13] Salinas v. United States, 522 U.S. 52, 57 (1997) (government does not need to establish a nexus between the criminal activity and the federal funds).

53

corruptly and with the intent to be influence or reward Walters in connection with some business, transaction, or series of transactions of HPD.

To act "corruptly" means simply to act voluntarily and intentionally with an improper motive or purpose to be influenced. This involves conscious wrongdoing, or as it sometimes been expressed, a bad or evil state of mind.  The motive to act corruptly is ordinarily a hope or expectation of either financial gain or other benefit to one's self or some aid or profit or benefit to another.

In addition, in order to find the defendant guilty of this charge, you must find that the defendant gave, offered or agreed to give the thing of value "with the intent to influence or reward." It is the intent of the defendant Dunn that you must consider, not the intent of the person or persons receiving the benefits.  The government does not have to prove that Walters actually received the thing of value or that Walters actually influenced HPD.  It is not even necessary for the government to prove that Walters had the authority to perform the act sought. It is not a defense that that there was actually no reason to seek to influence or reward any official conduct.

It is also no defense that giving, offering or agreeing to give money or a thing of value was made to the recipient official with the intent to influence or reward an official act that was

54

lawful or even desirable or beneficial to the public welfare.[14] In addition, it is immaterial if: (1) the recipient official was simply doing what he was obligated to do; or (2) there was no financial injury to HPD.

It is likewise not a defense that the official act sought to be influenced or rewarded would have been done anyway regardless of the fact that corrupt payments had been offered or given.

Also, if you find that the defendant gave, offered or agreed to give the thing of value with the intent to reward the agent for a decision already made, it does not matter that the payment was not given or offered until after the transaction occurred.  In addition, the defendant and the agent need not state in express terms that the thing of value is being given to the agent with the intent that the agent be influenced or rewarded in connection with some business or transaction of the agency.  Otherwise the law's effect could be frustrated by knowing winks, nods and coded phrases. Rather, the intent to influence or reward may be established by circumstantial evidence, based upon the parties' words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.[15]

---

[14] United States v. Alfisi, 308 F.3d 144, 151 (2d Cir. 2002) (the law is well-settled that a public official acts "corruptly" even where official's actions were legally correct and benefitted the public), citing United States v. Manton, 107 F.2d 834, 845 (2d Cir. 1939).
[15]  United States v. Dimora, 10 CR 387 (N.D. Ohio).

Fifth Element: Value of Transaction Was at Least $5,000

The fifth element the government must prove beyond a reasonable doubt is that the value of the business or transaction or series of transactions to which the payment related was at least $5,000.

To establish this element, the government must prove that defendant Dunn intended to influence or reward Walters in connection with any business or transaction or series of transactions of HPD involving anything of value of $5,000 or more. If you find that the business or transaction or series of transactions in question had a value of at least $5,000, this element is satisfied.

The government is not required to prove that Walters received at least $5,000. It is the value of the business or transaction or series of transactions that the bribe was intended to influence or reward that is important for the purposes of this element.

This $5,000 threshold can be reached by determining how much the business or transaction or series of transactions in question were worth to HPD, to the person who was giving, offering or agreeing to give the benefit, or to the person receiving the benefit.[16] For instance, if the value of the contract or matter in issue is worth $5,000 or more to the payor or HPD, or if the value of the corrupt payment that the public official accepts is $5,000 or more,

---

[16] United States v. Santopietro, 166 F.3d 88, 92-93 (2d Cir. 1999).

then this is evidence that the value of the particular transaction or series of transactions or business at issue was worth $5,000 or more.

**REQUEST NO. 12**
**NEW YORK STATE BRIBERY**[17]
**(RACKETEERING ACT SEVEN)**

Racketeering Act Seven of the Indictment charges the defendant Dunn with state bribery and aiding and abetting state bribery, in violation of New York Penal Law Sections 200.00 and 20.00.

