

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

CMP/AMC                             *271 Cadman Plaza East*
F. #2011R00414                      *Brooklyn, New York 11201*


February 18, 2014


By ECF

The Honorable Nina Gershon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Dunn, Hymowitz and Freeman
>        Criminal Docket No. 11-683 (S-2)(NG)

Dear Judge Gershon:

The government respectfully submits this letter in opposition to the defendants Lee Hymowitz's and Michael Freeman's memorandum of law, dated February 7, 2014, in support of their omnibus motion (the "Motion" or "Mot.") (1) to dismiss Count Three of the superseding indictment (the "S-2 Indictment"); or (2) in the alternative, to require the government to produce a bill of particulars; and (3) to sever the trial of Hymowitz and Freeman from the trial of co-defendant Stevenson Dunn.  For the reasons set forth below, the defendants' arguments are without merit and should be rejected.

A.    Count Three of the S-2 Indictment Relates Back to the Original Pleading and Therefore Should Not Be Dismissed

The defendants err in their claim that Count Three of the S-2 Indictment is barred by the five-year statute of limitations for mail fraud. When a superseding indictment supplants a pending timely indictment, as in this case, it relates back to the original pleading and "inherits its timeliness as long as the later indictment does not materially broaden or substantially amend the original charges." United States v. Salmonese, 352 F.3d 608, 622 (2d Cir. 2003). Most importantly, "notice is the touchstone in deciding whether a superseding indictment substantially changes the original charges," United States v. Gengo, 808 F.2d 1, 3 (2d Cir. 1986). In making that determination, a court should "consider whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant

to a potentially greater sentence." <u>Salmonese</u>, 352 F.3d at 622.  Here, the defendants Hymowitz and Freeman claim that the S-2 Indictment "materially broadens" the original pleading in two respects: (1) by adding a substantive mail fraud charge, and (2) by identifying additional alleged victims. (Mot. at 3.) Neither aspect of the S-2 Indictment, however, implicates the <u>Salmonese</u> standard for "materially broader" charges.

        <u>First</u>, with regard to Count Three of the S-2 Indictment ("Count Three"), the mail fraud charge is part and parcel of precisely the same fraudulent scheme and conspiracy identified in the original and S-1 indictments, and therefore relates back to those earlier charging instruments. Evidence of the mailing identified in Count Three was always admissible to prove the original "scheme or artifice to defraud" – namely, the failure to disclose kickback payments from the general contractor identified as John Doe #1 in requisitions for payment submitted by the defendants in connection with real estate development projects sponsored by the New York City Department of Housing Preservation and Development ("HPD"). Indeed, the criminal act that forms the basis of Count Three (a single mailing that is specifically identified in the indictment by date, sender and recipient) was always admissible as an overt act in support of the original wire fraud conspiracy charge and thus does not materially broaden the original charges. <u>See</u> <u>United States v. Sorcher</u>, 498 F.Supp.2d 603, 609 (EDNY 2007) (NG) (addition of overt acts in superseding indictment did not "impermissibly broaden the scope of the conspiracy" alleged in the original indictment); <u>United States v. Rutkoske</u>, 506 F.3d 170, 176 (2d Cir. 2007) (same) and <u>Salmonese</u>, 352 F.3d at 623 (same).

        <u>Second</u>, the purportedly expanded list of victims identified in the S-2 Indictment does not materially broaden the charges and thus does not give rise to a statute of limitations defense. In fact, the S-2 Indictment does not "enlarge" (Mot. at 3) the list of victims at all. The original and S-1 indictments always identified the private lenders who partnered with HPD as victims of the fraudulent scheme.  Specifically, the original and current substantive wire fraud counts identified the Community Preservation Corp. ("CPC") and the Enterprise Community Loan Fund ("Enterprise") as the source of the funds in the charged interstate wire transactions. In addition, the extensive discovery in this case has included evidence showing that CPC, Enterprise and the U.S. Department of Housing and Urban Development ("HUD") provided funding in connection with the HPD projects at issue in this case. <u>See, e.g.</u>, Discovery Exhibit 36 (bank records disclosed on November 9, 2011) and Discovery Exhibits 46-50 and 57 (documents regarding SML Bed Stuy, including requisition and payment documents involving Enterprise and HUD, disclosed on March 27, 2012 and May 1, 2012, respectively). The fact that CPC and Enterprise (as "private lenders") and HUD are now described as "partners" of HPD merely clarifies – rather than broadens – the identity of the victims.

        For these reasons, the government respectfully submits that the defendants have long had sufficient notice of the evidence underlying Count Three of the S-2 Indictment and of the identity of the victims of their fraudulent scheme. As a result, the S-2 Indictment does not "materially broaden" the original pleadings and the applicable statute of limitations in this case is satisfied by the timely filing of the original indictment.

