

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CMP/AMC                                             *271 Cadman Plaza East*
F. #2011R00414                              *Brooklyn, New York 11201*

February 18, 2014

By ECF

The Honorable Nina Gershon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                 Re:      United States v. Dunn, Hymowitz and Freeman
                             Criminal Docket No. 11-683 (S-1)(NG)

Dear Judge Gershon:

         The government respectfully submits this motion *in limine* to preclude the expert testimony proposed by the defendants Lee Hymowitz and Michael Freeman in their expert notice, filed on February 10, 2014 pursuant to Fed. R. Crim. P. 16(b)(1)(C) (the "Notice"). For the reasons set forth below, the proposed testimony is inadmissible and should be precluded from the trial. In the alternative, the government respectfully requests that the Court order immediate reciprocal discovery from the defendants.

A.      The Proposed Expert Testimony

         As the Court is aware, the government intends to introduce limited evidence regarding the Disciplinary Rules of the New York Code of Professional Responsibility and the New York Rules of Professional Conduct (together, the "Rules") to provide the necessary context for demonstrating that the defendants' purported legal representation of the general contractor identified as "John Doe #1" in the superseding indictment (S-2) was a fiction intended to conceal a $134,500 kickback payment from John Doe #1. The defendants concealed the true nature of the payment by using a sham "non-refundable retainer" agreement (the "Agreement"), and this purported legal representation was never documented by any billing records.

         In this regard, the government and defense counsel have reached a preliminary agreement to stipulate to the following language:

> Government Exhibit 605 are New York State Attorney Registration forms signed by (a) Michael Freeman on the following dates: May 25, 2004, May 30, 2006, April 24, 2008 and May 26, 2010, and (b) Lee Hymowitz on the following dates: March 3, 2004, April 12, 2006, February 28, 2008 and March 3, 2010.
>
> The New York Code of Professional Responsibility for lawyers (the "Code"), which was in effect from January 2005 to October 2011, states that (1) lawyers "shall not enter into an arrangement for, charge or collect a non-refundable retainer or a non-refundable retainer fee," and (2) a lawyer "shall maintain for seven years after the events that they record copies of all bills rendered to clients."

In the Notice, the defendants state that they may call Michael S. Ross, Esq. as an expert on "attorney ethics and criminal law matters" to testify that (1) the "non-refundable" provision of the Agreement did not violate the Rules because the Agreement was, in fact, a "general retainer" agreement that is permitted under the Rules to be non-refundable; (2) the problematic "non-refundable" language in the Agreement was essentially the product of sloppy drafting, which is a common mistake made by many New York attorneys; and (3) the failure to maintain billing records is common among New York attorneys despite the biannual registration process that requires lawyers to affirm their knowledge of and compliance with the requirement to maintain billing records for seven years under the Rules (these affirmations are included in the New York State Attorney Registration Forms identified as Government Exhibit 605 in the stipulation quoted above).

      With regard to the first topic, it is impossible to address the "general retainer" aspect of the proposed testimony without any factual basis for the claim that the Agreement was, in fact, a "general retainer." The defendants have steadfastly refused to disclose any reciprocal discovery, and the government is not aware of any evidence supporting this claim. Thus, it appears that the defendants may be trying to circumvent having to testify or otherwise present affirmative evidence about the nature of their alleged representation by calling Mr. Ross to provide that factual evidence to the jury. The defendants, of course, are under no obligation to testify, but they certainly may not attempt to present factual evidence to the jury in the guise of expert testimony.

      Without the necessary factual basis, there is simply no way to evaluate whether the proposed expert testimony regarding "general retainer" agreements is even relevant under Fed. R. Evid. 401. In addition to the lack of any factual basis for this claim, the government has found no reference to "non-refundable general retainer" agreements in the Rules.

      Consequently, the government respectfully requests that this aspect of the proposed expert testimony be precluded in the absence of further factual disclosures by the defendants. In the event that the defendants do provide reciprocal discovery regarding the factual

basis for this testimony, the government requests the opportunity to address the admissibility of such testimony at that time.

B.    Legal Standard for Admission of Expert Testimony

"[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of [Federal Rule of Evidence] 702 are satisfied."  United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007). Rule 702 provides that expert testimony may be admitted if "(a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony if based on sufficient facts or data; (c) the testimony is the subject of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Id.

After determining that a witness is "qualified as an expert" to testify as to a particular matter and that the opinion is based upon reliable data and methodology, district courts must still engage in a "third inquiry: whether the expert's testimony (as to a particular matter) will 'assist the trier of fact.'" Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005).  In Nimely, the Second Circuit noted, "We have consistently held, in that respect, that expert testimony that usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it, by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." Id. (internal citations omitted).

Finally, the Second Circuit has held that the "decision to exclude expert testimony rests soundly within the discretion of the trial court . . ." United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999) (affirming exclusion of eyewitness identification expert and holding that "proposed testimony intrudes too much on the traditional province of the jury to assess witness credibility").  Indeed, the court is the "ultimate 'gatekeeper'" with regard to the admissibility of expert testimony and therefore must ensure that "'an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" Williams, 506 F.3d at 160 (quoting Fed. R. Evid. 104(a); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)).

