

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| CMP/AMC | *271 Cadman Plaza East* |
| F. #2011R00414 | *Brooklyn, New York 11201* |

March 5, 2014

By ECF

The Honorable Nina Gershon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Dunn, Hymowitz and Freeman
                   Criminal Docket No. 11-683 (S-2)(NG)

Dear Judge Gershon:

        The government respectfully submits this motion *in limine* to preclude or limit certain cross examination of the cooperating witness identified as John Doe #1 in the superseding indictment. The government seeks an order precluding, or in the alternative, limiting inquiry of John Doe #1 on any topics related to conspiracies to obstruct justice and retaliate against witnesses for which Jozef Wolosz, a previous codefendant to John Doe #1 and others, were charged. For the reasons set forth below, such cross examination should be precluded from the trial.

        A.    The Retaliation and Obstruction Conspiracies

        As the Court is aware, the government previously charged Jozef Wolosz with two counts charging conspiracy to obstruct justice and conspiracy to retaliate, in violation of 18 U.S.C. §§ 1512(k) and 1513(f), for conduct related to a federal civil lawsuit. These conspiracies involved threats and acts of violence (including throwing acid at a plaintiff's girlfriend directed at individuals involved in a lawsuit against Wolosz, John Doe #1 and others. See Indictment, 08

CR 707 (S-1) (NG) (docket entry number 89, counts seventeen and eighteen). Wolosz was convicted of his participation in these conspiracies after his guilty plea before this Court.[1]

In 2005, various carpenters, masons and laborers who worked for Wolosz's subcontracting company, Keystone, filed a civil class action in this District seeking full payment of legally-required prevailing wages, which they had been compelled to kick back to Wolosz. In 2006, Wolosz and co-defendant Robert Dziedziach paid co-defendant Dariusz Lapinski $15,000 to intimidate and assault the plaintiffs and their attorney. After receiving payment, Lapinski threw acid on a plaintiff's girlfriend. Later, Wolosz, Dziedziach and codefendants Maciej Ropelewski and Rafal Kredens unwittingly engaged a government cooperating witness ("CW") to assault the plaintiffs, and in September 2008, Wolosz paid the CW $5,000 and instructed him to "collect" another $15,000 from Lapinski.

After Wolosz was arrested, he met with the government on February 16, 2010 with regard to the obstruction conspiracy and told agents that he had hired Lapinski "to arrange a confrontation that would prevent the case from going to court," but that he "did not want anyone to be hurt." See 3500-NR-84 (report of Wolosz interview, February 16, 2010 (attached as Exhibit A)). On February 25, 2010, Wolosz again met with investigators. In this second meeting, Wolosz stated that he was aware that Lapinski had thrown acid at a plaintiff's girlfriend, but that it was "only his idea to have the … lawsuit workers hurt and intimidated enough to drop the … lawsuit." See 3500-JDP-77 (report of Wolosz interview, February 25, 2010 (attached as Exhibit B)). During this interview Wolosz said that he told John Doe #1 about the acid attack after it happened. Although Wolosz now claimed that John Doe #1 was aware of Wolosz's attempt to have Lapinski "handle the Keystone lawsuit outside of the court" he also said that John Doe #1's employee had told Wolosz not to worry about the lawsuit because John Doe #1 and the employee had sufficient funds to settle the lawsuit. Id. at 2. As for the CW, Wolosz stated that John Doe #1 and his employee were not aware that Dziedziach had attempted to hire the CW, who was posing a member of Russian organized crime. At the end of the statement Wolosz attempted to recant some of what he had said, stating that "it" was not his idea without specifying what the "it" was. Id. at 3.

During the government's investigation of the obstruction and retaliation conspiracies, the CW recorded conversations with Dziedziach in which the CW posed as someone connected to Russian organized crime. On July 21, 2008, in a recorded conversation that counsel for Michael Freeman brought to the Court's attention on March 7, 2014, the CW asked Dziedziach to pay the person who was supposedly going to carry out the assault on the plaintiffs:

CW: He said that he wants money. Do you understand?

RD: And then he will … right?

---

[1] Wolosz pleaded guilty to one count of wire fraud conspiracy and on March 18, 2011, he was sentenced to ten years in prison to be followed by three years' supervised release.

2

RD: Good. We'll see how everything spins out . . . I think that everything will be all right . . . because he said that . . . that this GC . . . that [John Doe #1's first name] . . . do you understand . . . that main boss . . . that he will pay.

CW: The company is GC?

RD: Yeah, yeah . . . because my boss was kind of subcontractor . . .

CW: aha

RD: He is a really nice guy, but they destroyed him. He simply doesn't have money now. If he did then he will give it to you. He is going to sell his house . . . he is saying fuck . . . he doesn't have money to pay his payroll . . . because there is no work, there is nothing.

