

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| CMP/AMC | *271 Cadman Plaza East* |
| F. #2011R00414 | *Brooklyn, New York 11201* |

March 17, 2014

By ECF

The Honorable Nina Gershon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Dunn, Hymowitz and Freeman
       Criminal Docket No. 11-683 (S-2)(NG)

Dear Judge Gershon:

  The government respectfully submits this motion *in limine* (1) to permit certain areas of cross-examination in the event the defendants Lee Hymowitz and Michael Freeman testify; (2) to limit the introduction of specific instances of charitable conduct in the testimony of defense character witnesses and to permit the government to explore certain areas of cross-examination of those witnesses; and (3) to preclude certain arguments in the summations of the defendants Lee Hymowitz and Michael Freeman.

A. <u>Cross-Examination Of The Defendants Regarding Their Signed Bar Recertifications And Two Specific Instances Of Misconduct In Order To Impeach Their Credibility Is Proper</u>

  In the event that Hymowitz and/or Freeman elect to testify in their defense, the government seeks to inquire into specific areas of conduct to impeach their credibility pursuant to Fed. R. Evid. 608(b). Specifically, the government seeks to cross-examine the defendant(s) on the following topics: (1) regarding both defendants, the fact that in their biannual New York State Bar recertification forms, they affirmed that they were in compliance with certain Rules, whereas in the consensual recordings, they plainly claimed that they were not; (b) regarding both defendants, allegations in a pending lawsuit, <u>Dorothy Sicignano, et al., v. Hymowitz, Freeman, et al.</u>, N.Y. Sup. Ct. (Kings County), Index No. 500442/2014 (complaint filed January 21, 2014) (the "<u>Sicignano</u> lawsuit") regarding deceit and breach of fiduciary duty; and (3) regarding the

defendant Freeman, allegations of deceit and breach of fiduciary duty in connection with his removal as the executor of the estate of the late Charles Saltz (the "Saltz estate").

1. Bar Recertifications

The government had planned to admit Hymowitz and Freeman's signed New York State bar recertification forms (Government Exhibit ("GX") 605), in which they affirmed that they had "read and were in compliance with" the Rules "governing the conduct of attorneys, which requires an attorney … to maintain certain records relative thereto." Hymowitz and Freeman affirmed "that the statements contained herein are true to the best of my knowledge and belief." These affirmations, however, are plainly belied by the consensual recordings, in which they claimed that their practice was to destroy all billing records as soon as the bills were paid. Simply put, the defendants were either lying in their affirmations or lying in the recordings, and thus this topic constitutes core impeachment material under Fed. R. Evid. 608(b).

2. The *Sicignano* Lawsuit

In the Sicignano complaint filed in January 2014 (the "Complaint"), the plaintiffs accuse Hymowitz, Freeman, their wives and their former law partner, Louis Marett, and his wife of egregious misconduct in connection with their ownership interest in a property located at 510 Gates Avenue in Brooklyn (the "Property"). Based on the complaint as well as other documentation provided to the government by the lead plaintiff, it appears that the defendants and Mr. Marrett currently control 78% of the shares in a corporation, 510 Gates Avenue, Inc. ("510 Gates"), although their wives formally hold the shares, and that they are directors and officers of the company. The plaintiffs inherited the remaining 22% of the shares from their late mother. According to a lease filed with the Complaint, 510 Gates leased the Property in 1992 to Miracle Makers, a non-profit child welfare, foster care and adoption agency that was ultimately investigated for rampant financial malfeasance and failure to properly care for the children in their charge and declared bankruptcy.[1] Miracle Makers' comptroller was Henry Guerrero. Under the lease with 510 Gates Avenue and according to a sworn affirmation by Mr. Marrett, Miracle Makers was responsible for paying property taxes but failed to do so, ultimately accruing over $1.4 million in unpaid property taxes.

Faced with this enormous tax burden, 510 Gates sought to sell the Property. Over the objection of the minority shareholders, Hymowitz and Freeman elected to sell the Property to the Paul J. Cooper Center for Human Services (the "Cooper Center"), another non-profit organization whose chief financial officer is Henry Guerrero – the same individual responsible for Miracle Makers' failure to pay the property taxes. In addition, 510 Gates, "c/o Hymowitz

---

[1] See Benjamin Weiser, "A History of Neglect: City Slow to Act as Hope for Foster Children Fails," *New York Times*, November 6, 2007, http://www.nytimes.com/2007/11/06/nyregion/06foster2.html?pagewanted=all&_r=0 (last visited March 17, 2014).