Specifically, Racketeering Act Seven charges that:

In or about and between January 2007 and December 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant STEVENSON DUNN, together with others, did knowingly and intentionally confer, and offer and agree to confer, one or more benefits, to wit: cash payments, upon a public servant, to wit: John Doe #3, upon an agreement and understanding that such public servant's vote, opinion, judgment, action, decision and exercise of discretion as a public servant will thereby be influenced, in violation of New York Penal Law Sections 200.00 and 20.00.

New York Penal Law Section 200.00 provides that:

A person is guilty of bribery [ ] when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant`s vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.

In order to prove the state crime of bribery, the government must prove the following elements beyond a reasonable doubt:

---

[17] See New York Courts Criminal Jury Instructions, 2d Ed., Article 200.

First, that the defendant Dunn conferred, offered or agreed to confer a "benefit," which means any gain or advantage to the beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent of the beneficiary;

Second, that the recipient or intended recipient of the benefit was a public servant, which is defined as any public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state, or any person exercising the functions of any such public officer or employee.  The Indictment identifies that public servant as John Doe #3, who, as I previously instructed you, is Wendell Walters.

Third, that the defendant Dunn conferred, offered or agreed to confer a benefit upon Walters with the agreement and understanding that Walters's vote, opinion, judgment, action, decision or exercise of discretion as a public servant would thereby be influenced.  For these purposes, "agreement" means a mutual agreement between a public servant and a person who confers, or offers or agrees to confer, any benefit upon such public servant that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.  "Understanding" means at least a unilateral  perception  or belief  by the defendant that a public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced by the conferring of, the offering of, or the agreeing to confer any benefit upon that  public servant.

59

It is important to remember that it would not be a defense to the charge in Racketeering Act Seven that Walters did not have the power or authority to perform the act or omission for which the alleged bribe, gratuity or reward was given.

The State Law of Aiding and Abetting

The defendant Dunn is also charged in Racketeering Act Seven under a theory of aiding and abetting state bribery.  The rrelevant New York State statute on aiding and abetting is Section 20.00 of the New York Penal Law, which provides in pertinent part as follows:

> When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

Under New York State law, as under federal law, a defendant charged with aiding and abetting a crime may be liable for the crime even if he himself does not commit the crime charged.

Before a defendant may be held criminally liable for the conduct of another person under New York State law, you must find each of the following two elements:

> **First**: that the defendant solicited, requested, commanded, importuned, or intentionally aided the other person to engage in the criminal conduct; and

> **Second**: that the defendant did so with the state of mind required for the commission of the offense.

60

# REQUEST NO. 13
# EXTORTION[18]
# (RACKETEERING ACT EIGHT AND COUNT ELEVEN)

Racketeering Act Eight and Count Eleven of the Indictment charges the defendant Dunn

with extortion and attempted extortion, in violation of Section 1951of Title 18 of the United

States Code.

Specifically, Racketeering Act Eight and Count Eleven charge that:

> In or about and between January 2007 and October 2011, both
> dates being approximate and inclusive, within the Eastern District
> of New York and elsewhere, the defendant STEVENSON DUNN,
> together with others, did knowingly and intentionally obstruct,
> delay and affect commerce, and the movement of articles and
> commodities in commerce, by extortion, and attempt to do so, in
> that the defendant and others obtained and attempted to obtain
> property, to wit: cash payments, from George Armstrong, with his
> consent, which consent was, and was to be, induced by wrongful
> use of actual and threatened force, violence and fear.

Section 1951 states, in pertinent part:

> Whoever in any way or degree obstructs, delays, or affects
> commerce or the movement of any article or commodity in
> commerce, by robbery or extortion or attempts or conspires so to
> do, or commits or threatens physical violence to any person or
> property in furtherance of a plan or purpose to do anything in
> violation of this section shall be [guilty of a federal crime].

> The term "extortion" means the obtaining of property from
> another, with his consent, induced by wrongful use of actual or
> threatened force, violence, or fear, or under color of official right.