B.  Bill of Particulars

        The defendants have requested that the government detail (1) the date and nature of all relevant mailings under Count Three, (2) the manner in which each of the alleged victims were defrauded by the defendants' conduct, and (3) the manner in which each of the alleged victims qualify as a financial institution within the meaning of 18 U.S.C. § 20. (Mot. at 5.) This request for a bill of particulars is essentially the same as the request previously rejected by the Court and should likewise be rejected.  This Court has already held that the allegations in the previous indictment, which describes the identical scheme to defraud, were "sufficient to advise the Defendants of the nature of the charges against them and the specific acts of which they are accused."  United States v. Walters, et al., 11 CR 683 (July 2, 2013) (Docket Entry No. 147).  In denying the defendants Hymowitz and Freeman's request for a bill of particulars, this Court held that the "allegations contained in the Indictment, as well as the information already provided to Defendants in the course of discovery are therefore sufficient to enable Defendants to prepare for trial and prevent surprise."  Id. at 12.

        The government respectfully submits that the Court's prior reasoning is applicable here. Nonetheless, in the interest of avoiding any further unnecessary litigation, the government hereby provides the following additional details:

1.  Relevant mailing – Count Three specifically identifies the "relevant mailing" as "a payment voucher and related documents mailed from the address "Michael Freeman, 404 Park Avenue South, New York, New York 10016" to HUD at 100 Penn Square East, Philadelphia, Pennsylvania 19107." This mailing was recently identified as Government Exhibit ("GX") 109A in the trial exhibits disclosed on February 10, 2013.

2.  Manner in which victims were defrauded – The government refers the defendants to paragraphs 10, 30, 32, 35 and 38 of the S-2 Indictment, which describe the fraudulent scheme in detail, as well as GX 100-119 (applications for payment in connection with the SML Bed Stuy project, including documents regarding HPD, Enterprise and HUD), GX 301-312 (applications for payment in connection with the Hancock SML project, including documents regarding HPD and CPC) and GX 500-561 (bank records reflecting payments involving HPD, Enterprise, CPC and HUD).

3.  "Financial institution" – As discussed above, the five-year statute of limitations has been satisfied by the timely filing of the original pleading and thus the reference to the ten-year statute of limitations under 18 U.S.C. § 3293 is moot.

C.  Severance is Unnecessary and Inappropriate

Hymowitz and Freeman characterize the evidence admissible only against Dunn as "so prejudicial that no jury can be expected to follow a limiting instruction that they consider it against Dunn alone." (Mot. at 6.) This argument mischaracterizes the nature of the evidence against Dunn and fails to account for "the intelligence and conscientiousness of the jury, the effective efforts of the judge . . .  [and] the skill of defense counsel." United States v. DeSapio, 435 F.2d 272, 280 (2d Cir. 1970). Although certain evidence against Dunn may not be independently admissible against Hymowitz and Freeman, separate trials are neither necessary nor desirable. As the Second Circuit has stated, "[t]he fact that evidence may be admissible against one defendant but not against others does not require separate trials." United States v. Rucker, 586 F.2d 899, 902 (2d Cir. 1978); accord United States v. Lyles, 593 F.2d 182, 190 (2d Cir. 1979).

The defendants' reliance on United States v. DiNome, 954 F.2d 839 (2d Cir. 1992) is misplaced. In DiNome, the Second Circuit held that two of the defendants in the case should have been granted separate trials only after the trial court dismissed the RICO charges against them that had justified the joinder in the first place. Here, although Hymowitz and Freeman are no longer charged with Dunn in the two substantive wire fraud counts related to the John Doe #2 kickback payments, all three defendants are still charged together in Count Two (mail and wire fraud conspiracy), Counts Three through Five (substantive mail and wire fraud regarding the John Doe #1 kickback payments) and Counts Eight and Nine (money laundering conspiracy and substantive money laundering). In addition, although Hymowitz and Freeman are not charged in Count One (Racketeering Conspiracy) per se, Racketeering Acts One, Two, Three and Six mirror Counts Three through Five, Eight and Nine and are based on identical evidence. This significant overlap in the charges against all three defendants continues to justify one joint trial pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure.

Additionally, the Second Circuit has repeatedly affirmed trial courts' decisions denying severance despite a co-defendant's concern about "spillover" evidence. In United States v. Cervone, 907 F.2d 332, 341-42 (2d Cir. 1990), an 18-defendant case, the appellant was charged – alone – in only two counts and, like Hymowitz and Freeman, was not charged in the RICO conspiracy or in any of the underlying racketeering acts. Still, the court held that joinder was appropriate given the relationship between the charges implicating him and the grander scheme, and found that the district court's limiting instructions designed to safeguard against the potential for "spillover" prejudice were sufficient. See also United States v. Villegas, 899 F.2d 1324, 1347-48 (2d Cir. 1990) (rejecting claims of prejudicial spillover); United States v. Carson, 702 F.2d 351, 366-67 (2d Cir. 1983) (rejecting defendant's assertion of spillover effect, noting that "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials").

D.  <u>Conclusion</u>

       For these reasons, the government respectfully requests that the Court reject the Motion in its entirety.

                                      Respectfully submitted,

                                      LORETTA E. LYNCH
                                      United States Attorney

                    By:       <u>/s/ Cristina M. Posa</u>
                                      Cristina M. Posa
                                      Anthony M. Capozzolo
                                      Assistant U.S. Attorneys
                                      (718) 254-6668/6454