C.    Argument

Assuming, *arguendo*, that the proposed witness, Michael Ross, Esq., has the necessary scientific, technical or other specialized knowledge to qualify as an expert on legal ethics, his proposed testimony is still inadmissible for the following reasons: (1) such testimony would usurp the fact-finding role of the jury, (2) such testimony would not be based on sufficient facts or data and would not be the subject of reliable principles and methods, and (3) the extremely minor probative value of such evidence is substantially outweighed by the danger of confusing the issues, misleading the jury and wasting time under Fed. R. Evid. 403.

1. <u>The Proposed Testimony Would Usurp the Role of the Jury</u>

First and foremost, Mr. Ross's proposed testimony that there is a "considerable level of non-compliance among practicing lawyers with respect to retainer rules, escrow rules and financial document rules" (Notice at 2) should be excluded for the simple reason that its purpose is not to help the trier of fact, but rather to usurp the role of the jury by "undertaking to tell the jury which conclusion it should reach." <u>Nimely</u>, 414 F.3d at 397.

The jury has the exclusive role of determining how much weight, if any, should be given to any item of evidence introduced in the course of the trial. The defendants will have ample opportunity to argue to the jury that certain evidence – such as the stipulation regarding the Rules – should be given little or no weight. Indeed, the government fully expects defense counsel to argue that the defendants' failure to follow the Rules may be evidence of sloppy drafting and record keeping, but not of criminal intent. This argument is certainly straightforward enough for lay jurors to understand. Mr. Ross's proposed testimony, however, will give the imprimatur of expert opinion to this argument and "tell the jury which conclusion it should reach" (<u>id.</u>) by essentially stating that because many lawyers fail to follow the Rules, the defendants' actions are meaningless. This testimony would be akin to the government calling an "expert" on fraud cases involving attorneys to testify that such cases usually involve evidence of missing or nonexistent billing records. Such testimony would obviously be inadmissible because it would supplant the very heart of the jury's role – to evaluate the weight and credibility of the evidence presented at trial. For the same reason, the testimony of Mr. Ross should be precluded.

2. <u>The Proposed Testimony is Not Reliable</u>

Even if the subject matter of his testimony were admissible, it is not apparent from Mr. Ross's extensive resume that such testimony would be based on sufficient facts or data, or that it would be the subject of reliable principles and methods. Mr. Ross clearly has extensive experience in writing about and instructing attorneys on their ethical obligations. However, there is no indication from Mr. Ross's resume that he has undertaken any thorough studies, such as surveys or polls, of attorneys' compliance or noncompliance with the two Rules at issue in this case. As a result, his proposed testimony regarding the number of attorneys who fail to comply with the Rules is inadmissible. In the alternative, the government requests a <u>Daubert</u> hearing to evaluate and assess the sufficiency and reliability of his data, principles and methods.

3. <u>The Proposed Testimony Fails Rule 403 Analysis</u>

Finally, the proposed testimony of Mr. Ross would waste time and confuse the jury. The Court has provided the following language for a limiting instruction regarding the Rules, which makes clear that the evidence regarding the Rules is admissible for a discrete purpose:

> It's entirely up to you whether you accept the proffered evidence, what inference, if any, to draw from it, and what weight you choose to give it. I just want you to understand that the issue here is not whether Hymowitz and Freeman violated any requirements

>for lawyers, and further that you can't use any inference about whether you think they did to conclude that if they did that, they just have violated the laws that are charged against them in the indictment.

(Transcript dated December 20, 2013 at p. 6.) In contrast to the straightforward and uncomplicated stipulation and limiting instruction, however, the proposed expert testimony of Mr. Ross would risk creating a mini-trial about whether lawyers, as a general rule, comply with or violate the Rules. Simply laying a foundation for such testimony would be time-consuming, and the nature of the testimony – which essentially amounts to a "two wrongs make a right" argument – would be confusing to a jury that is charged with deciding the guilt or innocence of three individual defendants, not lawyers across New York State. Moreover, in the event the Mr. Ross testifies simply about a hypothetical "non-refundable general retainer," with no factual basis about its relevance, this testimony would be extremely confusing because the jury would be learning about a type of agreement (which may or may not even be recognized under New York law) that has nothing to do with this case. Thus, Fed. R. Evid. 403 mandates that the proposed testimony be precluded.

D.  Conclusion

For these reasons, the government respectfully submits that the defendants fail to meet their burden to show that the proposed testimony of Michael Ross, Esq. is admissible pursuant to Fed. R. Evid. 702, and thus such testimony should be precluded.

If, however, the Court is inclined to admit Mr. Ross's testimony as noticed by the defendants, the government respectfully requests that the Court order the defendants to immediately produce reciprocal discovery. Specifically, the government requests (1) any evidence that Hymowitz and Freeman entered into a "non-refundable general retainer" agreement with John Doe #1 to demonstrate the relevance of such testimony, and (2) copies of every retainer agreement and all billing records maintained by the defendants in the period January 2005 to October 2011 to determine whether the defendants followed the Rules with respect to their other clients. If they did, such evidence would be necessary to rebut the expert's contention that failure to follow the Rules is commonplace and thus meaningless.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:   /s/ Cristina M. Posa
Cristina M. Posa
Anthony M. Capozzolo
Assistant U.S. Attorneys
(718) 254-6668/6454