CW: Aha.

RD: And the others have millions . . . do you understand? . . . and they will pay. They just want to have everything finish in court. Because you know . . . the chain will start that there is this  . . . and that  . . . do you understand?

CW: I understand what you are saying. That's why I'm telling you that I need to have . . . do you understand?

Transcript dated July 21, 2008 (attached as Exhibit C). While being pressed for money from someone who has represented themselves as connected to Russian organized crime, Dziedziach indicated that his boss Wolosz (whom he refers to as a "really nice guy") speculated to the CW that John Doe #1 (referred to by his first name and the "GC") would "pay." Despite this assurance, Dziedziach conceded that he did not have any money for the CW because his "boss" the "subcontractor" (i.e. Wolosz) did not have any money.

B.   Legal Standard for Limiting the Scope of Cross-Examination

As the Second Circuit found in United States v. Concepcion, 983 F.2d 369, 391-92 (2d Cir. 1992):

> "The scope and extent of cross-examination lies within the discretion of the trial judge." United States v. Blanco, 861 F.2d 773, 781 (2d Cir. 1988), cert. denied, 489 U.S. 1019, 103 L. Ed. 2d 200, 109 S. Ct. 1139 (1989). The trial court may, in its discretion, preclude questions for which the questioner cannot show a good faith basis. United States v. Katsougrakis, 715 F.2d 769, 778-79 (2d Cir. 1983), cert. denied, 464 U.S. 1040, 79 L. Ed. 2d 169, 104 S. Ct. 704 (1984). So long as the jury has before it sufficient information to make a discriminating appraisal of the witness's possible motives for testifying falsely in favor of the government,

3

we will uphold the trial court's exercise of its discretion. United States v. Singh, 628 F.2d 758, 763 (2d Cir.), cert. denied, 449 U.S. 1034, 66 L. Ed. 2d 496, 101 S. Ct. 609 (1980); see also United States v. Scarpa, 913 F.2d 993, 1018 (2d Cir. 1990); United States v. Tillem, 906 F.2d 814, 827 (2d Cir. 1990).

It is commonly understood that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on" cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Furthermore, the Second Circuit has held that restrictions on "cross-examination under state or federal rules of evidence do not necessarily implicate the Confrontation Clause. Rather, the Constitution only guarantees an opportunity for effective cross-examination, not cross-examination that is effective, in whatever way, and to whatever extent, the defense might wish." Harper v. Kelly, 916 F.2d 54, 57 (2d Cir. 1990) (internal quotation marks omitted). Finally, the "right to confront and cross-examine witnesses 'is tempered by a trial judge's wide latitude to impose reasonable limits in order to avoid matters that are confusing or of marginal relevance.'" United States v. Ewald, 398 Fed. Appx. 657 (2d Cir. 2010) (quoting United States v. Stewart, 433 F.3d 273, 311 (2d Cir. 2006).

C.      Argument

The defense seeks to introduce a highly inflammatory topic into this trial, which has no bearing on John Doe #1's credibility as a witness and is predicated on inconsistent and uncorroborated statements of individuals who each possessed separate motives to fabricate evidence of John Doe #1's involvement in the obstruction and retaliation conspiracies, crimes for which he has never been charged.

To begin, the July 21, 2008 recording does not provide a sufficient or reliable basis to connect John Doe #1 to the obstruction and retaliation conspiracies. The CW, who posed as a Russian organized crime figure, was pressing Dziedziach for money to pay individuals to harm the plaintiffs. Dziedziach, who could not come up with any money himself or from Wolosz, offered up John Doe #1 as a possible source for the money. Faced with the fact that John Doe #1 had obviously not given Dziedziach or anyone the money to pay the CW, his only explanation is that John Doe #1 wanted to "have everything finish in court," which hardly connects him to an obstruction conspiracy. See Exhibit C at 9. Notably, at no point in this recording does Dziedziach suggest that he meet with or speak to John Doe #1. On the other hand, Dziedziach does plan to have Wolosz, who acknowledged some participation in the conspiracies, meet with the CW. Exhibit C at 11.

The Wolosz interviews are even less reliable. Wolosz, of course, was only consistent in being inconsistent. In the first interview, he claimed that he had nothing to do with conspiring against the plaintiffs, let alone implicating John Doe #1. Wolosz further denied that John Doe #1 even knew Wolosz had paid any money to Lapinski. Less than a week later Wolosz would contradict his first interview and admit that he had paid Lapinski $20,000. Wolosz, however, continued to deny that he knew in advance that acid would be thrown at the plaintiff's girlfriend. Furthermore, Wolosz conceded that John Doe #1 told Wolosz that he had $300,000 to

4

settle the lawsuit, suggesting that he was not seeking to obstruct a settlement. Wolosz in the second interview also did not state that John Doe #1 ordered, directed or participated in the obstruction or retaliation conspiracies. At worst, Wolosz would only state that at some point John Doe #1 had become aware that Wolosz was attempting to intimidate the plaintiffs. This series of self-contradictory statements combined with Wolosz's motive to implicate others in meetings with the government are not corroborated by any other evidence.