2

and Freeman," provided the Cooper Center with a $5 million mortgage at 6.961% interest, with no down payment required, to purchase the Property.[2]

All of these actions have meant that the minority shareholders have not received the income due to them based on their interest in the Property. Any seller engaged in a truly arms-length transaction would have rejected a buyer who is essentially a reincarnation of a tenant who accrued over $1.4 million in unpaid property taxes, let alone sold the Property to such a buyer without any down payment or other assurances. Consequently, there is more than a good faith basis to inquire as to the deceitful side deal that Hymowitz and Freeman have apparently struck with Guerrero and the Cooper Center, at the expense of the minority shareholders.

3. The Saltz Estate

If the defendant Freeman testifies on his own behalf, the government will seek to cross-examine him about false statements he made to the New York County Surrogate's Court in relation to his appointment as the administrator of an estate of a former client, Charles Saltz. On February 1, 2011, Freeman was removed as the administrator of the estate for Mr. Saltz by the Surrogate's Court of New York County. The court found that Freeman knowingly omitted the identity of Mr. Saltz's niece (the "niece") when he filed a petition for letters of administration on the estate of Mr. Saltz in October 2007 (notice to the niece was required under state law). This was significant because omitting the niece's name permitted Freeman to appoint himself administrator of an estate worth well over $2 million without her consent. Freeman also failed to disclose the fact that one of Mr. Saltz's brothers (the "brother") was incapacitated by Alzheimer's disease; indeed, Freeman even submitted a document signed by the brother knowing of his incapacity. Freeman repeated these omissions in later court filings. Freeman also falsely claimed that the potential beneficiaries of the estate consented to his appointment, which they had not since the niece was unaware of Freeman's actions and the brother of Mr. Saltz was incapacitated.

Freeman attempted to profit from his misrepresentations. In testimony under oath from 2010, Freeman admitted that he charged legal fees of between $12,000 and $15,000 for serving as the administrator of the estate (the actual amount was $15,000). In addition, Freeman requested over $80,000 in fees for overseeing a trust holding the $2 million estate, a request that was denied by Justice Shlomo S. Hagler of the New York County Supreme Court. After Freeman's removal as administrator of the estate in February 2011, the Surrogate's Court awarded letters of administration of the estate of Mr. Saltz to the niece on April 28, 2011.

Finally, despite an October 6, 2011 order compelling him to turn over the property of the estate to the niece, Freeman has continued to refuse to turn over the property of the estate, which is worth over $2 million, to the niece.[3]

---

[2] According to an email dated December 7, 2011, a well-respected non-profit organization, the Doe Fund, Inc., offered to purchase the Property for $1.62 million in an all-cash transaction.

[3] Mr. Saltz died intestate. After Mr. Saltz's death, Freeman improperly transferred the $2 million estate to a trust Freeman created after Saltz's death. This was invalid because Freeman

B.  <u>Defense Character Witnesses</u>

    1.  <u>Specific Instances of the Defendants' Charitable Acts Should Be Precluded</u>

Counsel for Hymowitz and Freeman made clear in their opening statements that they intend to introduce the defendants' purportedly charitable acts as a major part of their defense case.  <u>See</u>, <u>e.g</u>., Tr. 368 (Charlotte Lee will testify that Hymowitz "spent countless Saturdays building homes for the needy with his two bare hands as he built the tabernacle in that temple, all without reward") and Tr. 384, 386 (Freeman "represented the indigent" as a Legal Aid Attorney and served on the Board of Trustees of Nassau Community College).  Such evidence of specific acts, however, is not admissible under Fed. R. 405(b) and should be excluded.

The government concedes that reputation or opinion evidence regarding the defendants' purported generosity may be admissible under Fed. R. 405(a).  <u>See</u> <u>United States v. Han</u>, 230 F.3d 560, 564 (2d Cir.2000) ("based on notions of fairness rather than logic, Rule 404(a) imposes a low threshold for admissibility, requiring only that the proffered evidence of a character trait relate to some element at issue in the case.").  Testimony about *specific* instances of charitable conduct, however, is not admissible pursuant to Fed. R. Evid. 405(b), because "greed" is not an essential element of the crimes charged, particularly fraud.  <u>See</u> <u>United States v. Nachamie</u>, 28 Fed. Appx. 13, 20-21 (2d Cir. January 25, 2001) (district court did not err in limiting evidence of "charitable works" in health care fraud case).

It is beyond dispute that "it is a proper exercise of a district court's discretion ... to exclude evidence of specific acts intended to demonstrate character traits not at issue." <u>United States v. Doyle</u>, 130 F.3d 523, 542 (2d Cir. 1997).  In <u>Doyle</u>, the defendant was charged with illegally exporting prohibited items to Libya.  <u>Id</u>.  The Second Circuit upheld the district court's exclusion of evidence regarding specific instances of military activities undertaken by the defendant against Libya, noting that, "[a]s Weinstein's treatise on Evidence warns, 'permissive use of evidence of specific acts is regularly misinterpreted by trial lawyers.  It is allowed only when character itself is an issue under substantive law.'"  Just as patriotism (or the lack thereof) is not an essential element of an export violation crime, greed is not an essential element of the crimes of fraud or engaging in unlawful monetary transactions.  Consequently, evidence of the defendants' specific acts of charity or selflessness is not admissible.