> The term "commerce" means commerce within the District of
> Columbia, or any Territory or Possession of the United States; all

---

[18] Adapted from the charges in United States v. Gioeli, 08 CR 240 (BMC).

61

> commerce between any point in a State, Territory, Possession, or
> the District of Columbia and any point outside thereof; all
> commerce between points within the same State through any place
> outside such State; and all other commerce over which the United
> States has jurisdiction.

In order to meet its burden of proving that a defendant committed the federal crime of extortion, or attempted to do so, the government must establish three elements beyond a reasonable doubt:

First, that the defendant knowingly obtained or took the personal property of another or from the presence of another, or attempted to do so;

Second, that the defendant took this property against the victim's will by actual or threatened force, violence or fear of injury, whether immediately or in the future, or attempted to do so; and

Third, that interstate commerce, or an item moving in interstate commerce, was delayed, obstructed or affected in any way or degree.

First Element: "Person" and "Property" Defined

First, you must determine whether the defendant Dunn sought to obtain the property of another person for himself, or for another person or persons.

A "person" includes an organization, such as a corporation or a group of people, acting together as a formal or informal labor or entity.  In the Indictment, the person is identified as John Doe #2, who is George Armstrong.

"Property" can be both tangible, such as money, and intangible, such as an ownership interest in a business or other asset.   In the Indictment, the "property" is identified as "cash payments."

Second Element: Use or Threat of Force, Violence or Fear

Second, if you find that the defendant sought to obtain the property of another person or entity, for the benefit of the defendant himself or for the benefit of another person or persons, then you must consider whether the defendant used or threatened to use force, violence or fear, or attempted to do so.

You must determine whether the defendant used or threatened to use force, violence or fear, or attempted to do so or aided and abetted another to obtain property by using any of these unlawful means.  It is not necessary that the government prove that force, violence and fear were all used or threatened.  The government satisfies its burden of proving an unlawful taking if it proves beyond a reasonable doubt any of these means was used or threatened.

If you are convinced beyond a reasonable doubt that the defendant Dunn committed or attempted to commit extortion, even if the defendant did not succeed in instilling fear in the victim, you must find beyond a reasonable doubt that the defendant intended to instill fear, and engaged in conduct that he understood would reasonably be likely to have such an effect on someone in the position of the alleged victim.

In considering whether a defendant used or threatened to use force, violence or fear, you should give those words their common and ordinary meaning, and understand them as you would in your everyday lives.

The use or threat of force, violence or fear is unlawful if it is aimed at causing economic or physical injury, either to the person or entity at whom or which the extortion is directed, or to a third party. A threat may be made verbally, directly or by implication. Whether a statement or physical gesture by a defendant actually was a threat depends upon the surrounding facts. A threat by implication means a threat that is not directly stated but is understood from the surrounding facts and circumstances. In the case of economic injury, the mere voluntary payment of money, unaccompanied by any fear of economic injury, would not constitute extortion.

The conduct or statements of the defendant must be such as would make a reasonable person fearful. It is not necessary that the fear be the consequence of a direct threat. It is sufficient that the surrounding circumstances render the fear reasonable.

The existence of fear and its reasonableness must be determined by the facts existing at the time of the defendant's actions. It is not necessary that the government prove that the fear of physical or economic injury was the consequence of a threat made by a defendant. Nor is it necessary that a defendant actually succeed in instilling fear in the victim. You simply must find he intended to instill fear. It is obviously impossible to ascertain or prove directly a person's subjective feeling. You cannot look into person's mind to see what his or her state of mind is or

64

was.  But looking at the situation and the actions of people involved may help you decide whether fear would reasonably have been the state of mind, and whether property was thus obtained by the defendant through the use of fear.

You may also consider the relationship between the defendant and the alleged victim in deciding whether the element of fear exists.  However, a friendly relationship between the parties does not mean that you cannot find that fear does exist.