In Concepcion, the Second Circuit affirmed the trial court's decision to preclude the defense from asking a government's witness about his role in an alleged murder. The trial court precluded cross-examination on this topic because there was insufficient evidence that such murder had occurred and no reliable evidence that the witness had committed such murder. The Second Circuit ruled that the preclusion of such cross-examination was "within the scope of the court's discretion." Id. at 392. Moreover, the Second Circuit upheld the trial court's discretionary decision despite the fact that the defense had proffered some hearsay statements of unidentified sources that connected the witness to the murder.

In this case, which otherwise does not involve any issues of violence, the mere accusation that John Doe #1 participated in an acid attack against a female or a violent assault plot would inject a highly inflammatory matter that will surely lead to confusion by the jury and rampant speculation about acts that are unrelated to the charges pending in this trial. Further, such cross-examination will only serve to distract the jury from an impartial attempt to determine the credibility of John Doe #1.

The evidence the defense claims supports the questioning of John Doe #1 about the obstruction and retaliation conspiracies is clearly lacking in reliability. The recorded conversation hardly established that John Doe #1 had agreed to become a source of funds for Dziedziach's plot. And Wolosz's statements are totally inconsistent about his own guilt, let alone John Doe #1's. His statement that John Doe #1 had knowledge of some aspect of the plot suggests that at most he had been informed of the plot, not that he was a participant.

On the other hand, the prejudice to the government's case if the defense were permitted to ask questions on this point is plain. Even mentioning the words "acid" or "assault" on cross examination will inflame the jury. When John Doe #1 denies any role in these conspiracies, as the government expects he will do, the relevance of such questions and answers would be marginal at best in deciding his credibility, but the overwhelmingly prejudicial damage will be done. Moreover, because the government is not permitted to introduce extrinsic evidence, such as Wolosz's other statements (in which he exculpates John Doe #1), such cross-examination would be extremely prejudicial because the jury will be left to speculate about whether the allegations by the defense counsel have any merit. United States v. Watts, 2013 U.S. Dist. LEXIS 138857 (EDNY Sep. 26, 2013) ("Nonetheless, 'a witness may not be impeached by extrinsic evidence (contradiction by another witness or evidence) on a collateral issue.'") (quoting United States v. Tarantino, 846 F.2d 1384, 1409, 269 U.S. App. D.C. 398 (D.C. Cir. 1988)).

In the alternative, should this Court decide to allow a limited cross-examination of John Doe #1 with regard to the obstruction and retaliation conspiracies, the government requests

that the defense be precluded from making any reference to the acid-throwing incident. None of the evidence cited by the defense connects John Doe #1 to such a scheme. Furthermore, if John Doe #1 denies participating in any such schemes to obstruct the civil suit, the defense should be precluded from asking the witness what if anything he learned had happened from other sources. Such questions are completely irrelevant and would only serve to distract the jury by focusing them on what happened to the plaintiffs rather than focusing the jury on the relevant issue of whether John Doe #1 is credible.

For example, if John Doe #1 states unequivocally that he did not participate in an obstruction conspiracy, the defense should not be permitted to ask if John Doe #1 later learned that any such obstruction had ever occurred. First, the fact that John Doe #1 later learned an obstructive act had occurred would necessarily call for hearsay. Second, whether the obstructive act had occurred (if John Doe #1 took no part in its planning or execution) is irrelevant. Such questions would evade the prohibition on introducing extrinsic evidence on a collateral matter for the same reason if the government sought to ask John Doe #1 if he was aware that Wolosz had exculpated John Doe #1 in a statement to the government.

D.  Conclusion

For these reasons, the government respectfully requests that the defense be precluded from cross-examining John Doe #1 on any topic related to conspiracies to obstruct justice or retaliate. In the alternative the government requests that the defense be limited in cross-examining John Doe #1 by precluding any reference to attacks on persons with acid and to be precluded from asking John Doe #1 about information he later learned about such obstructive or retaliatory activities should he deny participation in such schemes.

        Respectfully submitted,

        LORETTA E. LYNCH
        United States Attorney

By:    /s/ Anthony M. Capozzolo
        Anthony M. Capozzolo
        Cristina M. Posa
        Assistant U.S. Attorneys
        (718) 254-6454/6668