    2.  <u>Cross-Examination of Defense Character Witnesess</u>

In addition to cross-examining Freeman and Hymowitz about <u>Sicignano</u> lawsuit and the Saltz estate, as described above, the government would also seek to raise these issues with any witnesses who may be called by Freeman to testify as to their opinion of the defendants' character for generosity and/or truthfulness.  For example, the government should be permitted to ask the character witnesses whether they know that Freeman was removed as the

---

distributed the money to an entity that was not entitled to receive any portion of the estate according to the distribution rules for intestate estates under New York State law.

administrator of an estate because he knowingly made false statements to the surrogate's court, and that Freeman and Hymowitz have been accused of defrauding fellow investors.

Federal Rule of Evidence 405(a) provides that when reputation or opinion evidence of a person's pertinent character trait is introduced, "[o]n cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct." United States v. Reich, 479 F.3d 179, 191 (2d Cir. 2007) (government properly permitted to inquire of character witness whether the defendant-lawyer changing his law partner's life insurance policy in violation of the partnership agreement would affect his opinion of the defendant); United States v. Birney, 686 F.2d 102 (2d Cir. 1982) (prosecutor properly allowed to ask the character witness whether his knowledge that the defendant made false loan applications would have affected the witnesses opinion of the defendant's character).

    3.   Introduction of Character Evidence by the Government to Rebut the Defense Character Evidence

Federal Rule of Evidence 404(a)(2)(A) states that if evidence of the defendant's pertinent trait is admitted, "the prosecutor may offer evidence to rebut it." The Advisory Committee Notes to Federal Rule of Evidence 405 indicates that the rule "contemplate[d] that testimony of specific instances is not generally permissible on the direct examination of an ordinary opinion witness to character." With respect to the defendant Freeman, the government will seek to introduce the testimony of reputation and/or opinion witnesses. These witnesses will rebut the reputation and/or opinion evidence Freeman has promised to introduce with regard to Freeman's honesty and/or generosity. See, e.g., United States v. Bonner, 302 F.3d 776, 781-82 (7th Cir. 2002) (prosecutor properly solicited the opinion of a government lawyer known to the defendant to elicit that the defendant was not known for generosity to rebut defendant's character evidence demonstrating generosity). The government will seek to introduce this evidence in the government's rebuttal case after Freeman has introduced any such character evidence.

C.   The Defendants Should Be Precluded From Arguing About The Propriety Of The Retainer Agreement And Their Billing Practices In Summation

In light of the Court's ruling on March 13, 2014, precluding the introduction of evidence regarding the Disciplinary Rules of the New York Code of Professional Responsibility and the New York Rules of Professional Conduct (the "Rules") as they relate to nonrefundable retainer agreements and the requirement to maintain legal billing records for seven years, the government respectfully requests that the defendants be precluded from two arguments that would be misleading to the jury in the absence of evidence regarding the Rules.

First, the defendants should not be permitted to argue that that the nonrefundable retainer agreement at issue in this trial (GX 600) is the type of retainer agreement that lawyers routinely draft or enter into with clients. Without providing the context of the Rules that govern such agreements, the jury would be misled into thinking that such an agreement is an acceptable practice for attorneys, when it is not.

5

Second, the defendants should be precluded from arguing that Hymowitz's and Freeman's explanations on the consensual recordings (GX 3, 5, 6 and 7) for why they did not have any billing records – for example, claiming that "[o]nce an invoice is paid, it's just ripped out of the book and disposed of" in GX 5 – are somehow consistent with the way lawyers routinely do business.  Again, it would be extremely misleading for the jury to think that such explanations are consistent with generally acceptable legal practices when, in fact, such conduct is expressly prohibited under the Rules.

D.  Conclusion

For these reasons, the government respectfully requests that the Court (1) permit the government to cross-examine Hymowitz and/or Freeman about their false NYS bar affirmations, the Sicignano lawsuit and the Saltz estate; (2) limit the introduction of specific instances of charitable conduct in the testimony of defense character witnesses; (3) permit the government to introduce evidence to rebut the defendants' character evidence; and (4) preclude the above-described arguments in the summations of Hymowitz and Freeman.

        Respectfully submitted,

        LORETTA E. LYNCH
        United States Attorney

By:      /s/
        Cristina M. Posa
        Anthony M. Capozzolo
        Assistant U.S. Attorneys
        (718) 254-6668/6454