Third Element: Interstate Commerce

Third, you must find that the government has proven beyond a reasonable doubt that interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in some way as a result of the defendant's actions.  The defendant need not have intended or anticipated an effect on interstate commerce.  You may find the effect is a natural consequence of his actions.  If you find that a defendant intended to take certain actions, that is, he did the acts charged in the indictment in order to obtain property, and you find that those actions have either caused, or would probably cause, an effect on interstate commerce, however slight, then you must find the requirements of this element have been satisfied.

Thus, for example, if any persons extorted were performing work with supplies or materials from other states, that would be enough to permit a finding of an effect on interstate commerce.  However, I note that when you are considering the charge of attempted extortion, you need not find an actual effect on interstate commerce.  Rather, you must find that there would have been such an effect if the crime that was the object of the attempt had occurred.

65

**REQUEST NO. 14**
**CORRUPT INTENT – DUAL MOTIVE NO DEFENSE**[19]

The government need not prove that the defendants' intent in receiving the unlawful bribe and kickback payments at issue in this case be completely corrupt, fraudulent or deceptive. A defendant may be found to have the requisite corrupt intent or intent to defraud even if he possesses a dual intent – that is, partly a corrupt, fraudulent or deceptive intent and partly an intent to do something that is permissible.  A valid purpose that partially motivates a payment does not insulate the defendant in an unlawful transaction from criminal liability, where the remaining motivation was corrupt, fraudulent or deceptive.

---

[19] See United States v. Coyne, 4 F.3d 100, 113 (2d Cir. 1993) (a valid purpose that partially motivates a transaction that is corrupt in part "does not insulate participants in an unlawful transaction from criminal liability").

**REQUEST NO. 15**
**MOTIVE IS DISTINCT FROM INTENT**

"Intent" and "motive" should never be confused.  Motive is a reason that prompts a person to act or to fail to act. Intent refers only to the state of mind with which the act is done or omitted.

Personal advancement and financial gain are two well-recognized motives for a great deal of human contact.  These motives may direct one person to engage in voluntary acts of good and another to voluntary acts of crime.

Good motive alone is never a defense where the act done or omitted is a crime.  If a person knowingly commits a crime, then that person is responsible, whether or not that person had a good or bad motive. So the motive of the accused is immaterial except insofar as evidence of motive may aid your determination of state of mind or intent.  Put differently, a defendant's motive may be evidence of what his state of mind was at the time of the offense.

68

**REQUEST NO. 16**
**EXHIBITS AND STIPULATIONS**[20]

In addition to the sworn testimony of the witnesses, the evidence in the case includes exhibits that I have received in evidence and the stipulations between the parties.  You may only consider exhibits that I have admitted into evidence.  Exhibits that have been marked for identification but have not been received in evidence may not be considered by you.

You have also heard evidence in this case in the form of what is called a "stipulation."  A stipulation is an agreement between the parties that a certain fact is true. For the purpose of your deliberations, you must regard such agreed-upon matters as true.

---

[20] Adapted from jury charge in <u>United States v. Curanovic</u>, 08 CR 240 (BMC) (E.D.N.Y.).

69

**REQUEST NO. 17**
**UNCHARGED ACTS[21]**
**(IF APPLICABLE)**

You have heard evidence that the defendants engaged in conduct, including crimes, other than the crimes specifically named in the Indictment.  The defendant is not on trial for committing any acts not charged in the Indictment.  Consequently, you may not consider evidence of those other acts as a substitute for proof that the defendant committed the crimes charged.  Nor may you consider evidence of these other acts as proof that the defendant has a criminal propensity, that is, that he likely committed the crimes charged in the Indictment because he was predisposed to criminal conduct.

The evidence of uncharged conduct by the defendant is admitted for certain purposes, and you may consider it only for these purposes.  The purposes for which such evidence is admitted are as follows:

(1)     As evidence of the defendant's position or role within the hierarchy of the charged conspiracy.

(2)     As evidence of the development of relationships of trust between the defendant and others with whom he is charged with carrying out the charged crimes.

(3)     As evidence enabling you to understand the complete story of the charged crimes.

(4)     As evidence of conduct that is inextricably tied with the charged crimes.

---

[21] Adapted from jury charge in United States v. Basciano, 05 CR 060 (NGG) (E.D.N.Y.); Sand, Modern Federal Jury Instructions, Instr. 5-25.

(5)     As evidence corroborating the testimony of other government witnesses.

(6)     As evidence that the defendant utilized a common scheme or plan in committing both the crimes charged in the Indictment and the similar acts introduced by the government.

(7)     As evidence that defendant acted knowingly and intentionally and not because of some mistake, accident or other innocent reasons

Evidence of uncharged conduct by the defendant may not be considered by you for any purpose other than the ones I have just listed.   Evidence of similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that because the defendant committed the other act or acts he must also have committed the acts charged in the Indictment.

71

## REQUEST NO. 18
## COOPERATING WITNESSES CALLED BY THE GOVERNMENT[22]

You have also heard witnesses who testified that they were themselves involved in planning and carrying out certain crimes with the defendants and others. There has been a great deal said about these so-called "cooperating witnesses" in the summations of counsel and about whether or not you should believe them. Experience will tell you that the government sometimes must rely on the testimony of witnesses who admit participating in the alleged crimes at issue. The government sometimes must use such testimony in a criminal prosecution, because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.  The government argues, as it is permitted to do, that it must take the witnesses as it finds them and that people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others. For those very reasons, the law allows the use of co-conspirator testimony. It is the law in federal courts that the testimony of one accomplice or co-conspirator may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, because of the interest an accomplice or other cooperating witness may have in testifying, the testimony should be scrutinized with special care and caution. The fact that a witness is an accomplice can be considered by you as bearing upon his credibility. Like the

---

[22] Adapted from jury charge in United States v. Curanovic, 08 CR 240 (BMC) (E.D.N.Y.) and United States v. Basciano, 05 CR 0060 (NGG) (E.D.N.Y.).

testimony of any other witness, cooperating witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of the witness's recollection, his background and the extent to which his testimony is or is not corroborated by other evidence in the case. You may consider whether a cooperating witness has an interest in the outcome of the case, and if so, whether that interest has affected his testimony.

You should ask yourselves whether these witnesses would benefit more by lying or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth? Did this motivation color his testimony?

You heard testimony about agreements between the Government and each of the cooperating witnesses. I must caution you that it is no concern of yours why the Government made an agreement with particular witnesses, or whether you approve or disapprove of the Government's tactics. You may, however, consider the effect, if any, that the existence or terms of the agreement may have on the witness's credibility.

If you think that the testimony was false, you should reject it. However, if, after a cautious and careful examination of the accomplice witness's testimony, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

73

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion. Even if you find that a witness testified falsely in one part, you still may accept their testimony in other parts, or may disregard all of it. That is a determination entirely for you, the jury.

Similarly, you have also heard testimony from witnesses who were previously convicted of crimes, or who admitted to committing crimes in the past. You may consider the fact that a witness is a convicted felon or has committed crimes in assessing how much of his testimony, if any, to believe, and what weight, if any, to give it. It is of course entirely up to your good judgment to determine what weight, if any, to give to a witness's prior criminal record in assessing credibility.

74

## REQUEST NO. 19
## VENUE[23]

In addition to the elements of each of the counts in the Indictment, you must consider the issue of venue, that is, whether any act in furtherance of the unlawful activity occurred within the Eastern District of New York, which includes Kings County, Queens County, Richmond County (Staten Island), and in Long Island, Nassau County and Suffolk Counties.  I instruct you that Kings County includes the borough of Brooklyn, New York.

In this regard, the government need not prove that the crime charged was committed in the Eastern District of New York or that the defendant was present here. It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred within the Eastern District of New York.

With respect to the charged conspiracy counts, it is enough if the government proves that any act in furtherance of the conspiracy was committed in this District. It does not matter whether that act was committed by the defendant or by a co-conspirator.

As to this venue requirement only, the government need not meet the burden of proof beyond a reasonable doubt. On this venue requirement only, the government meets its burden of proof if it establishes by a mere preponderance of the evidence that an act in furtherance of the

---

[23] Adapted from the Charge in United States v. Rogers, 90 CR 377 (CSH) (S.D.N.Y. 1991) (wire fraud), and from Sand et al., Modern Federal Jury Instructions, Instruction 3-11. See United States v. Rosa, 17 F.3d 1531, 1541-42 (2d Cir.), cert. denied, 513 U.S. 879 (1994); 18 U.S.C. § 3237 (general venue provision for offenses beginning in one district and ending in another, including mail fraud). See also United States v. Gonzalez, 922 F.2d 1044, 1054-55 (2d Cir.) (affirming that venue is governed by a preponderance standard), cert. denied, 502 U.S. 1014 (1991).

crime occurred within this District. A preponderance of the evidence means that something is

more likely than not.

**REQUEST NO. 20**
**IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS**[24]
**(IF APPLICABLE)**

You have heard evidence that at some earlier time a witness has said or done something which counsel argues is inconsistent with that witness's trial testimony, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

Evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited. People sometimes forget things and even a truthful witness may be nervous and contradict himself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance. A willful falsehood always is a matter of importance and should be considered seriously.

To be clear, however, evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that

---

[24] Adapted from Charge in United States v. Lugo, EDNY 01 CR 922 (NG); United States v. American Tel. & Tel. Co., 83 F.R.D. 323 (D.D.C. 1979); Saladino v. Winkler, 609 F.2d 1211 (7th Cir. 1979); Quock Ting v. United States, 140 U.S. 417 (1891).

the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony.  You should, as always, use common sense and your own good judgment.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; and whether the witness had an explanation for the inconsistency and whether that explanation appealed to your common sense

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**REQUEST NO. 21**
**OPINION OF DEFENDANT'S CHARACTER AND REPUTATION**[25]
**(IF APPLICABLE)**

The defendant _____ has called witnesses who have given their opinion of his good character or reputation. This testimony is not to be taken by you as the witness' opinion as to whether the defendant is guilty or not guilty. That question is for you alone to determine. You should, however, consider this character evidence together with all the other facts and all the other evidence in the case in determining whether the defendant is guilty or not guilty of the charges.

Accordingly, if after considering all the evidence including testimony about the defendant's good character or reputation, you find a reasonable doubt has been created, you must acquit him of all the charges.

On the other hand, if after considering all the evidence including that of defendant's character or reputation, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should not acquit the defendant merely because you believe him to be a person of good character.

---

[25] Sand, Modern Federal Jury Instructions, Instructions 5-14 and 5-15.

79

**REQUEST NO. 22**
**CROSS-EXAMINATION OF WITNESS ON DEFENDANT'S CHARACTER**
**(IF APPLICABLE)**

The government asked certain questions on cross-examination of the defendant's character witness(es) about specific acts supposedly committed by the defendant. The government was allowed to ask these questions only to help you decide whether the witness was accurate in forming his opinion or in describing the reputation of the defendant's character. You may not assume that the acts described in these questions are true, nor may you consider them as evidence that the defendant committed the crime for which he is charged. You may therefore consider the questions only in deciding what weight, if any, should be given to the testimony of the character witness and for no other purpose. You should not consider such questions as any proof of the conduct stated in the question.

**REQUEST NO. 23**
**AUDIO RECORDINGS AND SURVEILLANCE**[26]

You have heard and seen evidence in the form of tape recordings of conversations that were obtained without the knowledge of some of the parties to those conversations, as well as photographic surveillance evidence that was obtained without the knowledge of the person being observed by law enforcement.  These audio recordings and photographs were obtained lawfully. The use of these procedures to gather evidence is perfectly lawful and the government has the right to use such evidence in this case.

During the course of the trial you were given transcripts to assist you in listening to the audio recordings.  You may use the transcripts in your deliberations as an aid in recalling the tape recorded conversations. I instruct you, however, that the primary evidence of the conversations is the tape recording itself. The transcripts themselves are not evidence.  If the transcripts appeared to you to vary from the tapes in any respect, what you heard is controlling.

---

[26] Adapted from Charge in United States v. Basciano, et al., 03 CR 929 (NGG) (E.D.N.Y.); charge in United States v. Pignatiello, 96 Cr. 1032, Tr. 1626-27 (S.D.N.Y. 1999)(LS); see also United States v. Llinas, 603 F.2d 506, 508-09 (5th Cir. 1979); United States v. Vasquez, 605 F.2d 1269, 1272 & n.4 (2d Cir. 1979).

## REQUEST NO. 24
## NO SPECULATION ABOUT UNCHARGED PERSONS[27]

You may not draw any inference, favorable or unfavorable, towards the government or the defendant on trial from the fact that certain persons were not named as defendants in the Indictment.  You should not draw any inference from the fact that any other person is not present at this trial.  Your concern is solely the defendant on trial before you.

That other individuals are not on trial before you is not a matter of concern to you.  You should not speculate as to the reasons these individuals are not on trial before you.  The fact that these individuals are not on trial before you should not control or influence your verdict with reference to the defendant who is on trial.

---

[27] Adapted from Sand, et al., Modern Federal Jury Instructions, Instruction 3-4.

82

**REQUEST NO. 25**
**EXPERT TESTIMONY**[28]
**(IF APPLICABLE)**

You have heard the testimony of what we call expert witnesses in this case.  Ordinarily, witnesses are restricted to testifying concerning matters of fact.  There are occasions, however, when there is some technical or other specialized area of knowledge that will assist the jury in deciding a disputed fact.  On those occasions, a witness who is specially qualified by training, knowledge, experience, or education may be called to testify about some evidence or facts in issue in the form of an opinion.

Consider these opinions and give them as much weight as you think they deserve.  If you think that their opinions are not based upon adequate training, knowledge, experience, or education, that the reasons they gave in support of their opinions are not sound, or that, for any other reason, their opinions should not be accepted, you may disregard them.  If, on the other hand, you think that their opinions are based upon adequate training, knowledge, experience, or education, and that the reasons they gave in support of their opinions are sound, you may accept them.

In short, the opinion of an expert witness is in all other respects the same as the testimony of any other witness.  Give it such weight as you think it deserves.

---

[28] Adapted from the Charge in United States v. Esieke, EDNY, 90 CR 248 (ILG).

83

**REQUEST NO. 26**
**UNCALLED WITNESS EQUALLY AVAILABLE[29]**
**(IF APPLICABLE)**

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify, and one or more of the attorneys has referred to their absence from the trial.  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

You also should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

---

[29] Adapted from Sand, et al., Modern Federal Jury Instructions, Instruction 6-7; see also United States v. Bahna, 68 F.3d 19, 22 (2d Cir. 1995).

**REQUEST NO. 27**
**ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED**[30]
**(IF APPLICABLE)**

The law does not require the government to call as witnesses all persons involved in the case who may have been present at any time or place, or who may appear to have some knowledge of the matter in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and objects mentioned during the course of the trial.

---

[30] Adapted from Charge in United States v. Basciano, et al., 03 CR 929 (NGG) (E.D.N.Y.); E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, § 72.11 (3d ed. 1977).

**REQUEST NO. 28**
**PARTICULAR INVESTIGATIVE TECHNIQUES** [31]
**(IF APPLICABLE)**

You have heard reference, in the testimony of witnesses and argument of defense counsel, that the government did not utilize specific investigative techniques.  There is no legal requirement that the government prove its case through any particular means.  While you are to carefully consider the evidence adduced by the government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques.  The government is not on trial.  Law enforcement techniques are not your concern.

Your concern is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

---

[31] Adapted from the Charge in United States v. Shulman, 01 CR 1382 (FB) (E.D.N.Y.); Charge in United States v. Mucciante, 91 CR 403 (PNL) (S.D.N.Y); Charge in United States v. Medina, 91 CR 894 (JFK) (S.D.N.Y.); see also Charge in United States v. Basciano, et al., 03 CR 929 (NGG) (E.D.N.Y.).

**REQUEST NO. 29**
**INTERVIEWED WITNESSES**[32]

During the course of trial you heard testimony that the attorneys for the government interviewed witnesses when preparing for and during the trial.  You must not draw any unfavorable inference from that fact.  On the contrary, attorneys are obliged to prepare their case as thoroughly as possible and in the discharge of that responsibility properly interview witnesses in preparation for the trial and from time to time as may be required during the course of the trial. I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without such consultations.

---

[32] Adapted from the Charge in United States v. Lee, EDNY, 93 CR 1072 (ILG); Charge in United States v. Abdul Latif Abdul Salam, 98 Cr. 208 (SDNY) (MBM); Charge in United States v. Brooks, 99 Cr. 1027 (SDNY) (JGK).

87

**REQUEST NO. 30**
**CHARTS AND SUMMARIES: ADMITED AS EVIDENCE**[33]

Some of the exhibits that were admitted into evidence were in the form of charts and summaries.  I decided to admit these charts and summaries in place of, or in addition to, the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

---

[33] Sand, Modern Federal Jury Instructions, Instruction 5-12.

88

**REQUEST NO. 31**
**CHARTS AND SUMMARIES: NOT ADMITTED AS EVIDENCE**[34]
**(IF APPLICABLE)**

During the course of trial there were charts and summaries shown to you in order to make the other evidence more meaningful and to aid you in considering that evidence. They are not direct, independent evidence; they are summaries of the evidence. They are admitted as aids to you. In understanding the evidence which you have heard, it is clearly easier and more convenient to utilize summary charts than to place all of the relevant documents in front of you. It is up to you to decide whether those charts fairly and correctly present the information in the testimony and the documents. The charts are not to be considered by you as direct proof of anything. They are merely graphic demonstrations of what the underlying testimony and documents are.

It is for you to decide whether the charts and summaries correctly present information contained in the testimony and in the exhibits on which they are based. To the extent that the charts conform with what you determine the underlying evidence to be, you may consider them if you find that they are of assistance to you in analyzing and understanding the evidence.

---

[34] Adapted from the charge of the Honorable Kevin T. Duffy in United States v. Castellano, 84 Cr. 63, aff'd in part and rev'd in part sub nom. United States v. Gaggi, 811 F.2d 47 (2d Cir.), cert. denied, 482 U.S. 929 (1987), Tr. at 7019-20, and from Sand et al., Modern Federal Jury Instructions, Instruction 5-13.

**REQUEST NO. 32**
**BASING VERDICT ON SYMPATHY**[35]

Under your oath as jurors you are not to be swayed by sympathy for one side or the other. You are to be guided solely by the evidence in this case, and the crucial question that you must ask yourselves as you sift through the evidence is: Has the government proven the guilt of the defendant beyond a reasonable doubt?

It is for you alone to decide whether the government has proven that the defendant is guilty of the crimes charged solely on the basis of the evidence and subject to the law as I charge you.  It must be clear to you that once you let fear, prejudice, bias or sympathy interfere with your thinking there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt, you must find a verdict of acquittal.  But on the other hand, if you should find that the government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to render a verdict of guilty.

---

[35] Adapted from Sand, et al., Modern Federal Jury Instructions, Instruction 2-12.

90

**CONCLUSION**

The United States respectfully requests that the Court include the foregoing charges in its

instructions to the jury.

Dated: Brooklyn, New York
       February 10, 2014

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

Cristina M. Posa
Anthony M. Capozzolo
Assistant United States Attorneys
       (Of Counsel)